Karina Kosharskyy
Daniel Hume
Ira Press
Meghan J. Summers
KIRBY McINERNEY LLP
825 Third Avenue
New York, NY 10022
(212) 371-6600

*Attorneys for Plaintiffs*

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| NORTH SOUND CAPITAL LLC, *et al.*,<br><br>       v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORPORATION, *et al.* | 03:13-CV-7240 (FLW) (DEA) |
| GIC PRIVATE LIMITED,<br><br>v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORPORATION, *et al.* | 03:13-CV-7241 (FLW) (DEA) |
| NORTH SOUND CAPITAL LLC, *et al.*,<br><br>       v.<br><br>MERCK & CO., INC., *et al.* | 03:14-CV-00242 (FLW) (DEA) |
| GIC PRIVATE LIMITED,<br><br>v.<br><br>MERCK & CO., INC., *et al.* | 03:14-CV-00241 (FLW) (DEA) |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION
## TO DEFENDANTS' MOTIONS TO DISMISS

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ............................................................1

STATEMENT OF FACTS ................................................................4

ARGUMENT .................................................................................5

I.  Plaintiffs' Federal Securities Claims Are Timely ...........................5

   A.  The Five-Year Limitations Periods Are Not Statutes of Repose ..........7

      1.  28 U.S.C. § 1658(b)(2) is a Statute of Limitations ...................7

      2.  15 U.S.C. § 78t-1(b)(4) is a Statute of Limitations .................11

   B.  *American Pipe* Tolling Applies to Statutes of Repose.......................12

      1.  The Limitations Period Considered in *American Pipe* was a
         Statute of Repose ....................................................12

      2.  *American Pipe* is a Form of Legal or Statutory Tolling ...........13

         a.  *American Pipe* Lacks the Characteristics of Equitable
            Tolling............................................................14

         b.  *American Pipe* is Legal Tolling, Which Applies to
            Statutes of Repose............................................19

      3.  *American Pipe* Tolling of Statutes of Repose Does Not Conflict
         With the REA...........................................................23

         a.  Defendants Misconstrue the Relevant Standard............24

         b.  Even By Defendants' Standard, *American Pipe Tolling* is
            Valid Under the REA ....................................26

   C.  Accepting Defendants' Position Would Impair the Efficient Operation
      of Rule 23 and the Judicial System ....................................30

II. Plaintiffs' Common Law Fraud Claims Should Be Sustained .....................35

   A.  This Court Has Jurisdiction Over Plaintiffs' Fraud Claims...............35

   B.  Plaintiffs Have Sufficiently Alleged Actual Reliance ......................35

i

CONCLUSION ..................................................................................................40

## TABLE OF AUTHORITIES

**Cases**

*Albano v. Shea Homes Ltd. P'ship*,
    634 F. 3d 524 (9th Cir. 2011) ..............................................................19

*Alin v. Am. Honda Motor Co., Inc.*,
    No. 08 Civ. 4825, 2010 WL 1372308 (D.N.J. Mar. 31, 2010)............................38

*American Pipe & Constr. Co. v. Utah*,
    414 U.S. 538 (1974).................................................................. *passim*

*Andrews v. Chevy Chase Bank, FSB*,
    243 F.R.D. 313 (E.D. Wis. 2007) ......................................................20

*Arivella v. Lucent Techs., Inc.*,
    623 F. Supp. 2d 164 (D. Mass. 2009)........................................... 15, 19

*Ballard v. Tyco Int'l, Ltd.*,
    MDL No. 02-MD-1335, 2005 WL 1683598 (D.N.H. July 11, 2005).................20

*Beach v. Ocwen Fed. Bank*,
    523 U.S. 410 (1998).................................................................. 8, 9, 11

*Bright v. United States*,
    603 F.3d 1273 (Fed. Cir. 2010) ............................................... 16, 19-20

*Burlington N. Ry. Co. v. Woods*,
    480 U.S. 1 (1987)...........................................................................25

*Champion v. Homa*,
    No. 3:03 Civ. 275, 2008 WL 900967 (M.D. Ala. Mar. 31, 2008)......................20

*Chardon v. Fumero Soto*,
    462 U.S. 650 (1983)............................................................... 17, 21, 22

*Credit Suisse Sec. (USA) LLC v. Simmonds*,
    132 S. Ct. 1414 (2012) ............................................................. 16, 21

*Crown, Cork & Seal Co., Inc. v. Parker*,
  462 U.S. 345 (1983) .................................................................... 21, 30, 31, 34

*CTS Corp. v. Waldburger*,
  134 S. Ct. 2175 (2014) .................................................................10

*Demmick v. Cellco P'ship*,
  No. 06 Civ. 2163, 2010 WL 3636216 (D.N.J. Sept. 8, 2010) ................ 36, 37, 39

*Devlin v. Scardelletti*,
  536 U.S. 1 (2002) .................................................................... 29, 32

*Dungan v. Morgan Drive-Away, Inc.*,
  570 F.2d 867 (9th Cir. 1978) .................................................................13

*Eisen v. Carlisle & Jacquelin*,
  417 U.S. 156 (1974) .................................................................33

*Footbridge Ltd. Trust v. Countrywide Fin. Corp.*,
  770 F. Supp. 2d 618 (S.D.N.Y. 2011) .................................................................16

*Fujisawa Pharm. Co. v. Kapoor*,
  115 F.3d 1332 (7th Cir. 1997) .................................................................11

*Glater v. Eli Lilly & Co.*,
  712 F.2d 735 (1st Cir. 1983).................................................................33

*Greyhound Corp. v. Mt. Hood Stages, Inc.*,
  437 U.S. 322 (1978) .................................................................13

*Haas v. Pittsburgh Nat'l Bank*,
  526 F.2d 1083 (3d Cir. 1975) .................................................................... 18, 22

*Holland v. Florida*,
  560 U.S. 631 (2010).................................................................14

*Hrdina v. World Savings Bank, FSB*,
  No. C 11-05173, 2012 WL 294447 (N.D. Cal. Jan. 31, 2012)...........................20

iv

*Hubbard v. Corr. Med. Servs., Inc.,*
  No. Civ. A. 04-3412, 2008 WL 2945988 (D.N.J. July 30, 2008) .......................32

*In re BP p.l.c. Sec. Litig.,*
  No. 4:13 Civ. 1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014)............. 28, 29

*In re Cathode Ray Tube CRT Antitrust Litig.,*
  MDL No. 1917, 2014 U.S. Dist. LEXIS 35391 (N.D. Cal. Mar. 13, 2014) ........13

*In re Enron Corp. Sec. Litig.,*
  465 F. Supp. 2d 687 (S.D. Tex. 2006)................................................................20

*In re Enron Corp. Sec., Derivative & ERISA Litig.,*
  258 F. Supp. 2d 576 (S.D. Tex. 2003)................................................................11

*In re Exxon Mobil Corp. Sec. Litig.,*
  387 F. Supp. 2d 407 (D.N.J. 2005)............................................................... 38-39

*In re Exxon Mobil Corp. Sec. Litig.,*
  500 F.3d 189 (3d Cir. 2007) .............................................................................8, 9

*In re Interpool, Inc. Sec. Litig.,*
  No. 04 Civ. 321, 2005 WL 2000237 (D.N.J. Aug. 17, 2005) ...............................9

*In re Linerboard Antitrust Litig.,*
  223 F.R.D. 335 (E.D. Pa. 2004).............................................................................5

*In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.,*
  MDL No. 1658, 2012 WL 6840532 (D.N.J. Dec. 20, 2012)........................ *passim*

*Interfaith Cmty. Org. v. Honeywell Int'l Inc.,*
  726 F.3d 403 (3d Cir. 2013) ..............................................................................24

*John Hancock Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co.,*
  938 F. Supp. 2d 440 (S.D.N.Y. 2013) ................................................................17

*Johnson v. Aljian,*
  490 F.3d 778 (9th Cir. 2007) .............................................................................11

*Joseph v. Wiles*,
223 F.3d 1155 (10th Cir. 2000) .............................................................. 17, 19, 29

*Kaufman v. i-Stat Corp.*,
754 A.2d 1188 (N.J. 2000) ......................................................................39

*Keystone Res. Inc. v. Am. Tel. & Tel. Co.*,
646 F. Supp. 1355 (W.D. Pa. 1986).......................................................13

*Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*,
501 U.S. 350 (1991)................................................................................10

*Landsman & Funk PC v. Skinder-Strauss Assocs.*,
640 F.3d 72 (3d Cir. 2011) .....................................................................25

*Lieberman v. Cambridge Partners, L.L.C.*,
432 F.3d 482 (3d Cir. 2006) ...................................................................29

*Lozano v. Montoya Alvarez*,
134 S. Ct. 1224 (2014)............................................................................14

*Maguire v. Comm'r of Internal Revenue*,
313 U.S. 1 (1941)....................................................................................11

*Maine Ret. Sys. v. Countrywide Fin. Corp.*,
722 F. Supp. 2d 1157 (C.D. Cal. 2010) ..................................................20

*Mead Corp. v. Tilley*,
490 U.S. 714 (1989)................................................................................11

*Merck & Co., Inc. v. Reynolds*,
559 U.S. 633 (2010).................................................................................10

*Miss. Publ'g Corp. v. Murphree*,
326 U.S. 438 (1946).................................................................................25

*Morgan v. Markerdowne Corp.*,
201 F.R.D. 341 (D.N.J. 2001)..................................................................35

*Mott v. R.G. Dickinson & Co.*,
   No. 92 Civ. 1450, 1993 WL 63445 (D. Kan. Feb. 24, 1993) ...............................20

*Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*,
   692 F.3d 283 (3d Cir. 2012) ..................................................................................24

*Pabon v. Mahanoy*,
   654 F.3d 385 (3d Cir. 2011) ..................................................................................14

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)................................................................................ 15, 31, 34

*Piersol v. Clancey*,
   No. CIV. A. 90-0246, 1991 WL 12445 (E.D. Pa. Jan. 29, 1991)........................11

*Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*,
   721 F.3d 95 (2d Cir. 2013) ....................................................................................16

*Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*,
   14 F. Supp. 3d 591 (D.N.J. 2014)......................................... 18, 19, 22, 23, 34, 37

*Realmonte v. Reeves*,
   169 F.3d 1280 (10th Cir. 1999) ........................................................................5, 33

*Roll v. Singh,*
   No. 08 Civ. 4136, 2008 WL 3413863 (D.N.J. June 26, 2008).............................38

*Salkind v. Wang*,
   Civ. A. No. 93-10912, 1995 WL 170122 (D. Mass. Mar. 30, 1995) ...................20

*Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*,
   559 U.S. 393 (2010).......................................................................................... 24, 25

*Sibbach v. Wilson & Co.*,
   312 U.S. 1 (1941)............................................................................................. 20, 24

*Smart-El v. Corr. Med. Servs.*,
   No. 04 Civ. 3413, 2008 U.S. Dist. LEXIS 44376 (D.N.J. June 5, 2008).............32

*Smith v. Bayer Corp.*,
  131 S. Ct. 2368 (2011) ........................................................................31

*Sperling v. Hoffmann-La Roche, Inc.*,
  145 F.R.D. 357 (D.N.J. 1992) ...............................................................22

*Sperling v. Hoffmann-La Roche, Inc.*,
  24 F.3d 463 (3d Cir. 1994) ...................................................................27

*State Farm Mut. Auto. Ins. Co. v. Boellstorff*,
  540 F.3d 1223 (10th Cir. 2008) ............................................................17

*Steginsky v. Xcelera Inc.*,
  741 F.3d 365 (2d Cir. 2014) .................................................................11

*Steven I. v. Cent. Bucks Sch. Dist.*,
  618 F.3d 411 (3d Cir. 2010) ...................................................................9

*Stichting Pensioenfonds ABP v. Merck & Co., Inc.*,
  No. 05 Civ. 5060, 2012 WL 3235783 (D.N.J. Aug. 1, 2012) .............................38

*Stone Container Corp. v. United States*,
  229 F.3d 1345(Fed. Cir. 2000) .............................................................22

*Thomas v. Corr. Med. Servs., Inc.*,
  No. 1:04 Civ. 3358, 2009 WL 737105 (D.N.J. Mar. 17, 2009) .........................32

*Tillman v. Georgia*,
  466 F. Supp. 2d 1311(S.D. Ga. 2006) ...................................................26

*Tosti v. City of Los Angeles*,
  754 F.2d 1485 (9th Cir. 1985) ...............................................................5

*U.S. Express Lines Ltd. v. Higgins*,
  281 F.3d 383 (3d Cir. 2002) .................................................................25

*United Airlines, Inc. v. McDonald*,
  432 U.S. 385 (1977) ...........................................................................28

viii

*Utah v. Am. Pipe & Constr. Co.*,
    50 F.R.D. 99 (C.D. Cal. 1970)...............................................................................13

*Wal-Mart Stores, Inc. v. Dukes*,
    131 S. Ct. 2541 (2011)........................................................................................34

*Weske v. Samsung Elecs., Am., Inc.*,
    No. 2:10 Civ. 4811, 2014 WL 4265803 (D.N.J. Aug. 27, 2014) ........................35

*Wyser-Pratte Mgmt. Co., Inc. v. Telxon Corp.*,
    413 F.3d 553 (6th Cir. 2005) ........................................................................ 32-33

*Young v. United States*,
    535 U.S. 43 (2002)..............................................................................................10

**Statutes**

15 U.S.C. § 16(i) ......................................................................................................12

15 U.S.C. § 78r(c) ......................................................................................................8

15 U.S.C. § 78t-1(b)(4) ............................................................................... 5, 6, 11, 27

28 U.S.C. § 1332 .....................................................................................................35

28 U.S.C. § 1367 .....................................................................................................35

28 U.S.C. § 1658(b) ..............................................................................................7, 27

28 U.S.C. § 1658(b)(1).............................................................................................6, 8

28 U.S.C. § 1658(b)(2) ......................................................................................5, 6, 7, 8

42 U.S.C. § 9658(b)(2)..............................................................................................10

**Other Authorities**

*Developments in the Law – Class Action*, 89 Harv. L. Rev. 1318 (1976)..............27

ix

## PRELIMINARY STATEMENT

From December 6, 2006 through March 28, 2008 (the "Relevant Period"), Plaintiffs[1] purchased Merck & Co., Inc. ("Merck") and Schering-Plough Corporation ("Schering") securities at prices that were artificially inflated by Defendants'[2] misrepresentations and omissions regarding the Merck-Schering joint venture drug, Vytorin.  In particular, Defendants misrepresented, manipulated, and concealed the results of their ENHANCE study, which demonstrated that Vytorin actually provided no benefit to patients.  At the same time, Defendants engaged in an aggressive marketing campaign falsely touting Vytorin's health benefits.  When Defendants finally revealed the truth about the ENHANCE study and Vytorin in a

---

[1] Plaintiffs are GIC Private Limited, North Sound Capital LLC, North Sound Legacy International, North Sound Legacy Institutional, United Food Commercial Workers Local 1500 Pension Fund, Colonial First State Investments Ltd., and 13 funds managed by Colonial First State Investments Ltd.

[2] Defendants in *GIC Private Ltd. v. Merck & Co., Inc., et al*., No. 3:14 Civ. 241 (FLW) (DEA) (D.N.J.) and *North Sound Capital LLC, et al. v. Merck & Co., Inc., et al*., No. 3:14 Civ. 242 (FLW) (DEA) (D.N.J.) (the "Merck Complaints") are Merck & Co., Inc., Merck/Schering-Plough Pharmaceuticals, MSP Distribution Services (C) LLC, MSP Singapore Company LLC, Richard T. Clark, and Deepak Khanna.  Defendants in *GIC Private Ltd. v. Merck & Co., Inc. f/k/a Schering-Plough Corp., et al*., No. 3:13 Civ. 7241 (FLW) (DEA) (D.N.J.) and *North Sound Capital LLC, et al. v. Merck & Co., Inc. f/k/a Schering-Plough Corp., et al*., No. 3:13 Civ. 7240 (FLW) (DEA) (D.N.J.) (the "Schering Complaints") are Merck & Co., Inc. f/k/a Schering-Plough Corporation, Merck/Schering-Plough Pharmaceuticals, MSP Distribution Service (C) LLC, MSP Singapore Company LLC, Fred Hassan, and Carrie S. Cox.

partial disclosure on January 14, 2008, and in a full disclosure on March 30, 2008, Defendants' stock prices declined materially, causing Plaintiffs significant loss.

Plaintiffs' claims against the Defendants named in the Schering Complaints were commenced on January 18, 2008, when those claims were first asserted on Plaintiffs' behalf by the class representatives in *In re Schering-Plough Corporation/ENHANCE Securities Litigation*, No. 08 Civ. 397 (D.N.J.) (the "Schering Class Action"). Similarly, Plaintiffs' claims against the Defendants named in the Merck Complaints were commenced on May 5, 2008, when those claims were first asserted on Plaintiffs' behalf by the class representatives in *In re Merck & Co., Inc. Vytorin/Zetia Securities Litigation*, No. 08 Civ. 2177 (D.N.J.) (the "Merck Class Action," and together with the "Schering Class Action," the "Vytorin Class Actions"). The applicable five-year limitations periods were then tolled pursuant to *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) ("*American Pipe*") until Plaintiffs opted-out of the Vytorin Class Actions on March 1, 2013.[3] Plaintiffs timely filed their individual complaints less than a year later, on November 14, 2013 and January 14, 2014, respectively.

In support of dismissal, Defendants argue that Plaintiffs' claims under sections 10(b), 20(a), and 20A of the Securities Exchange Act (the "Exchange

---

[3] The court certified the classes in the Vytorin Class Actions on September 25, 2012, and the notices of class certification were published on January 17, 2013.

2

Act") are untimely because *American Pipe* tolling does not apply to the five-year limitations periods that govern those claims.  However, this is just a rehash of arguments previously advanced in this District and rejected by Judge Chesler in litigation involving another failed Merck drug (Vioxx).  *See In re Merck & Co., Inc. Sec., Derivative & Erisa Litig.*, MDL No. 1658, 2012 WL 6840532 (D.N.J. Dec. 20, 2012). As Judge Chesler explained, *American Pipe* tolling applies because the rule is not equitable in nature. Instead, as the majority of federal courts to consider the issue have held, *American Pipe* is based on a statutory source – Rule 23 of the Federal Rules of Civil Procedure ("FRCP") – and is therefore properly considered "legal" or "statutory" tolling.

