**\*NOT FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORTH SOUND CAPITAL LLC, *et al.*<br><br>v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORP., *et al.*, | 3:13-cv-7240 (FLW) (DEA) |
| GIC PRIVATE LTD,<br><br>v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORP., *et al.*, | 3:13-cv-7241 (FLW) (DEA) |
| NORTH SOUND CAPITAL LLC, *et al.*<br><br>v.<br><br>MERCK & CO., INC., *et al.* | 3:14-cv-242 (FLW) (DEA) |
| GIC PRIVATE LTD,<br><br>v.<br><br>MERCK & CO., INC., *et al.*, | 3:14-cv-241 (FLW) (DEA)<br><br><u>**OPINION**</u> |

<u>**WOLFSON, U.S. DISTRICT JUDGE:**</u>

These lawsuits stem from alleged misrepresentations made by Defendants Merck & Co., Inc., et al., ("Defendants"), relating to the success and importance of a clinical trial for their new flagship cholesterol medication, Vytorin. Investor Plaintiffs North Sound Capital LLC, et al., and GIC Private Limited ("Plaintiffs") assert claims for (1) violations of the Securities Exchange Act and (2) common-law fraud against Defendants Merck and affiliated entities based on Plaintiffs'

1

purported reliance on Defendants' alleged misrepresentations. Plaintiffs were class members in a class action relating to the alleged misrepresentations at issue here who opted out of the class in order to pursue their present claims independently. Before the Court are Defendants' Motions to Dismiss under Federal Rule of Civil Procedure 12(b)(6). For the following reasons, the Motions to Dismiss are denied.

## I.   Factual Background and Procedural History

The following allegations are taken as true for the purposes of this Motion. At some point after 2002, Defendant Merck & Co., Inc. ("Merck") entered into a joint venture with Schering-Plough Corporation ("Schering"),[1] in which the companies sought to combine their cholesterol drugs—Zocor and Zetia, respectively—to form Vytorin, a new pharmaceutical product. North Sound Capital Compl. dated Nov. 13, 2013, No. 03:13-cv-7240, ¶¶ 30–31 ("Complaint" or "Compl.").[2] In order to demonstrate the benefits of the combination, Defendants designed a clinical trial known as ENHANCE "to demonstrate that [Vytorin's novel active ingredient] did not simply lower LDL cholesterol, but that it resulted in measurable benefits to patients." *Id.* ¶ 41.

The ENHANCE trial began in August 2002 and finished in August 2006. Compl. ¶ 42. According to Plaintiffs, early in the trial, clinical researchers and executives both realized that the trial was proceeding poorly. The design of the trial faced serious statistical obstacles from its

---

[1] Merck and Schering merged in 2009; Schering is now a part of Merck. North Sound Capital Compl. dated Nov. 13, 2013, No. 03:13-cv-7240 ¶ 21.

[2] For the purposes of factual background, the Court relies on North Sound Capital's complaint dated November 13, 2013 [No. 03:13-cv-7240 (FLW) (DEA)]. The Court notes that this complaint appears to be identical to GIC Private Limited's complaint dated November 13, 2013 [No. 03:13-cv-7241 (FLW) (DEA)]. The Court further notes that the content and structures of these complaints are extremely similar to the complaints filed by North Sound Capital [No. 03:14-cv-242 (FLW) (DEA)] and GIC [No. 03:14-cv-241 (FLW) (DEA)] on January 14, 2014, with the latter containing a more extensive discussion of scienter. Due to the limited nature of this issue, the volumetric discrepancy in the scienter analysis does not merit a separate discussion here.

outset, making it unlikely that the trial would produce favorable results. *Id*. ¶¶ 47–52. Namely, the high-cholesterol participants entered the trial with their arterial walls, the target for the thinning agent in Zetia and Vyotrin, already "near-normal," hypothetically due to years of taking cholesterol medication. *Id.* ¶ 47. This obstacle created a challenge in showing the biochemical benefits of the drug and in showing its practicality for the high-cholesterol population, making the ENHANCE trial arguably doomed from the start. *See id.* ¶ 52.

From 2006 onward, Defendants made alleged misrepresentations about Vytorin's prospects for clinical efficacy. Compl. ¶ 39. Plaintiffs point to seventeen alleged misrepresentations. *See generally* Compl.; GIC Private Ltd. Compl. dated Nov. 19, 2013, No. 03:13-cv-7241 ("GIC Complaint"). Plaintiffs further allege that Defendants' misrepresentations artificially inflated the price of Schering securities. *Id.* ¶ 310. The last alleged misrepresentations at issue here were made by Schering on November 19, 2007, and by Merck on January 30, 2008. *Id.* ¶¶ 287–89; North Sound Compl. dated Jan. 13, 2014, No. 03:14-cv-242, ¶¶ 317–18. The last alleged insider trade took place on May 1, 2007. Compl. ¶¶ 353–55.

The full results of the ENHANCE trial were made public in early 2008. Compl. ¶ 45. As early outputs of the study had suggested, the results of the ENHANCE trial ultimately led cardiologists to conclude that Zetia, the novel component of Vytorin, could just be an "expensive placebo." *Id*. ¶142. In other words, "the data showed that [Vytorin] resulted in no larger beneficial effects [than did Zocor alone]." *Id.* ¶ 45.

In the aftermath of the ENHANCE trial results, Schering's "common stock price fell more than 52%, wiping out more than $23.63 billion in market capitalization, and the [c]ompany's preferred stock price similarly fell more than 40% during that time period, wiping out $1.039 billion in market capitalization." *Id.* ¶ 320. Plaintiffs allege that they, and/or their investment

managers, read the various alleged misrepresentations and relied on the information provided by Defendants when trading in Schering securities during the period in question. Compl. ¶¶ 329–30. Further, "[a]s a direct and proximate result of [Defendants'] wrongful conduct, Plaintiffs suffered damages in connection with their respective purchases and sales of the Company's securities during the [r]elevant [p]eriod." *Id.* ¶ 346; *see also id.* ¶¶ 350, 359, 364–65.

Two putative class actions against Defendant Merck were filed in 2008.[3] *See In re Schering-Plough Corp. / ENHANCE Sec. Litig.*, No. 2:08-cv-00397 (DMC) (JAD) (D.N.J. Sep. 25, 2012) ("Schering Class Action"); *In re Merck & Co., Inc., Vytorin/Zetia Sec. Litig.*, No. 2:08-cv-02177 (DMC) (JAD) (D.N.J. Sep. 25, 2012) ("Merck Class Action"). Both classes were certified by The Honorable Dennis M. Cavanaugh, U.S. District Judge, on September 25, 2012. *See* Schering Class Action, No. 2:08-cv-00397 at *1; Merck Class Action, No. 2:08-cv-00397 at *1. The district court approved the proposed class notice on December 28, 2012.[4] *See* Dec. 28, 2012 Order, Schering Class Action, No. 2:08-00397, Dkt. 337. In both cases, class members were permitted to opt out of the class until March 1, 2013. *See* [Proposed] Order Approving Notice and Summary Notice of Pendency of Class Action dated Dec. 19, 2012, ¶ 8, Schering Class Action, No. 2:08-cv-00397 (establishing March 1, 2013 as the final date to opt out of the class); Order

---

[3] On this motion to dismiss, the Court takes judicial notice of the orders and opinions entered in the underlying class action litigation. "It is well-settled that in deciding a motion to dismiss, a court can review 'documents attached to the complaint and matters of public record, and a court may take judicial notice of a prior judicial opinion.'" *Burry v. Cach LLC*, No. CIV.A. 14-2139, 2015 WL 328182, at *1 (E.D. Pa. Jan. 22, 2015) (quoting *Lum v. Bank of Amer.*, 361 F.3d 217, 221 n.3 (3d Cir. 2004)).