Defendants also argue that *American Pipe* tolling of statutes of repose operates in contravention of the Rules Enabling Act ("REA").  Again, this argument fails.  Under the REA, a federal rule of procedure is valid so long as it primarily regulates procedure, regardless of whether the affected statute is considered "substantive" or "procedural" in nature.  *American Pipe* tolling clearly regulates procedure – it merely governs when the claims of class members are commenced, *i.e.*, by the timely filing of a class action complaint. Moreover, even if the substantive nature of the affected time period were relevant, the five-year periods here do not govern substantive rights.  And even if they did, *American Pipe* tolling does not operate to abridge any right of defendants to be free from suit,

3

nor does it enlarge a plaintiff's right to bring claims under the Exchange Act. Instead, when *American Pipe* tolling applies, a defendant's right to be free from suit has already been abridged due to the timely filing of the class action suit, which commenced the claims of *all* putative class members and provided defendants with notice of those claims during the relevant limitations periods. And when a putative class member files its own individual claims, it is simply taking over the prosecution of already-filed claims from the class representatives.

Finally, Defendants seek dismissal of Plaintiffs' common law fraud claims based on a failure to plead reliance. However, Plaintiffs sufficiently allege actual reliance under New Jersey law because they assert (i) having read and relied upon Defendants' misrepresentations and omissions in making their investment decisions, and (ii) that they would not have invested in Defendants' securities had they known the truth about ENHANCE and Vytorin.

Accordingly, Defendants' motions to dismiss should be denied.

## STATEMENT OF FACTS

Plaintiffs respectfully refer the Court to the Merck and Schering Complaints, which set forth the relevant facts in detail.

4

**ARGUMENT**

### I.   Plaintiffs' Federal Securities Claims Are Timely

Plaintiffs' federal securities claims are timely because 28 U.S.C. § 1658(b)(2)'s and 15 U.S.C. § 78t-1(b)(4)'s five-year limitations periods were tolled during the pendency of the Vytorin Class Actions pursuant to the *American Pipe* tolling doctrine.  In *American Pipe*, the Supreme Court unanimously held that "the filing of a timely class action complaint commences the action for all members of the class" and "suspends the applicable statute of limitations as to all asserted members of the class," pending a decision on class certification. 414 U.S. at 550, 554.  Upon class certification, tolling continues until class members choose to opt-out of the litigation. *See, e.g., Realmonte v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999); *Tosti v. City of Los Angeles*, 754 F.2d 1485, 1488 (9th Cir. 1985); *In re Linerboard Antitrust Litig.*, 223 F.R.D. 335, 345 (E.D. Pa. 2004).

Section 1658(b)(2)'s five-year limitations period, applicable to Plaintiffs' section 10(b) and 20(a) claims, begins to run on the date of the last alleged misrepresentation. *See In re Merck & Co., Inc.*, 2012 WL 6840532, at *3. The last alleged misrepresentation in the Schering Complaints occurred on November 19, 2007, (*see* NS S-P ¶¶ 287-88; GIC S-P ¶¶ 285-86), [4] and the last alleged

---

[4] All references herein to (NS S-P ¶__) and (GIC S-P ¶__) are to the complaints filed in *North Sound Capital LLC, et al. v. Merck & Co., Inc. f/k/a*

5

misrepresentation in the Merck Complaints occurred on January 30, 2008,[5] (*see* NS Merck ¶¶ 317-18; GIC Merck ¶¶ 316-17).[6]   However, the limitations periods on those claims were almost immediately suspended, and the causes of action commenced, by the filing of the Schering Class Action on January 18, 2008, and the filing of the Merck Class Action on May 5, 2008. The limitations periods remained tolled until Plaintiffs opted-out of the Vytorin Class Actions on March 1, 2013.   Plaintiffs then filed their complaints against Defendants less than a year later, on November 14, 2013, and January 14, 2014, and thus, the Plaintiffs' section 10(b) and 20(a) claims are timely.[7]

Section 78t-1(b)(4)'s five-year limitations period, applicable to Plaintiffs' section 20A claims, begins to run on the date of the "last transaction that is the subject of the violation." 15 U.S.C. § 78t-1(b)(4). Here, the last alleged insider trade occurred on May 1, 2007. (*See* GIC S-P ¶¶ 351-52; NS S-P ¶¶ 353-55).

---

*Schering-Plough Corp., et al.*, No. 3:13 Civ. 7240 (FLW) (DEA) (D.N.J.) and *GIC Private Ltd. v. Merck & Co., Inc. f/k/a Schering-Plough Corp., et al.*, No. 3:13 Civ. 7241 (FLW) (DEA) (D.N.J.), respectively.

[5] Defendants incorrectly state that the last alleged misrepresentation in the Merck Complaints occurred on January 3, 2008. *See* Memorandum of Law in Support of Defendants' Motions to Dismiss ("Defs. Br.") at 15 & n.18.

[6] All references herein to (NS Merck ¶__) and (GIC Merck ¶__) are to the complaints filed in *North Sound Capital LLC, et al. v. Merck & Co., Inc., et al.*, No. 3:14 Civ. 242 (FLW) (DEA) (D.N.J.) and *GIC Private Ltd. v. Merck & Co., Inc., et al.*, No. 3:14 Civ. 241 (FLW) (DEA) (D.N.J.), respectively.

[7] Defendants do not contest the timeliness of Plaintiffs' 10(b) and 20(a) claims under 28 U.S.C. § 1658(b)(1)'s two-year limitation period.

6

However, the limitations period was suspended, and that cause of action commenced, roughly 8.5 months later, upon the timely filing of the Schering Class Action on January 18, 2008. The limitations period remained suspended until March 1, 2013, when Plaintiffs opted-out of the class. At that point, Plaintiffs had roughly four years and 3.5 months remaining on the limitations period for their section 20A claims. Thus, those claims, which were filed less than a year later, on November 14, 2013, are timely.

## A.   The Five-Year Limitations Periods Are Not Statutes of Repose

Defendants argue that Plaintiffs' federal securities claims are *not* timely because the five-year periods applicable to those claims are considered "statutes of repose," which affect "substantive rights," and to which *American Pipe* does not apply. *See* Defs. Br. at 11-28. This argument fails, however, for a number of reasons, the first of which being that the five-year periods are not statutes of repose.

### 1.   28 U.S.C. § 1658(b)(2) is a Statute of Limitations

Both subdivisions of section 1658(b), the first of which Defendants concede is a "statute of limitations," *see* Defs. Br. at 12, provide a time within which claims under certain provisions of the Exchange Act "may be brought," 28 U.S.C. § 1658(b).  Specifically, section 1658(b) states, in relevant part, that "a private right of action . . . *may be brought not later than the earlier of* (1) 2 years after the

discovery of the facts constituting the violation; or (2) 5 years after such violation."

28 U.S.C. § 1658(b)(1)-(2) (emphasis added).

Although Defendants' primary argument is that the five-year period is a statute of repose because it governs a substantive right, [8] Defendants do not point to anything in the text of the statute to support such a conclusion. *See Beach v. Ocwen Fed. Bank*, 523 U.S. 410, 417 (1998) (noting that a "statute of repose" is distinct from a "statute of limitation," because the former goes beyond limiting the "time for bringing a suit," and instead provides that the underlying "'right . . . *shall expire*'" at the end of a prescribed time period) (emphasis added). [9] This is

---

[8] Defendants also argue that statutes of limitation are different from statutes of repose because the former begin to run when a cause of action "accrues," while the latter do not. *See* Defs. Br. at 13. However, section 1658(b)(1)'s two-year limitation period – which Defendants admit is a "statute of limitation" – does not run from accrual but from the date when a plaintiff discovers a "violation." As the Third Circuit has held, and Defendants themselves concede, "violation[s]" under section 10(b) are the "fraudulent statements themselves," which can occur before a plaintiff suffers any injury, and therefore, before the 10(b) claim actually accrues. *See In re Exxon Mobil Corp. Sec. Litig.*, 500 F.3d 189, 200 (3d Cir. 2007); *see* Defs. Br. at 14. Indeed, statutes of limitation often run from the occurrence of a certain event, rather than from the date of accrual. *See, e.g., Beach*, 523 U.S. at 417 (noting that 46 U.S.C. App. § 1303(6), which states that "'the carrier and the ship shall be discharged from all liability in respect of loss or damage unless suit is brought *within one year after delivery of the goods*,'" is a "statute of limitation") (emphasis added). Moreover, Defendants' distinction is contradicted by *In re Exxon Mobil Corp.*, where the Third Circuit noted that certain *repose periods* under the Exchange Act run from the date of accrual. *See* 500 F.3d at 200 (citing 15 U.S.C. § 78r(c)).

[9] Defendants cite the Third Circuit's decision in *In re Exxon Mobil Corp.* in support of their argument that section 1658(b)(2) is a statute of repose rather than a

8

unsurprising, given that the five-year period and the two-year period share *identical language* that merely limits the time period within which a suit may be commenced, making them both "typical statute[s] of limitation." *See, e.g., id.* at 416 ("The terms of a typical statute of limitation provide that a cause of action *may or must be brought* within a certain period of time.") (emphasis added); *Steven I. v. Cent. Bucks Sch. Dist.*, 618 F.3d 411, 414 n.7 (3d Cir. 2010) ("Statutes of limitations regulate secondary conduct, *i.e.*, the filing of a suit, not primary conduct, *i.e.*, the actions that gave rise to the suit."); *In re Interpool, Inc. Sec. Litig.*, No. 04 Civ. 321, 2005 WL 2000237, at *19 n.11 (D.N.J. Aug. 17, 2005) (referring to section 1658(b)(1) and section 1658(b)(2) collectively as the Exchange Act's "statute of limitations"). Defendants provide no explanation for why language that is identical to both the two-year period and the five-year period somehow creates a statute of limitations in the former but a statute of repose in the latter.