[4] Plaintiffs assert in their opposition brief that the class notice was not published until January 13, 2013; however, Plaintiffs attach no evidence confirming this fact.

dated Dec. 28, 2012, Schering Class Action, No. 2:08-cv-00397 (adopting the proposed order with minor changes).[5]

The class action defendants informed the district court on February 27, 2013, that the parties had reached a tentative settlement. *See* Letter dated Feb. 27, 2013, Schering Class Action, No. 2:08-cv-00397. The parties do not dispute that Plaintiffs timely opted out of the class on March 1, 2013. *See* Memorandum of Law in Support of Defendants' Motion to Dismiss at 7; Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss at 2.

Having opted out of their class membership, Plaintiffs filed their respective complaints in this Court on November 19, 2013 and January 14, 2014. *See* Compl.; *see also* North Sound Capital Compl. dated Jan. 14, 2014. Violations of sections 10(b), 20(a), and 20A of the Securities Exchange Act were alleged, in addition to common-law fraud. *See generally* Compl.

On November 17, 2014,[6] Defendants moved to dismiss all four cases pursuant to Fed. R. Civ. P. 12(b)(6). In support of their motion, Defendants assert that Plaintiffs' claims under the Securities Exchange Act are time-barred. More specifically, Defendants argue that the five-year limitations periods—found in 28 U.S.C. § 1658(b) for claims under §§ 10(b) and 20(a) and in 15 U.S.C. § 78t-1(b)(4) for claims under § 20A—are statutes of repose that bar the application of the class action tolling doctrine announced by the Supreme Court in *American Pipe Constr. Co. v. Utah*, 414 U.S. 538 (1974). ("*American Pipe* tolling"). Further, Defendants contend that Plaintiffs' common-law fraud claims should be dismissed for lack of supplemental jurisdiction, pending

---

[5] Judge Cavanaugh's order applied to both class actions. *See id.*

[6] Initially, this matter was stayed because the Supreme Court granted certiorari in *Police & Fire Retirement System of the City of Detroit v. IndyMac MBS, Inc.,* 721 F.3d 95 (2d Cir. 2013). However, the Court ultimately dismissed certiorari as improvidently granted, and this case resumed. *See Pub. Emp. Ret. Syst. of Miss. v. IndyMac MBS, Inc.*, 135 S. Ct. 42 (2014).

dismissal of the federal securities' claims, or, in the alternative, that the fraud claim is inadequately pled.

## II. Standard of Review

When reviewing a motion to dismiss on the pleadings, courts "accept all factual allegations [in the complaint] as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008) (internal citation and quotation marks omitted). In *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court clarified the 12(b)(6) standard. Specifically, the Court "retired" the language contained in *Conley v. Gibson,* 355 U.S. 41, 45–46 (1957), that "a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id.* at 561 (quoting *Conley*, 355 U.S. at 45–46). Instead, the factual allegations set forth in a complaint "must be enough to raise a right to relief above the speculative level." *Id.* at 555. As the Third Circuit has stated, "[t]he Supreme Court's *Twombly* formulation of the pleading standard can be summed up thus: 'stating . . . [a] claim requires a complaint with enough factual matter (taken as true) to suggest' the required element. This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." *Phillips,* 515 F.3d at 234 (quoting *Twombly*, 127 U.S. at 556); *see also Covington v. Int'l Ass'n of Approved Basketball Officials*, 710 F.3d 114, 118 (3d Cir. 2013) ("[A] claimant does not have to 'set out in detail the facts upon which he bases his claim.' . . . The pleading standard 'is not akin to a 'probability requirement[;] . . . to survive

a motion to dismiss, a complaint merely has to state a 'plausible claim for relief.'" (citations omitted)).

In affirming that *Twombly*'s standards apply to all motions to dismiss, the Supreme Court explained several principles. First, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, "only a complaint that states a plausible claim for relief survives a motion to dismiss." *Id.* at 679. Therefore, "a court considering a motion to dismiss can choose to begin by identifying pleadings that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* Ultimately, "a complaint must do more than allege the plaintiff's entitlement to relief. A complaint has to 'show' such an entitlement with its facts." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009). However, "a district court ruling on a motion to dismiss may not consider matters extraneous to the pleadings . . . [although a] limited exception exists for documents that are integral to or explicitly relied upon in the complaint." *W. Penn Allegheny Health Sys., Inc. v. UPMC*, 627 F.3d 85, 97 n.6 (3d Cir. 2010), *cert. denied*, 132 S.Ct. 98 (2011) (citation and internal quotation marks omitted).

The Third Circuit has reiterated that "judging the sufficiency of a pleading is a context-dependent exercise" and "[s]ome claims require more factual explication than others to state a plausible claim for relief." *Id.* at 98. "For example, it generally takes fewer factual allegations to state a claim for simple battery than to state a claim for antitrust conspiracy." *Id.* That said, the Rule 8 pleading standard is to be applied "with the same level of rigor in all civil actions." *Id.* (quoting *Iqbal*, 129 S.Ct at 1953).

## III. Discussion

### A.  The statutes at issue are statutes of repose.

Defendants argue that the limiting statutes at issue are statutes of repose that had run as of November 19, 2012, May 1, 2012, and January 3, 2013, respectively—five years after the final alleged misrepresentations and insider trades applicable to the respective claims were made. In response, Plaintiffs argue that because the statutes are statutes of limitation, which may be tolled based on principles of equity, their Complaints are timely.

Under 28 U.S.C. § 1658(b), which applies to actions brought under §§ 10(b) & 20(a) of the Securities Exchange Act:

> a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
> > (1) 2 years after the discovery of the facts constituting the violation; or
> > (2) 5 years after such violation.

*Id.* Meanwhile, 15 U.S.C. § 78t-1(b)(4), which applies to § 20A of the Securities Exchange Act, is titled "Statute of limitations," and states that "[n]o action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation." *Id.*

This Court defers to the Supreme Court's distinction between statutes of limitations and of repose identified in *CTS Corp. v. Waldburger*:

> Statutes of limitations and statutes of repose both are mechanisms used to limit the temporal extent or duration of liability for tortious acts. Both types of statute can operate to bar a plaintiff's suit, and in each instance time is the controlling factor. There is considerable common ground in the policies underlying the two types of statute. But the time periods specified are measured from different points, and the statutes seek to attain different purposes and objectives. . . . .