---

statute of limitation. *See* Defs. Br. at 12-14. But although the Third Circuit discussed statutes of repose in general, it did not engage in any meaningful analysis of whether section 1658(b)(2) itself had the characteristics of a statute of repose, nor did it discuss whether section 1658(b)(2)'s text created or extinguished an underlying right. *See In re Exxon Mobil Corp.*, 500 F.3d at 199. Instead, the court relied, without explanation, on the fact that other courts had referred to it as a statute of repose. *See id.* Moreover, the court noted elsewhere in its opinion that in section 804(b) of Sarbanes-Oxley, Congress "explicitly" referred to section 1658(b)(2) as a "limitations period" rather than a repose period. *See id.* at 196 (quoting 116 Stat. 801).

Defendants' reference to *CTS Corp. v. Waldburger*, 134 S. Ct. 2175 (2014) does not help them.  There, the Supreme Court considered whether 42 U.S.C. § 9658(b)(2)'s definition of "applicable limitations period," defined as "the period . . . during which a civil action . . . may be brought," referred only to statutes of limitation or to both statutes of limitation and statutes of repose. *See CTS Corp.*, 134 S. Ct. 2179; 42 U.S.C. § 9658(b)(2).  The Court ultimately concluded that the provision at issue referred only to statutes of limitation. *See CTS Corp.*, 134 S. Ct. at 2187. In so holding, the Court explained that because the provision referred to the period during which a "civil action . . . may be brought," it presupposed that a civil action existed in the first place, and this was inconsistent with a statute of repose, which may prevent a cause of action from ever accruing. *Id.* So too here, section 1658(b)(2) governs when "a private right of action . . . may be brought" and thus cannot properly be considered a statute of repose.[10]

---

[10] Defendants reliance on *Merck & Co., Inc. v. Reynolds*, 559 U.S. 633 (2010) for the proposition that section 1658(b)(2) is a statute of repose is also misplaced. There, the Court was merely reiterating the unremarkable proposition, established in *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350 (1991), that section 1658(b)(2) is not subject to the discovery rule (*i.e.*, a form of equitable tolling), because if it were, it would "have no significance," given that section 1658(b)(1)'s two-year period already runs from discovery, *Lampf*, 501 U.S. at 363; *see also Merck & Co., Inc*., 559 U.S. at 650. Moreover, that the Court described section 1658(b)(2) as giving defendants "repose" after five years is unremarkable, given that "repose" is a basic policy furthered by "*all limitations provisions*." *See Young v. United States*, 535 U.S. 43, 47-48 (2002) (emphasis added) (noting that the period at issue was a "statute of limitations" because it

### 2.   15 U.S.C. § 78t-1(b)(4) is a Statute of Limitations

Section 78t-1(b)(4), which is tellingly entitled "Statute of limitations,"[11] provides that "[n]o action *may be brought* under this section more than 5 years after the date of the last transaction that is the subject of the violation." 15 U.S.C. § 78t-1(b)(4) (emphasis added). Because it merely limits the time within which an insider trading claim may be brought or commenced, it is also a typical "statute of limitation." *See Beach*, 523 U.S. at 416 ("Statutes which provide that no action shall be brought, or right enforced, unless brought or enforced within a certain time, are . . . statutes of limitation.") (internal citation omitted). Unsurprisingly, courts often refer to section 78t-1(b)(4) as a "statute of limitation," rather than a statute of repose. *See, e.g., Piersol v. Clancey*, No. CIV. A. 90-0246, 1991 WL 12445, at *1-2 (E.D. Pa. Jan. 29, 1991); *Johnson v. Aljian*, 490 F.3d 778, 783 (9th Cir. 2007); *Steginsky v. Xcelera Inc.*, 741 F.3d 365, 370 n.3 (2d Cir. 2014); *In re Enron Corp. Sec., Derivative & ERISA Litig.*, 258 F. Supp. 2d 576, 601 (S.D. Tex. 2003); *Fujisawa Pharm. Co. v. Kapoor*, 115 F.3d 1332, 1334 (7th Cir. 1997).

---

served the same "basic policies [furthered by] all limitations provisions: repose, elimination of stale claims, and certainty about a plaintiff's opportunity for recovery and a defendant's potential liabilities").

[11] *See Mead Corp. v. Tilley*, 490 U.S. 714, 722-23 (1989) ("[A]mbiguity is resolved against respondents by the title of [the statute]."); *Maguire v. Comm'r of Internal Revenue*, 313 U.S. 1, 9 (1941) (Title of statute may "aid in resolving an ambiguity") (citations omitted).

11

### B.   *American Pipe* Tolling Applies to Statutes of Repose

Even assuming *arguendo* that the five-year periods at issue here are properly considered statutes of repose, *American Pipe* still applies because the limitations period considered by the Court in *American Pipe itself was a statute of repose*. Even if it was not, *American Pipe* tolling applies to statutes of repose because it is legal, rather than equitable in nature, and because its application does not conflict with the REA.

### 1.   The Limitations Period Considered in *American Pipe* was a Statute of Repose

Defendants' argument is based on the misguided assumption that the limitations period at issue in *American Pipe* was a statute of limitation. That limitations period provided that where the government brings an antitrust case, a private plaintiff's suit is "forever barred" unless it occurs within one year after the conclusion of the government's case.   *See* 15 U.S.C. § 16(i). [12] According to Defendants' own definition, such language denotes a "statute of repose," because it sets forth a "total and unqualified bar" on future litigation, and runs from the occurrence of a specific event rather than from the date "the cause of action accrues." *See* Defs. Br. at 13-14.

---

[12] The Supreme Court held that because the class suit was filed eleven days short of one year after final judgment was entered in the government's case, the suit was timely not only for the named plaintiff, but for all members of the purported class. *See Am. Pipe & Constr. Co.*, 414 U.S. at 541, 561.

Moreover, Defendants fail to acknowledge that (i) the district court in *American Pipe* referred to the time period at issue as an "antitrust statute of repose," *Utah v. Am. Pipe & Constr. Co.*, 50 F.R.D. 99, 103 (C.D. Cal. 1970), (ii) the defendants in that case, in their petition for a *writ of certiorari*, referred to the provision as a "statute of repose," Pet. for Cert. at 22, *Utah v. Am. Pipe & Constr. Co.*, No. 72-1195 (U.S. filed Mar. 2, 1973), 1973 WL 346627, and (iii) the Supreme Court later referred to that time period as a "statute of repose," *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 334 (1978) (quoting *Dungan v. Morgan Drive-Away, Inc.*, 570 F.2d 867, 869 (9th Cir. 1978)).

Other courts, including courts within this Circuit, have also referred to it as a statute of repose. *See, e.g., Keystone Res. Inc. v. Am. Tel. & Tel. Co.*, 646 F. Supp. 1355, 1358 (W.D. Pa. 1986); *In re Cathode Ray Tube CRT Antitrust Litig.*, MDL No. 1917, 2014 U.S. Dist. LEXIS 35391, *96-97 (N.D. Cal. Mar. 13, 2014). Yet, Defendants do not explain why *American Pipe* tolling applies to section 16(i)'s repose provision but not to the provisions at issue here.

## 2. *American Pipe* is a Form of Legal or Statutory Tolling

Even if the time period at issue in *American Pipe* was a statute of limitations, *American Pipe* is equally applicable to statutes of repose because contrary to Defendants' contention, *see* Defs. Br. at 16-22, *American Pipe* tolling is not equitable in nature. As discussed herein, *American Pipe* lacks the signature

13

characteristics of equitable tolling and is instead a form of "legal tolling" applicable to statutes of repose.

### a. *American Pipe* Lacks the Characteristics of Equitable Tolling

The Supreme Court has held that equitable tolling applies "only if [a plaintiff] shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland v. Florida*, 560 U.S. 631, 649 (2010) (internal quotation marks omitted); *see also Lozano v. Montoya Alvarez*, 134 S. Ct. 1224, 1231-32 (2014) ("[E]quitable tolling pauses the running of, or 'tolls,' a statute of limitations when a litigant has pursued his rights diligently but some extraordinary circumstance prevents him from bringing a timely action."); *Pabon v. Mahanoy*, 654 F.3d 385, 399 (3d Cir. 2011) ("In determining whether equitable tolling should be granted, we address two questions: (1) whether the petitioner faced extraordinary circumstances that stood in the way of timely filing; and (2) whether he or she exercised reasonable diligence."). In other words, equitable tolling operates to *excuse* a plaintiff's *failure to timely file suit*, and it therefore acts to *extend* a statute of limitations when the plaintiff's failure was without fault.

Moreover, equitable tolling allows a plaintiff to bring claims years after the limitations period ordinarily would have expired, *even if the defendant had no*

14

*knowledge of a potential claim* during the limitations period.  *See Arivella v. Lucent Techs., Inc.,* 623 F. Supp. 2d 164, 177 (D. Mass. 2009) ("[E]quitable tolling . . . extend[s] the time in which a plaintiff could file suit without providing the defendants with any notice of the potential claims against them.").