> In the ordinary course, a statute of limitations creates a time limit for suing in a civil case, based on the date when the claim accrued. Measured by this standard, a claim accrues in a personal-injury or property-damage action when the injury occurred or was discovered. . . . .

A statute of repose, on the other hand, puts an outer limit on the right to bring a civil action. That limit is measured not from the date on which the claim accrues but instead *from the date of the last culpable act or omission of the defendant*. A statute of repose bar[s] any suit that is brought after a specified time since the defendant acted (such as by designing or manufacturing a product), even if this period ends before the plaintiff has suffered a resulting injury. The statute of repose limit is not related to the accrual of any cause of action; the injury need not have occurred, much less have been discovered. The repose provision is therefore equivalent to a cutoff, in essence an absolute . . . bar on a defendant's temporal liability.

134 S. Ct. 2175, 2182–83 (2014) (citations and internal quotation marks omitted) (emphasis added). Thus, this Court must determine whether 28 U.S.C. § 1658(b) and 15 U.S.C. § 78t-1(b)(4) "bar[s] any suit that is brought after a specified time since the defendant acted" or establish limitations "based on when the claim accrued," *CTS Corp.*, 134 S. Ct. at 2182, to determine whether these are statutes of limitation or repose.

Here, I find that the five-year limitation period contained in 28 U.S.C. § 1658(b)(2) is a statute of repose. The Supreme Court referred to § 1658(b)(2) as such in *Merck & Co. v. Reynolds*, 559 U.S. 633 (2010), noting that defendants have "total repose after five years" under the statute. *Id.* at 650; *see also In re Exxon Mobil Corp. Sec. Lit.*, 500 F.3d 189, 199–200 (3d Cir. 2007) ("Notably, § 9(e) and § 1658(b)(2) set their statutes of repose relative to the 'violation,' not to the 'accrual,' of the cause of action."). The plain language of the statute comports with the Supreme Court's conclusion. Section 1658 (b)(2) sets out that "a private action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning securities laws . . . may be brought not later than . . . 5 years after such violation." *Id.* Unlike its counterpart § 1658(b)(1), this statute does not have any contingencies for discovery of the violation; its time limitation does not begin "on the date when the claim accrued." *See CTS Corp.*, 134 S. Ct. at 2182. Instead, this statute bars "any suit that is brought after a specified time

9

since the defendant acted." *See id.* Indeed, § 1658(b)(2) has been applied in this district as a statute of repose as recently as 2012. *See In re Merck & Co., Inc. Sec. Lit.*, No. 11-6259 (SRC), 2012 WL 6840532, at *2 (D.N.J. Dec. 20 2012). Thus, I find that Section 1658(b)(2) is a statute of repose.[7]

This Court finds similar support in concluding that 15 U.S.C. § 78t-1(b)(4) is also a statute of repose, notwithstanding its title as a statute of limitations.[8] The Supreme Court has referred to this provision as a statute of repose. *Lempf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 355 (1991); *see also Anixter v. Home-Stake Prod. Co.*, 939 F.2d 1420, 1441 (10th Cir.) *amended on denial of reh'g*, 947 F.2d 897 (10th Cir. 1991) *and cert. granted, judgment vacated on other grounds sub nom. Dennler v. Trippet*, 503 U.S. 978 (1992). Further, other courts have also analyzed § 78t-1(b)(4) as a statute of repose. *See, e.g., Kaplan v. S.A.C. Capital Advisors, L.P.*, 40 F. Supp. 3d 332, 342 (S.D.N.Y. 2014). Moreover, the language of the statute is functionally similar to that in § 1658(b)(2), discussed *supra*. After all, § 78t-1(b)(4) makes clear that "[n]o action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation." 15 U.S.C. § 78t-1(b)(4). This limitation clearly

---

[7] Plaintiffs argue that no distinction exists between § 1658(b)(1) and § 1658(b)(2) such that the former should be treated as a statute of limitations while the latter should be considered a statute of repose. However, the former subsection states that a suit for securities violations "may be brought not later than . . . 2 years after the discovery of the violation." 28 U.S.C. § 1658(b)(1). Clearly, this provision begins at the accrual of the cause of action—the discovery of the securities violation—and thus constitutes a statute of limitations. By contrast, in § 1658(b)(2), the time limit begins to run at the time of the final violation. 28 U.S.C. 1658(b)(2). Further, Plaintiffs' assertion that the Third Circuit's reasoning in *Exxon Mobile* was inadequate is unpersuasive; this Court has no authority to reconsider questions of law decided by our Court.

[8] Plaintiffs' argument that the title of the provision should sway the Court is unpersuasive; as the Supreme Court said in *CTS Corp.*, "Congress has used the term 'statute of limitations' when enacting statutes of repose." 134 S. Ct. at 2185.

begins to run not when a claim accrues but rather at the time of the last violation, fulfilling the functional definition of a statute of repose. *See CTS Corp.*, 134 S. Ct. at 2182.[9]

**B.  As a form of legal tolling, *American Pipe* tolls the statutes of repose here.**

The Supreme Court in *American Pipe* held that "the commencement of [an] original class action suit tolls the running of the statute for all purported members of the class . . . ." *American Pipe*, 414 U.S. at 553.[10] To that end, the Court reasoned that "this interpretation of [Rule 23] is necessary to insure effectuation of the purposes of litigative efficiency and economy that the Rule in its present form was designed to serve." *Id.* at 555–56 (emphasis added). More specifically, "a

_____

[9] Plaintiffs point to a line of non-binding cases referring to § 78t-1(b)(4) as a statute of limitations. The non-binding nature of those cases aside, none of those cases rely on the provision being a statute of limitations instead of being a statute of repose; rather, these cases appear to merely refer to the statute as such because of the statute's title. *See, e.g.*, *Johnson v. Aljian*, 490 F.3d 778, 781 n.12 (9th Cir. 2007) ("Because we do not believe our conclusion depends on this distinction and because Section 20A titles the provision 'Statute of limitations,' we will refer to Section 20A's period of limitations as a 'statute of limitations' without deciding the matter." (emphasis added)).

[10] More specifically, the Court held that such tolling applies "in [that] posture, at least where class action status has been denied solely because of failure to demonstrate [numerosity]" for those who "file timely motions to intervene after the court has found the suit inappropriate for class action status." *American Pipe*, 414 U.S. at 552–53. The Court expanded the *American Pipe* doctrine in *Crown Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983) to apply to class members who file independent complaints after class certification is denied. *See Joseph*, 223 F.3d at 1167 (citing *Crown*, 462 U.S. at 353–54); *see also Eisen v. Carlisle & Jacquelin*, 417 U.S. 156 (1974).