*American Pip*e tolling, however, shares none of these characteristics.  Unlike equitable tolling, *American Pipe* operates regardless of whether a plaintiff has acted diligently in pursuit of his rights. Indeed, in *American Pipe*, the Supreme Court expressly refused to apply a different tolling standard to those class members "who were unaware of the proceedings brought in their interest or who demonstrably did not rely on the institution of those proceedings" in failing to file their individual suit. 414 U.S. at 552.  In so holding, the Supreme Court explained that class members need not "take note of the suit or . . . exercise any responsibility with respect to it" before "the existence and limits of the class have been established and notice of membership has been sent." *Id.*; *see also Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809-11 (1985) ("[A]n absent class-action plaintiff is not required to do anything. He may sit back and allow the litigation to run its course.").  Had equity been the source of *American Pipe*'s tolling rule, it would have been limited to those who reasonably relied on the class-action filing.[13]

---

[13] Although Defendants point to several cases where the Supreme Court has referred, in *dicta*, to *American Pipe* as a rule of equitable tolling, *see* Defs. Br. at

15

Accordingly, *American Pipe* does not extend a limitations period, nor does it excuse a plaintiff's late filing.  Instead, *American Pipe* merely determines when a purported class member's suit is commenced. *See Am. Pipe & Constr. Co.*, 414 U.S. at 550 ("[T]he filing of a timely class action complaint commences the action for all members of the class."); *see also Bright v. United States*, 603 F.3d 1273, 1287-88 (Fed. Cir. 2010) ("Equitable tolling is a principle that permits courts to modify a statutory time limit and 'extend equitable relief' when appropriate. Class action statutory tolling, on the other hand, does not modify a statutory time limit or 'extend equitable relief.'") (citations omitted). In fact, courts have often noted that *American Pipe* "does not involve 'tolling' at all [because the plaintiff] has effectively been a party to an action against these defendants since a class action

20, they mention no Supreme Court case in which that characterization has been controlling. Moreover, the Supreme Court recently acknowledged that *American Pipe* tolling is often characterized as a type of "legal tolling." *See Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1419 n.6 (2012).  Defendants also fail to cite any controlling Third Circuit case law in support of their position.  Although Defendants cite some non-binding case law within the Second Circuit on this issue, *see* Defs. Br. at 19-21, those cases were (incorrectly) decided, in large part, based on the text of a *different* limitations period, whose "ordinary meaning" the courts found precluded *American Pipe* tolling, *see, e.g., Footbridge Ltd. Trust v. Countrywide Fin. Corp.*, 770 F. Supp. 2d 618, 624 (S.D.N.Y. 2011) (finding that the "plain language of section 13," that an action to enforce liability could "*[i]n no event*" be brought after three years, precluded *American Pipe* tolling) (emphasis added); *see also Police & Fire Ret. Sys. of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95 (2d Cir. 2013) (hereinafter "*IndyMac*") (discussing *American Pipe* tolling with respect to section 13's three-year limitations period). Moreover, the Second Circuit in *IndyMac* expressly refused to decide whether *American Pipe* tolling is considered "equitable" or "legal" in nature.  *See* 721 F.3d at 109.

16

covering him was requested. . . ." *In re Merck & Co., Inc.*, 2012 WL 6840532, at

*4 (quoting *Joseph v. Wiles*, 223 F.3d 1155, 1168 (10th Cir. 2000)); *see also State*

*Farm Mut. Auto. Ins. Co. v. Boellstorff*, 540 F.3d 1223, 1232-33 (10th Cir. 2008)

(*American Pipe* tolling "does not involve 'tolling' at all" because "[t]he class

action mechanism's inherent representativeness means that each putative class

member has effectively been a party to an action against the defendant since a class

action covering him was filed") (internal citation omitted); *Chardon v. Fumero*

*Soto*, 462 U.S. 650, 659 (1983) (in *American Pipe* the Supreme Court reasoned that

"unnamed plaintiffs should be treated as though they had been named plaintiffs

during the pendency of the class action").[14]

Consequently, *American Pipe* tolling, unlike equitable tolling, only applies

when a defendant has already received timely notice of the plaintiff's claims

during the applicable limitations period through the filing of the original class

---

[14] In *John Hancock Life Ins. Co. (U.S.A.) v. JP Morgan Chase & Co.*, 938 F. Supp. 2d 440 (S.D.N.Y. 2013), upon which Defendants rely, *see* Defs. Br. at 21, the court failed to recognize this crucial aspect of *American Pipe*. There, the court held that *American Pipe* is "fundamentally about permitting a plaintiff *who has not otherwise filed a timely claim* to do so and thus is still equitable in nature." *Id.* at 447 (emphasis added). But as discussed above, *American Pipe* tolling, by definition, does not apply until a class complaint is timely filed. This commences the action not only for the named plaintiffs, but for all members of the class including those who later wish to intervene or opt-out and file individual actions. As such, *American Pipe* will never permit a plaintiff to file an untimely claim because a plaintiff who takes advantage of *American Pipe* tolling already has a timely claim by virtue of the class complaint.

action complaint. *See Am. Pipe & Constr. Co.*, 414 U.S. at 554-55 ("[W]hen . . . a named plaintiff . . . commences a [class action] suit [he] thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate."); *Prudential Ins. Co. of Am. v. Bank of Am., Nat'l Ass'n*, 14 F. Supp. 3d 591, 618 (D.N.J. 2014) (applying *American Pipe* to statute of repose and noting that because of the filing of the class action suit, "Defendants cannot contend that they were not on notice of [the plaintiff's claims]"); *Haas v. Pittsburgh Nat'l Bank*, 526 F.2d 1083, 1097 n.19 (3d Cir. 1975) (when *American Pipe* tolling applies, "the defendants have sufficient information within the statutory period to timely apprise them of the nature and scope of the prospective litigation," due to the "commencement of [the class action] suit"). Thus, contrary to Defendants' contentions, *American Pipe* tolling is not equitable in nature.

### b. *American Pipe* is Legal Tolling, Which Applies to Statutes of Repose

*American Pipe* tolling derives from a statutory source – Rule 23 of the FRCP[15] – and thus, is a form of statutory or legal tolling that can properly be applied to toll statutes of repose.  *See Albano v. Shea Homes Ltd. P'ship*, 634 F. 3d 524, 534 (9th Cir. 2011) ("[T]he majority of federal courts . . . hold that *American Pipe* tolling is legal tolling and applies to statutes of repose."); *Joseph*, 223 F.3d at 1166-67 (*American Pipe* tolling is legal tolling that applies to statutes of repose); *Bright*, 603 F.3d at 1279 (noting that *American Pipe* tolling is "statutory" tolling based on "the [Supreme] Court's interpretation of Rule 23" not "judge-made equitable tolling"); *In re Merck & Co., Inc.*, 2012 WL 6840532, at *5 (*American Pipe* tolling applies to statutes of repose); *Prudential Ins. Co. of Am.*, 14 F. Supp. 3d at 618 (D.N.J. 2014) (same); *Arivella*, 623 F. Supp. 2d at 176-77 ("the animating principles of legal tolling are compatible with tolling a statute of repose, while the reasoning behind equitable tolling is not"; *American Pipe* tolling "is a species of legal tolling, in that it is derived from a statutory source, in this case Rule 23").[16]

---

[15] "The Federal Rules of Civil Procedure were promulgated by the Supreme Court pursuant to statutory authority and were implicitly adopted by Congress after transmission to Congress in their proposed form. In light of this statutory promulgation scheme, the Supreme Court has held that the Federal Rules of Civil Procedure are deemed to have 'the force [and effect] of a federal statute.'" *Bright*,

In *American Pipe*, the Supreme Court engaged in a lengthy discussion of Rule 23's history and purposes. *See* 414 U.S. at 545-50. The Court concluded that the class action tolling rule was an "interpretation of [Rule 23]," which was

603 F.3d at 1279 (quoting *Sibbach v. Wilson & Co.*, 312 U.S. 1, 13 (1941)). Thus, Defendants' statement, that tolling based on the purposes of a "procedural rule" cannot be characterized as legal or statutory tolling, *see* Defs. Br. at 22, is misplaced, given that Rule 23 is not merely a procedural rule but a statutory enactment.

[16] *See also Champion v. Homa*, No. 3:03 Civ. 275, 2008 WL 900967, at *10-11 (M.D. Ala. Mar. 31, 2008) ("Although the Supreme Court . . . held that equitable tolling does not apply to statutes of repose, a majority of lower courts addressing the issue have declined to extend that holding to cases in which a plaintiff argues the pendency of a prior class action should toll the running of a statute of limitations or a statute of repose."); *Andrews v. Chevy Chase Bank, FSB*, 243 F.R.D. 313, 316-17 (E.D. Wis. 2007) ("Although the Supreme Court has held that equitable tolling does not apply to statutes of repose, that holding is not applicable to the present case because the [*American Pipe*] tolling that plaintiffs seek is legal rather than equitable in nature.") (internal citation omitted); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687, 716-18 (S.D. Tex. 2006) (finding that *American Pipe* tolling is legal in nature); *Ballard v. Tyco Int'l, Ltd.*, MDL No. 02-MD-1335, 2005 WL 1683598, at *7 (D.N.H. July 11, 2005) ("Legally tolling the repose period while a class action is pending therefore does not compromise the purpose served by statutes of limitations and repose."); *Salkind v. Wang*, Civ. A. No. 93-10912, 1995 WL 170122, at *2-3 (D. Mass. Mar. 30, 1995) ("Although equitable tolling is inapplicable, *American Pipe* does toll the *Lampf* bar of repose for as many of [the plaintiff's] claims which are part of a class action against the same defendant(s) until the class is decertified or [the plaintiff] opts out.") (citations omitted); *Mott v. R.G. Dickinson & Co.*, No. 92 Civ. 1450, 1993 WL 63445, at *5 (D. Kan. Feb. 24, 1993) (holding that *American Pipe* tolling is legal in nature and not prohibited with respect to statutes of repose under *Lampf*); *Hrdina v. World Savings Bank, FSB*, No. C 11-05173, 2012 WL 294447, at *3 (N.D. Cal. Jan. 31, 2012) ("[T]he weight of federal authority favors the view that [the] *American Pipe* . . . rule should be characterized as a rule of statutory tolling.") (internal quotation marks omitted); *Maine Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) (*American Pipe* tolling is "legal tolling").