Though the parties do not raise the issue, I note that most courts that have considered the issue have concluded that *American Pipe* tolling, as extended by *Crown Cork*, applies not only to class actions in which class certification is denied, but also to class actions in which class certification is granted and the plaintiffs in question opt out of the class. *See Edwards v. Boeing Vertol Co.*, 717 F.2d 761, 766 (3d Cir. 1983) *cert. granted, judgment vacated on other grounds*, 468 U.S. 1201 (1984) ("Reliance on the pendency of a certified class action is *more* reasonable than the reliance on an uncertified class action which those cases approve.") (emphasis added); *see also Realmonte v. Reeves*, 169 F.3d 1280, 1284 (10th Cir. 1999) (collecting cases); *Prieto v. John Hancock Mut. Life Ins. Co.*, 132 F. Supp. 2d 506, 520 (N.D. Tex. 2001) *aff'd*, 35 Fed. App'x 390 (5th Cir. 2002) *abrogated on other grounds by Newby v. Enron Corp.*, 542 F.3d 463 (5th Cir. 2008); *but see Wahad v. City of New York*, 1999 WL 608772 (S.D.N.Y Aug. 12, 1999) (rejecting the application of *American Pipe* tolling where the would-be putative plaintiff in question had filed an individual action *before* the underlying class certification motion had been decided).

[Rule 23] federal class action is no longer an invitation to joinder but a truly representative suit designed to avoid, rather than encourage, unnecessary filing of repetitious papers and motions." *Id.* at 550 (internal quotation marks omitted). Indeed, "[a] contrary rule allowing participation only by those potential members of the class who had earlier filed motions to intervene in the suit would deprive Rule 23 class actions of the efficiency and economy of litigation which is a principal purpose of the procedure." *Id.* at 553; *see also Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345, 352 (1983) (clarifying that *American Pipe* tolling is not limited to intervenors but rather also applies to "class members who choose to file separate suits"). At issue is whether the tolling doctrine in *American Pipe* applies to the statutes of repose in this matter.

According to Defendants, the statutes of repose here are subject to neither equitable nor legal tolling, Plaintiffs' former membership in a class action notwithstanding. Relying on Second Circuit case law, Defendants assert that membership in a putative class action cannot toll a statute of repose because such tolling was established by the Court in *American Pipe*, and since it is a Court-made doctrine, it must be equitable in nature; statutes of repose cannot be subject to equitable tolling by definition. *See Police & Fire Retirement Syst. of the City of Detroit v. IndyMac MBS, Inc.*, 721 F.3d 95, 109 (2d Cir. 2013) ("*IndyMac*"). Under such circumstances, Defendants argue, Plaintiffs' claims would be time-barred. Plaintiffs disagree and argue that *American Pipe* tolling is legal in nature and thus may reach even statutes of repose.

### 1. *American Pipe* tolling is legal tolling.

Defendants contend that "[t]he pendency of a class action in *American Pipe* provided grounds for 'equitable' tolling of the statute of limitation—as opposed to 'legal' or statutory tolling." Defs.' Br. at 16. Plaintiffs, however, counter that "*American Pipe* [tolling] lacks the

signature characteristics of equitable tolling and is instead a form of 'legal tolling' applicable to statutes of repose." Pls.' Br. at 13–14.

In explaining the difference between legal and equitable tolling as described by some lower courts, and observing that those courts have characterized *American Pipe* tolling as legal tolling, the Supreme Court has stated as follows:

> In *American Pipe*, we held that "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." We based our conclusion on "the efficiency and economy of litigation which is a principal purpose of Fed. Rule Civ. Proc. 23 class actions." Although we did not employ the term "legal tolling," some federal courts have used that term to describe our holding on the ground that the rule "is derived from a statutory source," whereas equitable tolling is "judicially created."

*Credit Suisse Sec. (USA) LLC v. Simmonds*, 132 S. Ct. 1414, 1420 n.6 (2012) (internal citations omitted). However, the Court went on to note that in the case at bar, "[t]he label attached to the rule does not matter," *id.*, and, thus, avoided holding that *American Pipe* tolling is indeed a form of legal tolling. Further, no Third Circuit precedent exists on the issue. Accordingly, this Court will consider the issue in light of the following persuasive authority.

The Tenth Circuit in *Joseph v. Wiles*, 223 F.3d 1155, 1166–67 (10th Cir. 2000), found that *American Pipe* tolling was legal in nature. In so finding, the Tenth Circuit noted that *American Pipe* tolling "serves the purposes of Rule 23" and "encourages judicial economy." *Id.* at 1167. Accordingly, "the tolling [first applied in *American Pipe*] is legal rather than equitable in nature." *Id.* at 1166. The Tenth Circuit's reasoning has been adopted by the majority of courts that have confronted the issue. *See, e.g.*, *Bright v. United States*, 603 F.3d 1273, 1287–88 (Fed. Cir. 2010) (analyzing and applying *American Pipe* as "statutory tolling" that "is not triggered by equitable considerations"); *Albano v. Shea Homes Ltd. P'ship*, 634 F.3d 524, 534 (9th Cir. 2011) ("The majority of the lower federal courts that have addressed the issue have held that *American Pipe*

tolling is not equitable, but legal.") (collecting cases);[11] *Arivella v. Lucent Techs., Inc.*, 623 F.

Supp. 2d 164, 176 ("*American Pipe* tolling is a species of legal tolling, in that it is derived from a

statutory source, in this case Rule 23." (internal quotation marks and citation omitted)).[12]

The Tenth Circuit's reasoning was also adopted by a court in this District, in *In re Merck*

*& Co., Inc. Sec., Derivative & ERISA Litig.*, No. 11-6259, 2012 WL 6840532 (D.N.J. Dec. 20,

---

[11] The Ninth Circuit in *Albano* did not ultimately rule on this issue because state law controlled, as the class actions in question had been removed to federal court. 634 F.3d at 528. The Ninth Circuit chose instead to certify the question to the Arizona Supreme Court. *Id.* at 540–41. Ultimately, the Supreme Court of Arizona found, without deciding whether *American Pipe* tolling was legal or equitable, that the tolling doctrine did not apply to the state statute of repose at issue, because that statute, governing litigation related to property improvements, states that "'in no event may an action be brought more than nine years after the substantial completion of the improvement.'" *Albano v. Shea Homes Ltd. P'ship*, 227 Ariz. 121, 127 (2011) (quoting A.R.S. § 12–552(B)).