"necessary to insure effectuation of the purposes of litigation efficiency and economy that the Rule in its present form was designed to serve." *Id.* at 555-56; *see also Chardon*, 462 U.S. at 654 ("[T]his Court ha[s] *interpreted the Federal Rules of Civil Procedure* to permit a federal statute of limitations to be tolled between the filing of an asserted class action and the denial of class certification.") (emphasis added).  The Court also explained that a decision to the contrary "would frustrate the principal function of a class suit, because then the sole means by which members of the class could assure their participation in the judgment if notice of the class suit did not reach them until after the running of the limitations period would be to file earlier individual motions to join or intervene as parties – precisely the multiplicity of activity which Rule 23 was designed to avoid." *Am. Pipe & Constr. Co.*, 414 U.S. at 551.

Since *American Pipe* was decided, the Supreme Court has consistently acknowledged that it was implemented to ensure the proper effectuation of Rule 23. *See Credit Suisse Sec. (USA) LLC*, 132 S. Ct. at 1419 n.6 (observing that *American Pipe*'s holding was based on "the efficiency and economy of litigation which is a principal purpose of [Fed. Rule Civ. Proc. 23 class actions]") (alterations in original); *Crown, Cork & Seal Co., Inc. v. Parker*, 462 U.S. 345, 350-51 (1983) (creating exceptions to *American Pipe* would create "a needless multiplicity of actions – precisely the situation that Federal Rule of Civil Procedure 23 and the

tolling rule of *American Pipe* were designed to avoid"); *Chardon*, 462 U.S. at 661 ("*American Pipe* . . . asserts a federal interest in assuring the efficiency and economy of the class action procedure.").

The Third Circuit has similarly recognized that *American Pipe*'s tolling rule was designed to prevent "needless duplicative [litigation] . . . not in keeping with the objectives of the federal class action procedures." *Haas*, 526 F.2d at 1097. District Courts within the Third Circuit have come to the same conclusion. *See In re Merck & Co., Inc.*, 2012 WL 6840532, at *3 ("[T]olling serves Rule 23's policy of judicial economy by eliminating the need for potential class members to file individual claims as well as the purpose of the opt-out provision of Rule 23(c)(2), [because] without tolling, the right to pursue individual claims might be rendered meaningless."); *Sperling v. Hoffmann-La Roche, Inc*., 145 F.R.D. 357, 362 (D.N.J. 1992) (explaining that the *American Pipe* rule was established to protect Rule 23's "goals of judicial efficiency and economy of litigation"); *see also Prudential Ins. Co. of Am.*, 14 F. Supp. 3d at 618. It is unsurprising, therefore, that courts sometimes refer to *American Pipe* tolling as "Rule 23 tolling." *See, e.g., Stone Container Corp. v. United States*, 229 F.3d 1345, 1354 (Fed. Cir. 2000); *Sperling*, 145 F.R.D. at 361.[17]

---

[17] As such, applying *American Pipe* tolling to statutes of repose promotes rather than discourages efficiency. *See* Defs. Br. at 27-28; *see also* Point I.C, *infra*.

### 3. *American Pipe* Tolling of Statutes of Repose Does Not Conflict With the REA

Defendants next argue that even if *American Pipe* is "legal tolling," its application to statutes of repose is barred by the REA, which forbids interpreting Rule 23 to "abridge, enlarge or modify any substantive right." *See* Defs. Br. at 23-26. According to Defendants, because the five-year periods at issue involve "substantive rights," permitting Plaintiffs to file suit after the repose period has run would enlarge or abridge those substantive rights in violation of the REA. *See id.* at 25. In support of this argument, Defendants rely almost entirely on the Second Circuit's decision in *Indymac* and other non-binding case law within the Second Circuit, even though – as Defendants themselves acknowledge – courts in this Circuit have found the Second Circuit's decision on this issue unpersuasive, *see* Defs. Br. at 25 (citing *Prudential Ins. Co. of Am.*, 14 F. Supp. 3d 591 at 618). This is unsurprising, given that Defendants' argument, and the Second Circuit's decision in *Indymac* upon which Defendants rely, are based on a fundamental misunderstanding of the proper test for determining whether a federal rule violates the REA. Indeed, in *American Pipe* itself, the Court considered and rejected an identical argument that the REA precluded suspending the running of a "substantive" time limitation. *See Am. Pipe & Constr. Co.*, 414 U.S. at 556-58 & n.26.

23

### a. Defendants Misconstrue the Relevant Standard

Contrary to Defendants' contention, "the substantive nature" or "substantive purpose" of the affected time periods – here, sections 1658(b)(2) and 78t-1(b)(4) – "makes no difference [because a] Federal Rule of Procedure [cannot be] valid in . . . some cases and invalid in others." *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 409 (2010) (plurality opinion); *Am. Pipe & Constr. Co.*, 414 U.S. at 556-58 ("The proper test is not whether a time limitation is 'substantive' or 'procedural.'").

Rather, the proper test is whether the *federal rule* in question – here, *American Pipe* tolling – "really regulates procedure, – the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them." *Sibbach*, 312 U.S. at 14; s*ee also Shady Grove*, 559 U.S. at 407, 409-10 ("[The] test is not whether the rule *affects* a litigant's substantive rights; most procedural rules do. What matters is what the rule itself *regulates*") (emphasis added) (internal citations omitted); *Interfaith Cmty. Org. v. Honeywell Int'l Inc.*, 726 F.3d 403, 409 (3d Cir. 2013) (same); *see also Nuveen Mun. Trust ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 303 (3d Cir. 2012) ("[The] inquiry does not depend on the substantive or procedural nature or purpose of the affected [statute], but rather [the] substantive or procedural nature of the Federal

24

Rule.") (internal citations omitted); *see also Am. Pipe & Constr. Co.*, 414 U.S. at 559 ("[T]he mere fact that a federal statute providing for substantive liability also sets a time limitation upon the institution of suit does not restrict the power of the federal courts to hold that the statute of limitation is tolled under certain circumstances.").

A federal rule "really regulates procedure," and is therefore valid, when it "governs only 'the manner and the means' by which the litigants' rights are 'enforced.'" *Shady Grove,* 559 U.S. at 407 (quoting *Miss. Publ'g Corp. v. Murphree*, 326 U.S. 438, 446 (1946)). And this is so even if the rule affects a litigant's substantive rights under the affected statute. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 392 (3d Cir. 2002) (quoting *Burlington N. Ry. Co. v. Woods*, 480 U.S. 1, 5 (1987)) ("'Rules which incidentally affect litigants' substantive rights do not violate' the Rules Enabling Act.").

Defendants nowhere contest that *American Pipe* is a rule that "regulates procedure." *See Landsman & Funk PC v. Skinder-Strauss Assocs.*, 640 F.3d 72, 91 n.27 (3d Cir. 2011) ("Because Rule 23 'regulates procedure,' it is authorized by [the Rules Enabling Act] and is valid in all jurisdictions, with respect to all claims, regardless of its incidental effect upon [substantive] rights.") (alterations in original) (internal citation omitted). Indeed, the *American Pipe* rule determines when the claims of purported class members are "commenced" (*i.e.*, by the filing

25

of the initial class action complaint), much like Rule 3 of the FRCP determines when a (non-class) action is commenced (*i.e.*, by the filing of a complaint with the court). Far from modifying the applicable rules of decision concerning statutes of limitation and repose, Rule 3 and *American Pipe* enable federal courts to apply those very rules of decision. Without procedural rules declaring when and how lawsuits are commenced, courts could never determine if, for example, a plaintiff brought suit within the meaning of section 1658(b)'s two or five year limitations periods. *See Tillman v. Georgia*, 466 F. Supp. 2d 1311, 1316 (S.D. Ga. 2006) ("Rule 3 'commencement' also sets the end date for any statute of limitations."). Thus, *American Pipe* is valid under the REA regardless of whether it is applied to a "substantive" statute of repose or a "procedural" statute of limitation.

### b. Even By Defendants' Standard, *American Pipe Tolling* is Valid Under the REA

Assuming *arguendo* that, as Defendants' suggest, the substantive nature of the limitations period at issue is relevant to the REA analysis, Defendants' argument relies on the mistaken premise that the five-year limitation periods at issue here are statutes of repose that create substantive rights. But as discussed, *supra*, at Points I.A.1 and I.A.2, nothing in the text of either limitations period suggests that Congress intended to create or extinguish a substantive right when it enacted those provisions. Instead, both five-year periods contain identical language

indicating the time within which an action "may be brought," making them purely procedural in nature. *See* 28 U.S.C. § 1658(b); 15 U.S.C. § 78t-1(b)(4).

Moreover, even assuming that these limitations periods did create substantive rights, *American Pipe* tolling would *still* be permitted because such tolling does not abridge or enlarge such rights.  As discussed, *supra*, at Point I.B.2.a, *American Pipe*, unlike traditional equitable tolling, does not postpone the start of the time for bringing suit.  Rather, it defines when a claim is brought.  *See Am. Pipe & Constr. Co.,* 414 U.S. at 550 ("[T]he filing of a timely class action complaint commences the action for all members of the class."); *Sperling v. Hoffmann-La Roche, Inc.*, 24 F.3d 463, 468-69 (3d Cir. 1994) ("[T]he claims of all class members under Rule 23 are protected by the filing of an original, timely complaint . . . [because] the filing of a timely class action complaint commences the action for all members of the class.").