[12] *See also Andrews v. Chevy Chase Bank, FSB*, 243 F.R.D. 313, 316-17 (E.D. Wis. 2007) ("Although the Supreme Court has held that equitable tolling does not apply to statutes of repose, that holding is not applicable to the present case because the [*American Pipe*] tolling that plaintiffs seek is legal rather than equitable in nature.") (internal citation omitted); *In re Enron Corp. Sec. Litig.*, 465 F. Supp. 2d 687, 716-18 (S.D. Tex. 2006) (finding that *American Pipe* tolling is legal in nature); *Ballard v. Tyco Int'l, Ltd.*, MDL No. 02-MD-1335, 2005 WL 1683598, at *7 (D.N.H. July 11, 2005) ("Legally tolling the repose period while a class action is pending therefore does not compromise the purpose served by statutes of limitations and repose."); *Salkind v. Wang*, Civ. A. No. 93-10912, 1995 WL 170122, at *2-3 (D. Mass. Mar. 30, 1995) ("Although equitable tolling is inapplicable, *American Pipe* does toll the *Lampf* bar of repose for as many of [the plaintiff's] claims which are part of a class action against the same defendant(s) until the class is decertified or [the plaintiff] opts out.") (citations omitted); *Mott v. R.G. Dickinson & Co.*, No. 92 Civ. 1450, 1993 WL 63445, at *5 (D. Kan. Feb. 24, 1993) (holding that *American Pipe* tolling is legal in nature and not prohibited with respect to statutes of repose under *Lampf*); *Hrdina v. World Savings Bank, FSB*, No. C 11-05173, 2012 WL 294447, at *3 (N.D. Cal. Jan. 31, 2012) ("[T]he weight of federal authority favors the view that [the] *American Pipe* . . . rule should be characterized as a rule of statutory tolling.") (internal quotation marks omitted); *Maine Ret. Sys. v. Countrywide Fin. Corp.*, 722 F. Supp. 2d 1157, 1166 (C.D. Cal. 2010) (*American Pipe* tolling is "legal tolling"); *Champion v. Homa*, No. 3:03 Civ. 275, 2008 WL 900967, at *10–11 (M.D. Ala. Mar. 31, 2008) ("Although the Supreme Court . . . held that equitable tolling does not apply to statutes of repose, a majority of lower courts addressing the issue have declined to extend that holding to cases in which a plaintiff argues the pendency of a prior class action should toll the running of a statute of limitations or a statute of repose.").

2012). After examining the history of the *American Pipe* doctrine, that court deferred to the Tenth

Circuit's view, noting that the majority of the district courts have so applied *American Pipe*. *Id.* at

\*4–5. However, the decision hinged primarily upon the fact that *Joseph* was the only case on point

from a U.S. Court of Appeals at the time. *See In re Merck*, 2012 WL 6840532, at \*5.

        However, in *Indymac*, the Second Circuit suggested that the *American Pipe* tolling doctrine

is likely one based in equity, not law. *See IndyMac*, 721 F.3d at 107–08. Though not ultimately

holding on the issue,[13] the Second Circuit noted that the Court in *American Pipe* "seemed to rely

on the equitable power of the courts to toll statutes of limitations," *id.* at 105, though the Court

never mentioned principles of equity in its decision. *See generally American Pipe*, 414 U.S. 538.

Ultimately, the Second Circuit refused to apply *American Pipe* tolling to a statute of repose in the

securities context. *See IndyMac*, 721 F.3d at 109–10. A minority of courts—none outside of the

Second Circuit—has relied on, or followed, on the reasoning in *IndyMac*. *See, e.g.*, *In re Bear

Stearns Cos., Inc. Secs., Deriv., & ERISA Lit.*, No. 08 MDL 1963, 995 F. Supp. 2d 291, 299–300

(S.D.N.Y. Feb. 5, 2014).[14]

---

[13] The Second Circuit ultimately decided that if the *American Pipe* doctrine was one of equitable
tolling, it could not be applied to statutes of repose by definition. *See IndyMac*, 721 F.3d at 109
(citing *Lampf, Pleva, Lipkind, Prupis & Petigrow v. Gilbertson*, 501 U.S. 350, 363 (1991)). In the
alternative, if *American Pipe* tolling was legal in nature, it still could not apply to statutes of repose
because doing so would "enlarge or modify a substantive right and violate the Rules Enabling
Act." *IndyMac*, 721 F.3d at 109; *see also Wal-Mart Stores v. Dukes*, 131 S. Ct. 2541, 2561 (2011);
28 U.S.C. § 2072. Accordingly, the Second Circuit never decided what sort of tolling *American
Pipe* represents. *See IndyMac*, 721 F.3d at 109 ("*American Pipe*'s tolling rule, whether grounded
in equitable authority or on Rule 23, does not extend to the statute of repose in Section 13."). The
latter issue—on whether the application of *American Pipe* violates the Rules Enabling Act—is
addressed *infra*.

[14] The same judge in this District who decided *In re Merck & Co., Inc.*, 2012 WL 6840532,
addressed the issue once more in 2014, after the *IndyMac* decision. *See Prudential Ins. Co. of
America v. Bank of America, Nat'l Assoc.*, 14 F. Supp. 3d 591 (D.N.J. Apr. 17, 2014)
*reconsideration granted in part on other grounds*, No. CIV.A. 13-1586 SRC, 2014 WL 2999065
(D.N.J. July 2, 2014). That court was unpersuaded by the arguments put forth in *IndyMac* and

Defendants also point to cases that have considered *American Pipe* tolling in the statute of limitations context, which cite to the Court's statement that "[i]n recognizing judicial power to toll statutes of limitation in federal courts we are not breaking new ground," to suggest that the tolling is grounded in equity. Such courts have generally labeled *American Pipe* as equitable tolling. *See e.g.*, *Bridges v. Dept. of Maryland State Police*, 441 F.3d 197, 211 (4th Cir. 2006); *Youngblood v. Dalzell*, 925 F.2d 954, 959 (6th Cir. 1991). However, those labels have largely come "in circumstances where the distinction between legal and equitable tolling was not dispositive," *see Albano*, 634 F.3d at 537 (noting that the cases cited for this proposition in *American Pipe* were "cases involving *equitable* tolling"); *see e.g.*, *Bridges*, 441 F.3d at 211; *Youngblood*, 925 F.3d at 959.[15]

---

reemphasized the rationales of the *In re Merck* decision two years earlier. *Id.* at 618. Ultimately, the court decided that "[n]one of the purposes of the 1933 Act [would] be served by barring [those] claims" and denied the motion to dismiss plaintiffs' securities fraud claims. *Id.*

[15] Defendants argue that the Supreme Court has referred to *American Pipe* tolling as a species of "equitable tolling" and cites to three examples: (1) *Young v. United States*, 535 U.S. 43, 49 (2002); (2) *Irwin v. Dep't of Veterans Affairs*, 498 U.S. 89, 96 (1990); and (3) *Greyhound Corp. v. Mt. Hood Stages, Inc.*, 437 U.S. 322, 338 n* (1978) (Burger, J. concurring).

However, in both *Young* and *Greyhound*, the Court merely cites to *American Pipe* for the general principle that a federal court has the authority to toll a statute of limitations on the basis of equitable considerations. *Young*, 535 U.S. at 49 (citing to *American Pipe*'s background section, among those in other cases, for the proposition that "[i]t is hornbook law that limitations periods are "customarily subject to 'equitable tolling'""); *Greyhound*, 437 U.S. at 338 n.* (citing generally to *American Pipe*, among other cases, for the proposition that "[t]he authority of a federal court, sitting as a chancellor, to toll a statute of limitations on equitable grounds is a well-established part of our jurisprudence.").