Thus, because under *American Pipe,* a claim is brought or commenced for all putative class members when the class complaint is filed, permitting those class members to later file their own complaints does not abridge any right of the defendant to be free from suit. To the contrary, when *American Pipe* applies, the defendants' right to be free from suit has already been disrupted by the timely filing of the class action litigation.  *See Developments in the Law – Class Action*, 89 Harv. L. Rev. 1318, 1451 (1976) ("[A] defendant faced with information about

27

a potential liability to a class cannot be said to have reached a state of repose that should be protected."); *Am. Pipe & Constr. Co.,* 414 U.S. at 554-55 ("[W]hen . . . a named plaintiff . . . commences a [class action] suit [he] thereby notifies the defendants not only of the substantive claims being brought against them, but also of the number and generic identities of the potential plaintiffs who may participate."); *United Airlines, Inc. v. McDonald*, 432 U.S. 385, 392-93 (1977) (explaining that the plaintiff's "lawsuit had been commenced by the timely filing of a complaint for classwide relief, [thus] providing [defendant] with the essential information necessary to determine both the subject matter and size of the prospective litigation") (internal quotation marks omitted).

Nor does the application of *American Pipe* enlarge any claimant's substantive right to pursue its claims under the Exchange Act. Instead, when the putative class member files its own individual claims, it is simply taking over the prosecution of those claims from the putative class representative, claims that had already been commenced as of the filing of the class action complaint. As the court observed in *In re BP p.l.c. Sec. Litig.*, No. 4:13 Civ. 1393, 2014 WL 4923749 (S.D. Tex. Sept. 30, 2014):

> Viewing the filing of a class action as a "prefiling" of all
> unnamed class members' claims means the concern
> identified by the Second Circuit in *Indymac* – that
> applying *American Pipe* tolling somehow abridges a
> defendant's substantive right to be free from suit after a

28

> specific period of time – is illusory. So long as the
> defendant has fair notice of the type and number of
> claims that could be asserted against it, which should be
> required for *American Pipe* tolling in the first instance,
> then there is no unfair surprise when a class member
> assumes responsibility for his own individual claim
> during the course of the class action.

Id. at *5; *see also Devlin v. Scardelletti*, 536 U.S. 1, 10 (2002) ("Nonnamed class

members are, for instance, parties [to the class action] in the sense that the filing of

an action on behalf of the class tolls a statute of limitations against them."); *In re*

*Merck & Co., Inc.*, 2012 WL 6840532, at *4 (quoting *Joseph*, 223 F.3d at 1168)

(*American Pipe* "does not involve 'tolling' at all [because the plaintiff] has

effectively been a party to an action against these defendants since a class action

covering him was requested.").[18]

---

[18] For this reason, Defendants' reliance on *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482 (3d Cir. 2006) is misplaced. *See* Defs. Br. at 26. There, the court held that it could not retroactively apply Sarbanes-Oxley's extended limitations period to revive claims that *had already expired* under the previously applicable limitations period, because doing so would "affect substantive rights by creating a new cause of action." *Id.* at 492. Here, Plaintiffs' claims have not expired. They were timely commenced by virtue of the filing of the class action complaints. Thus, no new cause of action was created when Plaintiffs filed the instant actions, and no substantive rights were affected. Moreover, the *Lieberman* court's analysis did not hinge on whether the prior limitation period was a statute of limitations or repose. Instead, the court noted that reviving stale claims "create[s] a new cause of action," regardless of whether those claims were rendered stale by the expiration of a statute of limitations or repose. *Id.* at 490.

### C.    Accepting Defendants' Position Would Impair the Efficient Operation of Rule 23 and the Judicial System

Refusing to apply *American Pipe* to Plaintiffs' claims here would not only result in unfairness, but would significantly burden the judicial system and disrupt the functioning of class action litigation. *See* Defs. Br. at 26-28. According to Defendants, Plaintiffs were required to file the Merck and Schering Complaints by April 2012 – *prior* to class certification in the Vytorin Class Actions – in order to timely assert all of their claims. *See id.* at 26 & Appendix A.  Indeed, Defendants go so far as to suggest that Plaintiffs should have filed their complaints *in 2008*, immediately following the commencement of the Vytorin Class Actions. *See id.* at 26. However, this would have created the exact type of duplicative litigation that Rule 23 and *American Pipe* were designed to avoid. *See Am. Pipe & Constr. Co.*, 414 U.S. at 550 ("[A] federal class action . . . [is] designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions."); *Crown, Cork & Seal Co.*, 462 U.S. at 350-51 (*American Pipe* and Rule 23 were designed to avoid "needless multiplicity of actions").

In *American Pipe*, the Supreme Court recognized that in order for Rule 23 to operate effectively, it had to be interpreted such that the commencement of a class action suit satisfied the purpose of the limitation provision as to all those who might subsequently participate.  *See Am. Pipe & Constr. Co.*, 414 U.S. at 551.  As

30

the Supreme Court noted, a rule to the contrary would "frustrate the principal function of a class suit," because absent *American Pipe* tolling, the "sole means by which members of the class could assure their participation . . . if notice of the class suit did not reach them until after the running of the limitation period would be to file earlier individual motions . . . – precisely the multiplicity of activity which Rule 23 was designed to avoid." *Id.*

For this same reason, the Court held that putative class members are *not required* to "take note of the [class action] suit, or . . . exercise any responsibility with respect to it" before "the existence and limits of the class have been established and notice of membership has been sent." *Id.* at 552. Rather, prior to class certification and notice, "an absent class-action plaintiff is *not required to do anything*. He may sit back and allow the litigation to run its course." *Phillips Petroleum Co.*, 472 U.S. at 809-11 (emphasis added); *see Smith v. Bayer Corp*., 131 S. Ct. 2368, 2379 n.10 (2011) ("[A] putative member of an uncertified class may wait until after the court rules on the certification motion to file an individual claim."); *Crown, Cork & Seal Co.*, 462 U.S. at 352-53 ("Class members who do not file suit while the class action is pending cannot be accused of sleeping on their rights; Rule 23 both permits and encourages class members to rely on the named plaintiffs to press their claims."). Indeed, a contrary rule would result in significant numbers of protective lawsuits following the filing of every class action, and

31

would effectively eviscerate the entire purpose of Rule 23.  *See Devlin*, 536 U.S. at

10 (noting that if "all class members [were] forced to intervene to preserve their

claims, [then] one of the major goals of class action litigation – to simplify

litigation involving a large number of class members with similar claims – would

be defeated").

In recognition of the same, some courts in this District have taken *American

Pipe's* holding one step further to hold that putative class members *must* wait to

file an individual action until a decision on class certification is rendered, or else

forfeit *American Pipe* tolling altogether. *Thomas v. Corr. Med. Servs., Inc.*, No.

1:04 Civ. 3358, 2009 WL 737105, at *4 (D.N.J. Mar. 17, 2009) ("[A] plaintiff who

chooses to file an independent action without waiting for a determination on the

class certification issue *may not rely on the American Pipe tolling doctrine*.")

(emphasis added); *Hubbard v. Corr. Med. Servs., Inc.,* No. Civ. A. 04-3412, 2008

WL 2945988, at *7 (D.N.J. July 30, 2008) ("A plaintiff who files an independent

lawsuit without waiting for a determination on class certification does not get the

benefit of class action tolling."); *Smart-El v. Corr. Med. Servs.*, No. 04 Civ. 3413,

2008 U.S. Dist. LEXIS 44376, at *10-12 (D.N.J. June 5, 2008) ("This Court also

finds no reason why the filing of the Bennett class action case would toll the statute

of limitations for [plaintiff's] claims where [plaintiff] filed his lawsuit four years

before the denial of the class certification."); *accord Wyser-Pratte Mgmt. Co., Inc.*

32

*v. Telxon Corp.*, 413 F.3d 553, 568-69 (6th Cir. 2005); *Glater v. Eli Lilly & Co.,* 712 F.2d 735, 739 (1st Cir. 1983). Thus, had Plaintiffs filed their complaints prior to class certification in April 2012 as Defendants suggest, they might have forfeited their right to *American Pipe* tolling, making their 10(b) and 20(a) claims untimely under 1658(b)(1)'s two-year limitation period, to which such tolling would otherwise unquestionably apply. Plaintiffs should not now be prejudiced for filing their individual suits after class certification and notice, as Supreme Court and District of New Jersey law advised them to do.

Defendants' position would also require abrogating *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 159, 176 n.13 (1974), because it would preclude purported class members from opting out of a certified class and pursuing their claims where, as here, certification and notice of such occur outside the five-year periods. *See Realmonte*, 169 F.3d at 1284 (noting that without *American Pipe* tolling, Rule 23's opt-out provisions "would be irrelevant" because the "limitations period for absent class members would, more often than not, have expired, making the right to pursue individual claims meaningless"); *In re Merck & Co., Inc*., 2012 WL 6840532, at *3 (*American Pipe* serves "the purpose of the opt-out provision of Rule 23(c)(2), [because] without tolling, the right to pursue individual claims might be rendered meaningless").