While the Court in *Irwin* did cite to *American Pipe* for the proposition that it has "allowed equitable tolling in situations where the claimant has actively pursued his judicial remedies by filing a defective pleading during the statutory period," it did so in *dicta* and in passing, in a situation wherein the distinction between legal and equitable tolling was not at issue. *See id.* Moreover, the Court's comment in *Irwin* precedes the Court's more recent statement on *American Pipe*: that some federal courts characterize *American Pipe* tolling as legal because it is based upon the dictates in Rule 23. *See Credit Suisse*, 132 S.Ct. at 1419 n.6.

Having reviewed the applicable case law, I adopt the reasoning in *Joseph* and the majority of courts that have analyzed this issue and find that because *American Pipe* tolling is a doctrine derived from the Court's interpretation of Rule 23 of the Federal Rules of Civil Procedure, *American Pipe* tolling is a form of legal tolling. As described in *Joseph*,

> Equitable tolling is appropriate where, for example, the claimant has filed a defective pleading during the statutory period, or where the plaintiff has been induced or tricked by his adversary's misconduct into allowing the filing deadline to pass. In contrast, the tolling [the plaintiff] claims is the legal tolling that occurs any time an action is commenced and class certification is pending.

*Joseph*, 223 F.3d at 1166–67 (citations omitted). Rather than an equitable doctrine, *American Pipe* tolling is more appropriately characterized as a legal interpretation of Rule 23. Again, to quote the Tenth Circuit:

> Tolling the limitations period for class members while class certification is pending serves the purposes of Rule 23 of the Federal Rules of Civil Procedure governing class actions. Rule 23 encourages judicial economy by eliminating the need for potential class members to file individual claims. If all class members were required to file claims in order to insure the limitations period would be tolled, the point of Rule 23 would be defeated.

*Id.* at 1167.

Further, as noted above, the Supreme Court named such tolling an "interpretation" of the statutorily enacted Rule 23, interpreted as such in order to preserve the Rule's purpose. *See* 28 U.S.C. § 2072; FED. R. CIV. P. 23; *American Pipe*, 414 U.S. at 555–56. The Tenth Circuit in *Joseph* recognized it as such in applying *American Pipe* tolling for a putative class member of a securities class action who filed independently after a failed motion for class certification. 223 F.3d at 1157–58.

For all of these reasons, I find that *American Pipe* tolling is legal in nature.

17

### 2. *American Pipe* tolling, as a legal doctrine, applies to the statutes of repose here

In the alternative, Defendants argue that, even if *American Pipe* tolling were legal in nature, under the Rules Enabling Act ("REA"), such tolling cannot be used to abridge what Defendants describe as their substantive rights to be free from threat of litigation under the statutes of repose at issue.

"In the Rules Enabling Act, Congress authorized this Court to promulgate rules of procedure subject to its review, but with the limitation that those rules 'shall not abridge, enlarge or modify any substantive right.'" *Shady Grove Orthopedic Assocs., P.A. v. Allstate Ins. Co.*, 559 U.S. 393, 406-07 (2010) (quoting 28 U.S.C. § 2072(b)). The Supreme Court has long held that

> this limitation means that the Rule must really regulate procedure,—the judicial process for enforcing rights and duties recognized by substantive law and for justly administering remedy and redress for disregard or infraction of them. The test is not whether the rule affects a litigant's substantive rights; most procedural rules do. What matters is what the rule itself regulates: If it governs only the manner and the means by which the litigants' rights are enforced, it is valid; if it alters the rules of decision by which the court will adjudicate [those] rights, it is not.

*Id.* (internal citations and quotation marks omitted).

The courts that have concluded that *American Pipe* tolling is legal, not equitable, have found that such tolling applies to statutes of repose. *See, e.g.*, *Joseph*, 223 F. 3d at 1166–67; *Bright*, 603 F.3d at 1279; *Arivella*, 623 F. Supp. 2d at 176–77; *In re Merck & Co., Inc.*, 2012 WL 6840532, at *5.[16]

Defendants again rely upon *Indymac*, in which the Second Circuit held that the "extension [of *American Pipe* tolling] to the statute of repose in Section 13 would be barred by the Rules Enabling Act" because "the statute of repose in Section 13 creates a substantive right,

---

[16] See also *supra* note 12 (collecting cases).

extinguishing claims after a three-year period. Permitting a plaintiff to file a complaint or intervene after the repose period set forth in Section 13 of the Securities Act has run would therefore necessarily enlarge or modify a substantive right and violate the Rules Enabling Act."[17] *Indymac*, 721 F.3d at 109.

However, this Court declines to apply the Second Circuit's analysis to the circumstances here. Courts regularly apply legal tolling, and in particular *American Pipe* tolling, to statutes of repose. *See Albano*, 634 F.3d at 534 ("[T]he majority of federal courts . . . hold that *American Pipe* tolling is legal tolling and applies to statutes of repose."). Indeed, the predominant factor for distinguishing between legal and equitable tolling doctrines lies in whether the tolling in question may be applied to statutes of repose. *See id.* Thus, having determined that the *American Pipe* tolling doctrine is legal, not equitable, it follows that such tolling would generally apply to the statutes of repose at issue.

Moreover, the doctrine as applied here would merely govern "the manner and the means by which the litigants' rights are enforced"; it does not seek to "alter[] the rules of decision by which the court will adjudicate those rights." *Shady Grove*, 559 U.S. at 407; *see, e.g.*, *In re BP p.l.c. Sec. Litig.*, No. 4:13-CV-1393, 2014 WL 4923749, at *5 (S.D. Tex. Sept. 30, 2014) ("Viewing the filing of a class action as a 'prefiling' of all unnamed class members' claims means

---

[17] The statute of repose in Section 13 of the Securities Act, states, in relevant part, that "*[i]n no event* shall any such action be brought to enforce a liability created under section 77k or 77l(a)(1) of this title more than three years after the security was bona fide offered to the public, or under section 77l(a)(2) of this title more than three years after the sale." 15 U.S.C. § 77m (emphasis added). That language differs slightly from the statutes of repose at issue here. *See* 28 U.S.C. § 1658(b)(2) ("[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws. . .may be brought not later than . . . (2) 5 years after such violation."); 15 U.S.C. § 78t-1(b)(4) ("No action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation.").

that the concern identified by the Second Circuit in *IndyMac*—that applying *American Pipe* tolling somehow abridges a defendant's substantive right to be free from suit after a specific period of time—is illusory. So long as the defendant has fair notice of the type and number of claims that could be asserted against it, which should be required for *American Pipe* tolling in the first instance, then there is no unfair surprise when a class member assumes responsibility for its own individual claim . . . ."); *Prudential Ins. Co.*, 14 F. Supp. 3d at 618 ("None of the purposes of the [Securities Act of] 1933 . . . will be served by barring these claims; Defendants cannot contend that they were not on notice of them. The filing of a class action suit was sufficient to preserve these claims."). Here, Defendants were on notice that (1) a securities class action had been filed against them since 2008; (2) the class was certified on September 25, 2012; and (3) that Plaintiffs timely opted out of the class on March 1, 2013, following the announcement of a class action settlement, to preserve their individual claims. Therefore, that Plaintiffs would proceed to exercise their right to file their individual claims a few months later should hardly come as a surprise to Defendants, or prejudice their right to eventually be free from suit.