Here, the notices of class certification were dated January 17, 2013, and the opt-out deadline was March 1, 2013.  But absent *American Pipe* tolling, any and all Exchange Act claims that could be asserted by Plaintiffs in an opt-out action were already untimely as of those dates – which the notices failed to mention.[19]  *See* Defs. Br. at Appendix A.  Thus, such a rule would essentially strip the opt-out rights of class members and prevent the constitutionally-grounded opt-out procedure from serving its functions of ensuring adequate representation and procedural fairness for unnamed class members.  *See Wal-Mart Stores, Inc. v. Dukes,* 131 S. Ct. 2541, 2559 (2011) (citing *Phillips Petroleum Co.*, 472 U.S. at 812) ("In the context of a class action predominately for money damages we have held that absence of notice and opt-out violates due process.").  It would also result in the multiplicity of suits that Rule 23 and *American Pipe* were designed to prevent – as class members would be forced to file their own individual actions before the five-year periods expire in order to preserve their opt-out rights.  *See Crown, Cork & Seal Co.*, 462 U.S. at 350-51.

---

[19]     Defendants' argument that Plaintiffs should have opted back into the class actions after the Second Circuit's decision in *Indymac*, which is not binding authority on courts in the District of New Jersey, is entirely illogical, *see* Defs. Br. at 27, especially since courts in this District, both before and after *Indymac*, have disagreed with its reasoning. *See Prudential Ins. Co. of Am.*, 14 F. Supp. 3d at 618; *In re Merck & Co., Inc.*, 2012 WL 6840532, at *2-5. Moreover, Defendants' proposed solution would still leave class members (such as Plaintiffs) without the ability to commence their own actions following receipt of the statutorily-mandated opt-out notice.

## II.   Plaintiffs' Common Law Fraud Claims Should Be Sustained

Defendants do not contest the timeliness of Plaintiffs' common law fraud claims but rather argue for their dismissal on other grounds.

### A.   This Court Has Jurisdiction Over Plaintiffs' Fraud Claims

Plaintiffs' federal claims are timely for the reasons discussed at Point I, *supra*.  Because this Court clearly has jurisdiction over the federal claims, it also has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. § 1367.[20]

### B.   Plaintiffs Have Sufficiently Alleged Actual Reliance

As Defendants point out, actual reliance is a required element of a common law fraud claim under New Jersey law. *See* Defs. Br. at 28-30; s*ee, e.g., Weske v. Samsung Elecs., Am., Inc*., No. 2:10 Civ. 4811, 2014 WL 4265803, at *4 (D.N.J. Aug. 27, 2014); *Morgan v. Markerdowne Corp*., 201 F.R.D. 341, 347 (D.N.J. 2001). To establish actual reliance on a misrepresentation, "a plaintiff must allege that he or she actually received and considered" the misrepresentation, "before he or she completed the transaction" at issue. *Weske*, 2014 WL 4265803, at *4 (internal quotation marks omitted). To establish actual reliance on an omission, a

---

[20] Should the Court decline to exercise supplemental jurisdiction over Plaintiffs' common law fraud claims, Plaintiffs respectfully request the right to replead jurisdiction based on diversity of citizenship. *See* 28 U.S.C. § 1332.

plaintiff must allege "what [documents or oral representations] they relied on" that allegedly omitted material information, and how their "behavior would have been different had the disclosures been made." *Demmick v. Cellco P'ship*, No. 06 Civ. 2163, 2010 WL 3636216, at *13-14 (D.N.J. Sept. 8, 2010). Contrary to Defendants' contentions, *see* Defs. Br. at 28-30, Plaintiffs have more than adequately alleged reliance here.

In each of the Merck Complaints, Plaintiffs devoted over fifty pages to describing, in detail, each and every one of Defendants' misrepresentations and omissions, including the content of those misrepresentations and omissions, and the dates on which they were made. (*See* GIC Merck ¶¶ 225-357, 365-70; NS Merck ¶¶ 226-358, 366-71). Plaintiffs also specified (i) where each of the misrepresentations was published, and (ii) which documents or oral statements omitted material information. (*See* GIC Merck ¶¶ 225-357, 365-70, 454; NS Merck ¶¶ 226-358, 366-71, 455). Those documents included Defendants' investor presentations, SEC filings, advertisements, and media accounts, including Defendants' press releases. (*See id.*). In the Schering Complaints, Plaintiffs allocated approximately forty pages to the same task. (*See* NS S-P ¶¶ 86-90, 207-92, 329; GIC S-P ¶¶ 84-88, 205-90, 327). Plaintiffs then alleged, in all four complaints, that they relied on Defendants' misrepresentations by reading the above-mentioned documents (or listening to investor presentations), which

36

contained the alleged misrepresentations and omissions, and purchased their Merck
and Schering securities in reliance on "each of the misleading statements" therein.
(*See* GIC Merck ¶¶ 454-55, 477; NS Merck ¶¶ 455-56, 478; NS S-P ¶¶ 329-30,
363; GIC S-P ¶¶ 327-28, 360).  With respect to Defendants' omissions, Plaintiffs
further alleged that they would not have purchased their Merck or Schering
securities, nor would they have paid the inflated prices that they paid for those
securities, had Defendants disclosed the truth about ENHANCE and Vytorin, (*see*
GIC Merck ¶ 478; NS Merck ¶ 479; GIC S-P ¶ 361; NS S-P ¶ 364), thereby
demonstrating how their "behavior would have been different had the disclosures
been made," *Demmick*, 2010 WL 3636216, at *13-14.

Contrary to Defendants' contention, *see* Defs. Br. at 29, this is more than
sufficient to establish that Plaintiffs reviewed, considered, and relied upon each of
the misrepresentations and omissions at issue. As the court recognized in
*Prudential Ins. Co. of Am.*, to hold otherwise would be to "elevat[e] form over
substance." 14 F. Supp. 3d at 609-10. There, the defendants argued – as
Defendants do here – that the plaintiff failed to plead reliance because "the
Complaint d[id] not specifically state that Plaintiffs actually read the specific
statements they allege to be fraudulent misrepresentations." *Id.* The court found
this argument "unpersuasive," noting that "in paragraph 659, the Complaint alleges
that Plaintiffs reviewed the representations contained in the Offering Materials and

37

relied on them in making the investments at issue. What more should the Complaint have said?" *Id.* So too here, Plaintiffs have alleged that they read and relied upon Defendants' misrepresentations by reading Defendants' media accounts, advertisements, investor presentations, and SEC filings that contained those misrepresentations, and that they purchased Defendants' securities in reliance upon "each of [Defendants] misleading statements." Nothing more is required. *See also Alin v. Am. Honda Motor Co., Inc*., No. 08 Civ. 4825, 2010 WL 1372308, at *11 (D.N.J. Mar. 31, 2010) ("In Count VII [for common law fraud], [plaintiff] properly restated his CFA allegations and additionally averred that he relied on [defendant's] misrepresentations. [Thus], the Court finds that [plaintiff] adequately alleged each of the essential elements of a common law fraud claim."); *Roll v. Singh,* No. 08 Civ. 4136, 2008 WL 3413863, at *19 (D.N.J. June 26, 2008) (reasonable reliance adequately pled where plaintiff stated that he "relied on [defendant's] misstatements and omissions in agreeing to sell his membership interest in Wave LLC").[21]

---

[21] The cases upon which Defendants rely are inapt. In *Stichting Pensioenfonds ABP v. Merck & Co., Inc*., No. 05 Civ. 5060, 2012 WL 3235783 (D.N.J. Aug. 1, 2012), the court dismissed the plaintiff's common law fraud claims because they were preempted by the Securities Litigation Uniform Standards Act, and therefore, any discussion with respect to reliance was *dicta, see id.* at *17 n.11. Moreover, there, unlike here, the complaint failed to plead "any public statements made by Merck that the plaintiff actually reviewed, considered and relied on in making a purchase of Merck stock." *Id.*  The decision in *In re Exxon Mobil Corp.*

Defendants' contention – that Plaintiffs were required to allege that they relied on the ENHANCE results when purchasing their securities – is absurd, given that Defendants purposely concealed those results from Plaintiffs at the time of their purchases. *See* Defs. Br. at 29.  Indeed, it is that very omission that forms the basis of Plaintiffs' fraud claims. Defendants fail to explain how Plaintiffs could have possibly relied on results that were purposely hidden from them until well after they made their investments. More importantly, New Jersey law does not require Plaintiffs to do so.  Instead, as discussed above, Plaintiffs are only required to demonstrate that they relied on the documents or statements that omitted to disclose the ENHANCE results, and that they would have acted differently had defendants disclosed such information. *See Demmick*, 2010 WL 3636216, at *13-14.  Plaintiffs have sufficiently done so here and easily meet the threshold for alleging reliance at the pleading stage.[22]

---

*Sec. Litig.*, 387 F. Supp. 2d 407 (D.N.J. 2005) only involved federal securities claims and the court nowhere addressed the requirements for pleading reliance under New Jersey common law. Moreover, there, unlike here, the plaintiffs' reliance allegations (in connection with their 10(b) claims) were insufficient because the complaint nowhere alleged that the plaintiffs read or relied on misrepresentations contained in the defendant's quarterly reports. *See id.* at 424. Finally, *Kaufman v. i-Stat Corp.*, 754 A.2d 1188 (N.J. 2000) is inapt because there, unlike here, the "plaintiff . . . expressly stated that she did not consider i-Stat's financial statements, either by herself or in consultation with an investment professional," *id.* at 1197.

[22] Alternatively, in the event that the Court should find Plaintiffs' reliance allegations insufficient, Plaintiffs respectfully request the right to replead.

39

## CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motions to dismiss in their entireties.

Dated: January 9, 2015

**KIRBY McINERNEY LLP**

By:

Karina Kosharskyy
Daniel Hume
Ira Press
Meghan J. Summers
825 Third Avenue
New York, NY 10022
(212) 371-6600

*Attorneys for Plaintiffs*

40