Defendants further rely on the Third Circuit decision in *Lieberman v. Cambridge Partners, L.L.C.*, 432 F.3d 482 (3d Cir. 2005), to argue that tolling these statutes of repose would constitute an extension of those statutes, thereby creating new causes of action that modify substantive rights. In *Lieberman*, the Third Circuit held that 28 U.S.C. § 1658(b), which extended the limitations period of Sarbanes Oxley private securities fraud claims, did not "revive[] previously expired securities fraud claims," because (1) "there is no clear evidence that Congress intended Section 804 to revive previously expired claims" and (2) at issue were "claims extinguished by a statute of repose," allowing such claims to proceed once the statutes had run "would therefore affect substantive rights by creating new causes of action." 432 F.3d at 491–92.

However, the *Lieberman* decision is distinguishable from the case at bar. In *Lieberman*, the Third Circuit confronted the retroactive application of an extended statute of repose enacted after the previously applicable repose period had already run. *See Lieberman*, 432 F.3d at 490–91. At issue here, however, is the tolling of a statute of repose that had remained unchanged throughout the relevant time frame and that had not been extinguished prior to the requested tolling period. While the Third Circuit acknowledged that substantive rights are tied up in statutes of repose, *see Lieberman*, 432 F.3d at 492, those rights are neither abridged nor modified by applying *American Pipe* tolling here, because no new causes of action would be created by the mere application of the tolling doctrine.[18]

Therefore, I find that *American Pipe* tolling applies in this case. As stated *supra*, the statute of repose in 28 U.S.C. § 1658(b)(2), which applies to Plaintiffs' Section 10(b) and 20(a) securities fraud claims, begins to run on the date of the date of the last alleged misrepresentation. Here, the last alleged misrepresentations at issue here were made by Schering on November 19, 2007, and by Merck on January 30, 2008. Compl. ¶¶ 287–89; North Sound Compl. dated Jan. 13, 2014, No. 03:14-cv-242 (FLW) (DEA), ¶¶ 317–18. Meanwhile, the statute of repose in 15 U.S.C. 78t-1(b)(4),

---

[18] Both parties argue that policy and equity considerations favor their interpretation of *American Pipe* and its application to the statutes of repose at issue here. Defendants argue that "[r]ather than proceeding in tandem with the Vytorin Class Actions that were before Judge Cavanaugh from 2008 to 2013—when documents were produced, witness were deposed, and trial preparations were completed—Plaintiffs now seek to bring four new lawsuits that assert virtually identical claims before this Court. Aside from being legally foreclosed by the [REA], interpreting *American Pipe* to sanction this sort of conduct would neither be equitable nor efficient." Defs.' Br. at 28. Plaintiffs, however, argue that "accepting Defendants' position would impair the efficient operation of Rule 23 and the judicial system," because doing so "would result in significant numbers of protective lawsuits following the filing of every class action, and would effectively eviscerate the entire purpose of Rule 23." Pl.'s Opp. Br. at 31–32. For the reasons discussed *infra* in note 19, the Court finds Plaintiffs' arguments to be more persuasive.

which applies to Plaintiffs' Section 20(a) insider trading claims, begins to run on the date of the "last transaction that is the subject of the violation," and here, the last alleged insider trade occurred on May 1, 2007. Compl. 353–55. However, both statutes were tolled pursuant to Rule 23, as interpreted by *American Pipe*, by the filings of the Schering Class Action, on January 18, 2008, and the Merck Class Action, on May 5, 2008, for the respective plaintiffs; both class actions were filed less than a year after the statutes began to run. The statutes remained tolled until Plaintiffs opted out of both class actions, on March 1, 2013.[19] Plaintiffs filed the present actions on

---

[19] The Court notes that Judge Cavanaugh did not certify the class until September 25, 2012, more than (1) five years after the date of the latest alleged insider trade and (2) four years and ten months after the date of the latest alleged misrepresentation made by Schering. *See* Schering Class Action, No. 2:08-cv-00397 at *1; Merck Class Action, No. 2:08-cv-00397 at *1. Further, following the certification, the district court did not approve the proposed class notice form until December 28, 2012, more than five years after the date of the latest alleged misrepresentation made by Schering. Finally, Plaintiffs were given the opportunity to opt out of the class until March 1, 2013, more than five years after both of the latest alleged misrepresentations and the last alleged insider trade. If the Court accepted Defendants' argument, (1) Plaintiffs' insider trading claims would have been extinguished before the district court ruled on the class certification motion, (2) the Schering Plaintiffs' securities fraud claims would have been extinguished less than two months after the class action was certified, and (3) the Merck Plaintiffs' securities fraud claims would have been extinguished less than a month after the Court approved the proposed class notice. Such a result would appear to run counter to the dictates and purpose of Rule 23. *See Realmonte*, 169 F.3d at 1284 (noting that without *American Pipe* tolling, Rule 23's opt-out provisions "would be irrelevant" because the "limitations period for absent class members would, more often than not, have expired, making the right to pursue individual claims meaningless"); *In re Merck * Co., Inc.*, 2012 WL 6840532, at *3 (*American Pipe* serves "the purpose of the opt-out provision of Rule 23(c)92), [because] without tolling, the right to pursue individual claims might be rendered meaningless."); *cf. Eisen v. Carlisle and Jacquelin*, 417 U.S. 156, 176 (1974) (holding that individual notice to identifiable class members is "an unambiguous requirement of Rule 23" because "each class member who can be identified through reasonable effort must be notified that he may request exclusion from the action and thereby reserve his opportunity to press his claim separately or that he may remain in the class and perhaps participate in the management of the action.").

Further, Defendants' position that Plaintiffs could and should have opted back into the class action upon the Second Circuit's decision in *Indymac*, notwithstanding the expiration of the statutes of repose, makes little sense. *See* Defs.' Br. at 27. First, *Indymac* is a non-binding Second Circuit opinion which should not necessarily dictate the behavior of parties outside that circuit. Second, once Plaintiffs opted out of the class action and, according to Defendants, the statutes of repose had already run, it is difficult to understand how Plaintiffs could have a viable claim, as

November 14, 2013, and January 14, 2014, again less than a year after the statutes began to run once more. Accordingly, neither statute of repose had yet run on Plaintiffs' claims; therefore, Plaintiffs' claims may not be dismissed on the basis that they are time-barred.

### C.  Plaintiffs' common-law fraud claim is adequately pled.

Finally, Defendants argue that Plaintiffs' common-law fraud claims must also be dismissed. Specifically, Defendants contend that Plaintiffs failed to adequately plead actual reliance on the alleged misrepresentations made by the Defendants, an essential element to a fraud claim, thus necessitating dismissal under Rule 12(b)(6) of the Federal Rules of Civil Procedure.[20]

Federal fraud claims face heightened pleading requirements under Fed. R. Civ. P. 9(b). *See Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) ("The stringent pleading restrictions of Rule 9(b) . . . apply to such a [fraud] claim."). In *Frederico*, the Third Circuit articulated the heightened pleading standard under Rule 9(b):

> Pursuant to Rule 9(b), a plaintiff alleging fraud must state the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the "precise misconduct with which [it is] charged." To satisfy this standard, the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.

*Id.* at 200 (internal citations omitted); *In re Supreme Specialties, Inc. Sec. Litig.*, 438 F.3d 256, 276–77 (3d Cir. 2006) (advising that pursuant to Rule 9(b), at a minimum, a plaintiff must support his/her allegations of fraud with all the essential factual background that would accompany "'the

---

class members or individual claimants, under Defendants' logic that the statutes of repose cannot be tolled for any reason. *See* Defs.' Br. at 1 (The "'total' and 'unqualified bar' took effect on May 1, 2012 for Plaintiff's insider trading claims, and no later than January 3[0], 2013 for Plaintiffs' misrepresentation claims.").

[20]Defendants initially contend that if this Court dismisses the Securities Exchange Act claims, the court would no longer have original jurisdiction over the action, allowing the Court to decline to exercise jurisdiction over the remaining state-law fraud claims pursuant to 28 U.S.C. § 1367. However, given that Plaintiffs' federal question claims survive on this motion, the Court need only decide if Plaintiffs' common-law fraud claims are adequately pled.

first paragraph of any newspaper story'—that is, the 'who what, when, where and how' of the events at issue" (citations omitted)). Moreover, a complaint must do more than assert generalized facts, it must allege facts specific to the plaintiff. *Rolo v. City Investing Co. Liquidating Trust*, 155 F.3d 644, 658–59 (3d Cir. 1998) (where the complaint failed to allege "what actually happened to either" of the plaintiffs, the complaint did not plead "fraud with the specificity required by Rule 9(b)"). This type of heightened pleading requirement is in accord with Ninth Circuit precedent. *See Kearns*, 567 F.3d at 1124 ("Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." (citations and quotations omitted)).

After reviewing the applicable standards, the Court finds that Plaintiffs have alleged sufficient facts relating to actual reliance on misrepresentations by the Defendants to survive a Rule 12(b)(6) motion to dismiss, even under the heightened Rule 9(b) standard.

The only element of a New Jersey common-law fraud claim that Defendants contend is insufficient relates to actual reliance. "To prevail on a common[-]law fraud claim under New Jersey law, a plaintiff must allege that he or she 'actually received *and considered* the misstatement or omission . . . before he or she completed the transaction." *Weske v. Samsung Elecs., Am., Inc.*, 42 F. Supp. 3d 599, 607–08 (D.N.J. 2014) (quoting *Kaufman v. i-Stat Corp.*, 165 N.J. 94, 108 (N.J. 2000)). In other words, Plaintiffs must allege that, but for the omission of the ENHANCE results from the alleged misrepresentations they received *and* considered, they would not have made the securities transactions that they did. *See id.*

All four of the complaints are replete with factual and specific allegations of misrepresentations made by Defendants regarding the Vytorin drug. *See generally, e.g.*, Compl. As to reliance, Plaintiffs first assert that they are entitled to a presumption of reliance, "because the claims asserted herein against Defendants are predicated in part upon material omissions of

24

fact that Defendants had a duty to disclose." *E.g.*, Compl. ¶¶ 325–28 (citing *Affiliated Ute Citizens of Utah v. U.S.*, 406 U.S. 128 (1972)). Second, Plaintiffs allege direct reliance as follows: "Plaintiffs and/or their investment manager acting on their behalf actually, reasonably, and/or justifiably relied upon Defendants' misleading statements by (1) reading Schering's SEC filings, including without limitation, annual reports filed on Form 10-K and quarterly reports filed on Form 10-Q; (2) reading analyst reports regarding Schering; (3) reading newspapers and other media accounts regarding Schering; (4) listening to, or reading the transcripts of, earnings conference calls, and other investor presentations by Schering management. In reliance on Defendants' misleading statements and/or omissions, Plaintiffs purchased Schering securities after each of the misleading statements alleged [in the Complaint] during the Relevant Period, as reflected in the trade data attached" to the Complaint.[21]  *E.g.*, Compl. ¶¶ 329–30.

Defendants contend that it is not enough that "Plaintiffs claim to have *generally* read Merck or Schering's 'media account, advertisements, investor presentations, and SEC filings.'" Defs.' Reply Br. at 14 (quoting Pl.'s Opp. Br. at 36). Rather, according to Defendants, Plaintiffs must more specifically allege that they "actually read and relied upon the *specific* documents claimed to have been misleading. Nor does the claim that Plaintiffs purchased securities 'after each of the misleading statements' show that any purchase was made, in whole or in part, *because of* those statements." Defs.' Reply Br. at 14–15 (quoting Compl. ¶¶ 455–56). However, the Court finds it

---

[21] The foregoing assertions of reliance were made by Plaintiffs as general statements preceding their stated causes of action. However, further statements of reliance are made in each cause of action. In Count Four, the common law fraud claim asserted in the Complaint, Plaintiffs assert that they "actually and justifiably relied on Defendants' misrepresentations and/or omissions to their detriment when Plaintiffs purchased Schering securities. Plaintiffs would not have acquired Schering securities, nor would Plaintiffs have paid the prices that they paid for such securities–which were inflated by Defendants' misconduct–had they known the truth about the matters alleged herein."  Compl. ¶ 363–64.

sufficient for the purposes of this motion that Plaintiffs have alleged that they read and relied upon Defendants' misrepresentations by reading Defendants' media accounts, advertisements, investor presentations, and SEC filings that contained those misrepresentations, and that they purchased Defendants' securities in reliance upon Defendants' misleading statements. *See, e.g.*, *Prudential Ins. Co.*, 14 F. Supp. 3d at 610 (rejecting the defendants' argument that the plaintiffs' complaint "does not specifically state that [the p]laintiffs actually read the specific statements they allege to be fraudulent misrepresentations" in support of their common-law fraud claim because such an argument "is unpersuasive and could succeed only by elevating form over substance").

Accordingly, Plaintiffs' common-law fraud claims survive dismissal.

## IV. Conclusion

The tolling doctrine established in *American Pipe* is legal tolling and applies to the statutes of repose here. Further, the common-law fraud claim sets out sufficient allegations of actual reliance to survive a 12(b)(6) motion to dismiss. For the reasons given above, Defendants' Motions to Dismiss is DENIED.

Dated: August 26, 2015                         /s The Honorable Freda L. Wolfson
                                                     United States District Judge

26