**\*FOR PUBLICATION\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| NORTH SOUND CAPITAL LLC, *et al.*,<br><br>v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORPORATION, *et al.* | 3:13-cv-7240 (FLW) (DEA) |
| GIC PRIVATE LIMITED,<br><br>v.<br><br>MERCK & CO., INC. F/K/A SCHERING-PLOUGH CORPORATION, *et al.* | 3:13-cv-7241 (FLW) (DEA) |
| NORTH SOUND CAPITAL LLC, *et al.*,<br><br>v.<br><br>MERCK & CO., INC., *et al.* | 3:14-cv-242 (FLW) (DEA) |
| GIC PRIVATE LIMITED,<br><br>v.<br><br>MERCK & CO., INC., *et al.* | 3:14-cv-241 (FLW) (DEA)<br><br>__OPINION__ |

**WOLFSON, United States District Judge:**

This case concerns the preclusive scope of Title I of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA"), which bars plaintiffs in a "covered class action" from asserting state law claims alleging "a misrepresentation or omission of a material fact in connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A). SLUSA's definition of a "covered class action" reaches "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which . . . damages

1

are sought on behalf of more than 50 persons . . . and the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii).

The instant actions are brought on behalf of sixteen institutional investors[1] that opted out of two class actions in this District, *see In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-397 (D.N.J.) (the "Schering Vytorin Class Action"); *In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (D.N.J.) (the "Merck Vytorin Class Action") (collectively, the "Vytorin Class Actions"), and then, after the Vytorin Class Actions were settled and dismissed, filed four individual actions[2] (collectively, the "Individual Actions") against Defendants Merck & Company, Inc., Merck/Schering-Plough Pharmaceuticals, MSP Distribution Services (C) LLC, MSP Singapore Company LLC, Richard T. Clark, Deepak Khanna, Fred Hassan and Carrie S. Cox (collectively, "Defendants"), asserting claims under Sections 10(b), 20(a) and 20A of the Securities Exchange Act of 1934 (the "Exchange Act" or "1934 Act"), as well as a common law fraud claim. The complaints filed in the Individual Actions substantially mirror the consolidated complaints filed in the Vytorin Class Actions, alleging that, between December 2006 and March 2008, Plaintiffs purchased securities issued by Merck and Schering, in reliance on material

---

[1] Specifically, the sixteen institutional investors in this case are Plaintiffs GIC Private Limited, North Sound Capital LLC, North Sound Legacy International, North Sound Legacy Institutional, United Food Commercial Workers Local 1500 Pension Fund, Colonial First State Investments LTD, and ten funds managed by Colonial First State Investments LTD (collectively, "Plaintiffs").

[2] Specifically, on November 14, 2013, purchasers of Schering stock filed two separate actions against Schering, with Merck named as successor. *See North Sound Capital LLC v. Merck & Co., Inc. F/K/A Schering-Plough Corp.*, No. 13-7240 (D.N.J. Nov. 14, 2013), ECF No. 1 (the "North Sound Schering Compl."); *GIC Private Ltd. v. Merck & Co., Inc. F/K/A Schering-Plough Corp.*, No. 13-7241 (D.N.J. Nov. 14, 2013), ECF No. 1 (the "GIC Schering Compl.") On January 14, 2014, purchasers of Merck stock filed two separate actions against Merck directly. *See GIC Private Ltd. v. Merck & Co., Inc.*, No. 14-241 (D.N.J. Jan. 14, 2014), ECF No. 1 (the "GIC Merck Compl."); *North Sound Capital LLC v. Merck & Co., Inc.*, No. 14-242 (D.N.J. Jan. 14, 2014), ECF No. 1 (the "North Sound Merck Compl.").

misrepresentations or omissions that Defendants made regarding the "ENHANCE" clinical trial, an interim study on the efficacy of the cholesterol-lowering drug Vytorin.

Following the dismissal of Plaintiffs' Exchange Act claims, Defendants filed the instant Motion to Dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), arguing that Plaintiffs' sole remaining claim for common law fraud is barred by SLUSA. This Court held oral argument on Defendants' Motion on April 11, 2018. For the reasons that follow, Defendants' Motion to Dismiss is granted.

## I.     BACKGROUND[3]

The Court assumes the parties' familiarity with the underlying facts of this case, which are set forth in detail in this Court's August 26, 2015 Opinion, and thus, recites only those facts necessary to decide the instant Motion.

### A.     The ENHANCE Trial

In 2002, Merck and Schering entered into a joint venture for the purpose of combining their cholesterol treating drugs – Zocor and Zetia, respectively – to form a new pharmaceutical product called Vytorin. *See* North Sound Schering Compl. ¶¶ 30-31.[4] To demonstrate the benefits of Vytorin, Merck and Schering designed a clinical trial known as ENHANCE, which examined the effectiveness of Vytorin relative to Zocor. *Id.* at ¶ 41. Specifically, Merck and

---

[3] The following factual allegations are taken from the Complaint and assumed as true in deciding the instant Motion. *See Newman v. Beard*, 617 F.3d 775, 779 (3d Cir. 2010) (observing that, on a motion to dismiss, the court must "accept all factual allegations as true, construe the . . . complaint in the light most favorable to [the plaintiff], and determine whether, under any reasonable reading of the amended complaint, he may be entitled to relief."); *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012).

[4] Although the four Individual Actions at issue involve four separate complaints, for the purposes of this Opinion, the Court will rely on the North Sound Capital Complaint, which mirrors the complaints filed in the three other actions. *See* North Sound Schering Compl.; GIC Schering Compl.; GIC Merck Compl.; North Sound Merck Compl. The Court will refer to the four complaints, collectively, as the "Complaint."

Schering anticipated that the ENHANCE trial would establish that Vytorin not only lowered LDL cholesterol levels, but also resulted in other "measurable benefits to patients," including reduction of the intima-media thickness of the carotid arterial wall.  *Id.*

The ENHANCE trial ran from August 2002 to April 2006.  *Id.* at ¶ 42.  However, according to the Complaint, researchers and executives recognized a critical design flaw in the ENHANCE trial shortly after its inception, rendering it unlikely that the trial would produce favorable results.  *Id.* at ¶¶ 47–52.  Specifically, Plaintiffs allege that data from early enrollers demonstrated that high-cholesterol participants entered the ENHANCE trial with their arterial walls already "near-normal," due to years of taking cholesterol medication, and thus, that it would be difficult to demonstrate the effectiveness of Vytorin in reducing or slowing the progression of the thickness of the carotid arterial walls in those participants.  *Id.* at ¶¶ 47-52.  In short, Plaintiffs allege that Defendants were aware, from an early stage, that the ENHANCE trial was doomed from its incipiency.

Notwithstanding the hurdles attributable to ENHANCE's experimental design, Plaintiffs allege that, from 2006 onward, Defendants made a series of misrepresentations regarding Vytorin's prospects for clinical efficacy.  *Id.* at ¶ 39.  Specifically, Plaintiffs identify seventeen misrepresentations that Defendants made regarding Vytorin, the last by Schering on November 19, 2007, and by Merck on January 30, 2008.  *Id.* at ¶¶ 207-89, 317-18.  Plaintiffs further allege that these misrepresentations artificially inflated the price of Schering securities.  *Id.* at ¶ 310.  Plaintiffs also aver that an individual defendant made sales of Schering stock based on insider knowledge of the results of ENHANCE, with the last insider transaction occurring on May 1, 2007.  *Id.* at ¶¶ 353-55.

The final results of the ENHANCE trial became public in early 2008, and the data collected from the trial confirmed what the early outputs had suggested – that Vytorin did not produce any added benefit when compared to Zocor alone. *Id.* at ¶ 45. Indeed, one cardiologist concluded that the ENHANCE trial raised the possibility that the active pharmaceutical ingredient in Vytorin was merely an "expensive placebo." *Id.* at ¶ 142.

Plaintiffs allege that in the period immediately following the release of the ENHANCE trial's results, Schering's "common stock price fell more than 52%, wiping out more than $23.63 billion in market capitalization, and [Schering's] preferred stock price similarly fell more than 40%, . . . wiping out $1.039 billion in market capitalization." *Id.* at ¶ 320. Plaintiffs attribute the decline in Schering's stock price to the "disclosure of previously concealed information relating to [Defendants'] material misstatements and omissions . . . ." *Id.* at ¶ 321. Plaintiffs further allege that, in the absence of Defendants' misrepresentations, Plaintiffs "would not have purchased Schering securities at artificially inflated prices and they would not have proximately suffered losses as the previously-withheld information became revealed to the market." *Id.* at ¶ 322.

## B. The Vytorin Class Actions

In 2008, the Vytorin Class Actions were filed in this District, asserting federal securities claims arising out of the alleged material misstatements and omissions made in connection with the ENHANCE trial. Both cases were presided over by the Honorable Dennis M. Cavanaugh, U.S.D.J. (Ret.). On September 25, 2012, Judge Cavanaugh granted class certification in both actions. *See* Schering Vytorin Class Action, ECF Nos. 314-15; Merck Vytorin Class Action, ECF Nos. 250-51. Under the class notices published in the Vytorin Class Actions, class members were given a March 1, 2013 opt-out deadline. *See* Schering Vytorin Class Action, ECF

No. 331-1 ¶ 8; Merck Vytorin Class Action, ECF Nos. 266-1 ¶ 8, 271-1 ¶ 8.  Plaintiffs exercised their opt-out rights on March 1, 2013.

On October 1, 2013, Judge Cavanaugh approved settlements and entered final judgments in the Vytorin Class Actions, dismissing the claims asserted therein with prejudice.  *See* Schering Vytorin Class Action, ECF No. 440; Merck Vytorin Class Action, ECF No. 353.

### C.    Plaintiffs Opt Out of the Vytorin Class Actions and file the Individual Actions

Having opted out of class membership in the Vytorin Class Actions, Plaintiffs filed the four Individual Actions in this Court on November 14, 2013[5] and January 14, 2014,[6] asserting claims under Sections 10(b), 20(a) and 20A of the Exchange Act.  Plaintiffs' federal claims are premised on factual allegations virtually identical to those alleged in the Vytorin Class Actions.  Unlike the complaints in the Vytorin Class Actions, however, Plaintiffs also assert an additional common law fraud claim in the Individual Actions.  *See* North Sound Schering Compl. ¶¶ 360-65; GIC Schering Compl. ¶¶ 357-62; GIC Merck Compl. ¶¶ 474-79; North Sound Merck Compl. ¶¶ 475-80.  Nonetheless, Plaintiffs' common law fraud claim is based on the same factual allegations as the federal claims; *i.e.*, Plaintiffs allege that but for Defendants' material misrepresentations or omissions in connection with the ENHANCE trial, Plaintiffs would not have purchased Schering or Merck securities, or would not have paid an artificially inflated price for those securities.[7]  *See id.*

### D.    The Initial Motion to Dismiss the Individual Actions as Untimely

---

[5] *See* North Sound Schering Compl.; GIC Schering Compl.
[6] *See* GIC Merck Compl.; North Sound Merck Compl.
[7] Indeed, in the common law claim, Plaintiffs "repeat and reallege each and every" allegation asserted in connection with their federal claims.  *See* North Sound Schering Compl. ¶¶ 360-65; GIC Schering Compl. ¶¶ 357-62; GIC Merck Compl. ¶¶ 474-79; North Sound Merck Compl. ¶¶ 475-80.

As the Court has already explained, the last insider transaction alleged in the Complaint was executed on May 1, 2007, and the final alleged misstatement was made on January 30, 2008, more than five years before Plaintiffs initiated the Individual Actions. This was significant, because the statutes under which Plaintiffs asserted their Exchange Act claims contained five-year limitations periods, found in 28 U.S.C. § 1658(b)[8] for claims under §§ 10(b) and 20(a), and in 15 U.S.C. § 78t-1(b)(4)[9] for claims under § 20A. Accordingly, because the Individual Actions were filed more than five years after the last alleged insider transaction and misrepresentation, it was undisputed that, absent the application of tolling, Plaintiffs' Exchange Act claims would be time-barred.

In Stipulated Orders filed on March 7, 2014, October 17, 2014, December 19, 2014, and September 9, 2015, this Court recognized, and the parties agreed, that it would promote judicial efficiency to resolve the threshold question of whether the five-year limitations periods governing Plaintiffs' Exchange Act claims were subject to tolling under *American Pipe Constr. Co. v. Utah*, 414 U.S. 538 (1974).[10] As a result, on January 30, 2015, Defendants moved to

---

[8] Section 1658 provides, in relevant part, that:
> (b) . . . a private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws, as defined in section 3(a)(47) of the Securities Exchange Act of 1934 (15 U.S.C. 78c(a)(47)), may be brought not later than the earlier of--
> > (1) 2 years after the discovery of the facts constituting the violation; or
> > (2) 5 years after such violation.

28 U.S.C. § 1658(b).

[9] Section 78t-1(b)(4) provides that "[n]o action may be brought under this section more than 5 years after the date of the last transaction that is the subject of the violation." 15 U.S.C. § 78t-1(b)(4).

[10] In *American Pipe*, the Supreme Court held that the "commencement of a class action suspends the applicable statute of limitations as to all asserted members of the class who would have been parties had the suit been permitted to continue as a class action." 414 U.S. at 554; *see N. Sound Capital LLC v. Merck & Co. Inc.*, 702 F. App'x 75, 77 (3d Cir. 2017) (observing that, in *American Pipe*, "the Supreme Court established a class action tolling rule providing for tolling of

dismiss Plaintiffs' Exchange Act claims as untimely, arguing that *American Pipe* tolling was inapplicable, because the limitations periods governing those claims were statutes of repose, rather than statutes of limitations. In opposition, Plaintiffs maintained that the five-year limitations periods were statutes of limitation. Alternatively, Plaintiffs argued that even if the limitations periods were statutes of repose, *American Pipe* tolling was applicable, because *American Pipe* tolling is legal, rather than equitable, in nature.

This Court denied Defendants' motion on August 26, 2015, finding that although the limitations provisions governing Plaintiffs' Exchange Act claims were statutes of repose, those claims were not untimely, because *American Pipe* tolling was applicable. *See N. Sound Capital LLC v. Merck & Co.*, No. 3:13-7240, 2015 WL 5055769, at *11 (D.N.J. Aug. 26, 2015), *rev'd and remanded*, 702 F. App'x 75 (3d Cir. 2017). In so finding, I reasoned that: (1) *American Pipe* represents a form of "legal" tolling, rather than "equitable" tolling; and (2) applying *American Pipe* tolling to extend the five-year statutes of repose would not "abridge, enlarge, or modify any substantive right" in violation of the Rules Enabling Act, 28 U.S.C. § 2072(b).[11] *See id.* at *6-11.

Subsequently, on September 30, 2015, Defendants moved, pursuant to 28 U.S.C. § 1292(b), for certification of an interlocutory appeal of this Court's August 26, 2015 Order to address two controlling questions of law regarding the tolling issue, as well as for a temporary stay pending resolution of the appeal. ECF No. 25. On January 7, 2016, this Court granted

---

the time for bringing lawsuits by unnamed members of a class in a putative class action during the time that a district court was deciding whether to certify the plaintiff class.").

[11] In the August 26, 2015 Opinion, this Court also denied Defendants' motion to dismiss Plaintiffs' common law claim for failure to adequately plead reliance, finding that Plaintiffs had "alleged sufficient facts relating to actual reliance on misrepresentations by the Defendants to survive a Rule 12(b)(6) motion to dismiss, even under the heightened Rule 9(b) standard." *N. Sound Capital*, 2015 WL 5055769 at *12.

Defendants' motion for a temporary stay and certified the following questions to the Third Circuit:

> 1. Whether the tolling rule set forth in *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) is "legal" or "equitable" in nature; and

> 2. Whether interpreting *American Pipe & Constr. Co. v. Utah*, 414 U.S. 538 (1974) tolling to extend the five-year statutes of repose under the Securities Exchange Act of 1934 would abridge Defendants' substantive rights, enlarge Plaintiffs' substantive rights, or otherwise modify any substantive right within the meaning of the Rules Enabling Act, 28 U.S.C. § 2072(b).

ECF No. 29. The Third Circuit agreed to hear an interlocutory appeal on February 11, 2016. ECF Nos. 30-31.

After briefing and oral argument on the statutes of repose question, but before the Third Circuit issued a decision, the Supreme Court held in *California Pub. Employees' Ret. Sys. v. ANZ Securities, Inc.*, 137 S. Ct. 2042 (2017) that *American Pipe* tolling is a form of equitable tolling that is inapplicable to the statutes of repose for claims brought under the federal securities laws. *Id.* at 2055. On August 2, 2017, the Third Circuit issued an Opinion and entered judgment reversing the denial of Defendants' motion to dismiss Plaintiffs' Exchange Act claims, recognizing that, while the tolling question was unsettled at the time of this Court's August 26, 2015 Opinion, *ANZ Securities* clarified that *American Pipe* tolling did not apply to the statutes of repose at issue in this case. *See N. Sound Capital*, 702 F. App'x at 81. Accordingly, on August 24, 2017, the Third Circuit issued a Mandate directing this Court to dismiss Plaintiffs' Exchange Act claims as time-barred. ECF No. 34. Pursuant to the Third Circuit's Mandate, this Court entered an Order dismissing Plaintiffs' Exchange Act claims on August 30, 2017. ECF No. 40. As a result, Plaintiffs' common law fraud claim is the sole surviving claim in this action.

### E. The Instant Motion to Dismiss

On August 25, 2017, Defendants filed the instant Motion to Dismiss Plaintiffs' common law claim as barred by SLUSA. ECF No. 36. That Motion has been fully briefed. ECF Nos. 41-42. This Court held oral argument on Defendants' Motion on April 11, 2018. ECF No. 46.

## II.    LEGAL STANDARD

### A.    Federal Rule of Civil Procedure 12(b)(1)

Under Federal Rule of Civil Procedure 12(b)(1), a court must grant a motion to dismiss if it lacks subject matter jurisdiction to hear a claim. *See* FED. R. CIV. P. 12(b)(1). "SLUSA preemption is jurisdictional," *LaSala v. Bordier et Cie*, 519 F.3d 121, 129 n. 7 (3d Cir. 2008), and thus, a motion to dismiss on the basis of SLUSA preclusion is properly brought pursuant to Rule 12(b)(1). *See Marchak v. JPMorgan Chase & Co.*, 84 F. Supp. 3d 197, 205 (E.D.N.Y. 2015) ("Rule 12(b)(1) of the Federal Rules of Civil Procedure provides the applicable standard of review for motions to remand and motions to dismiss brought pursuant to SLUSA, 'because each concerns the subject matter jurisdiction of the Court.'") (quoting *Araujo v. John Hancock Life Ins. Co.*, 206 F. Supp. 2d 377, 380 (E.D.N.Y. 2002)). The "burden in a Rule 12(b)(1) motion rests with the plaintiff, who must establish that there is subject matter jurisdiction." *Animal Sci. Prod., Inc. v. China Minmetals Corp.*, 654 F.3d 462, 470 (3d Cir. 2011).

In evaluating a Rule 12(b)(1) motion to dismiss, the court must first determine whether the motion "presents a 'facial' attack or a 'factual' attack on the claim at issue, because that distinction determines how the pleading must be reviewed." *Constitution Party of Pennsylvania v. Aichele*, 757 F.3d 347, 357 (3d Cir. 2014) (quoting *In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235, 243 (3d Cir. 2012)). "A facial 12(b)(1) challenge, which attacks the complaint on its face without contesting its alleged facts, is like a 12(b)(6) motion in requiring the court to 'consider the allegations of the complaint as true.'"

*Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016) (citation omitted); *see Gould Elecs. Inc. v. United States*, 220 F.3d 169, 176 (3d Cir. 2000) (observing that in reviewing a facial challenge, which contests the sufficiency of the pleadings, "the court must only consider the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff.").

A factual challenge, on the other hand, "attacks allegations underlying the assertion of jurisdiction in the complaint, and it allows the defendant to present competing facts." *Hartig Drug Co.*, 836 F.3d at 268. The "trial court is free to weigh the evidence and satisfy itself as to the existence of its power to hear the case," and "the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 n. 3 (3d Cir. 2006) (quoting *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). "Therefore, a 12(b)(1) factual challenge strips the plaintiff of the protections and factual deference provided under 12(b)(6) review."[12] *Hartig Drug Co.*, 836 F.3d at 268.

## B.  Federal Rule of Civil Procedure 12(b)(6)

In reviewing a motion to dismiss for failure to state a claim upon which relief can be granted, pursuant to Federal Rule of Civil Procedure 12(b)(6), "courts accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief." *Fowler v. UPMC Shadyside*, 578 F.3d 203, 210 (3d Cir. 2009) (internal quotation

---

[12] Because SLUSA implicates a court's subject matter jurisdiction, *LaSala*, 519 F.3d at 129 n. 7 "it is appropriate to look outside of the pleadings to determine whether SLUSA jurisdiction exists." *Montoya v. New York State United Teachers*, 754 F. Supp. 2d 466, 472 (E.D.N.Y. 2010). Accordingly, on this Motion, the Court takes judicial notice of the orders and opinions entered in the underlying class action litigation, as well as the prior proceedings and pleadings in this case.

marks and citation omitted). Although Federal Rule of Civil Procedure 8(a)[13] does not require that a complaint contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). Thus, to survive a Rule 12(b)(6) motion to dismiss, a complaint must contain sufficient factual allegations to raise a plaintiff's right to relief above the speculative level, so that a claim "is plausible on its face." *Id.* at 570; *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While the "plausibility standard is not akin to a 'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

In accordance with the pleading requirements set forth in *Twombly* and *Iqbal*, the Third Circuit has formulated "a three-step process for district courts to follow in reviewing the sufficiency of a complaint." *Robinson v. Family Dollar Inc.*, 679 F. App'x 126, 131 (3d Cir. 2017); *Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). First, the reviewing court "must take note of the elements the plaintiff must plead to state a claim." *Connelly v. Lane Constr. Corp.*, 809 F.3d 780, 787 (3d Cir. 2016) (citation, quotation marks, and brackets omitted). Next, the court "should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth." *Id.* (citation and quotation marks

---

[13] In *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), the Supreme Court reaffirmed that Federal Rule of Civil Procedure 8(a) "requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Id.* at 555 (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)).

omitted). Finally, "when there are well-pleaded factual allegations, the court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Id.* (citation, quotation marks, and brackets omitted). This last step of the plausibility analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

## III.    DISCUSSION

Defendants move to dismiss Plaintiffs' common law fraud claim as barred by SLUSA. Alternatively, in the event that SLUSA preclusion does not apply, Defendants argue that there is no basis for this Court to exercise supplemental jurisdiction over Plaintiffs' state law claim. Because "SLUSA preemption is jurisdictional," *LaSala*, 519 F.3d at 129 n. 7, this Court will turn, first, to the issue of whether Plaintiffs' common law claim is barred by SLUSA.

### A.    Background of SLUSA

To fully understand the context in which Defendants' SLUSA preclusion defense arises, the Court must briefly recount the evolution of federal securities law. "In response to the sudden and disastrous collapse in prices of listed stocks in 1929, and the Great Depression that followed, Congress enacted the Securities Act of 1933 . . . and the Securities Exchange Act of 1934." *Merrill Lynch, Pierce, Fenner & Smith Inc. v. Dabit*, 547 U.S. 71, 78 (2006). "The primary purpose of the Acts of 1933 and 1934 was to eliminate serious abuses in a largely unregulated securities market," *United Hous. Found., Inc. v. Forman*, 421 U.S. 837, 849 (1975), and thereby promote "investor confidence." *Chadbourne & Parke LLP v. Troice*, 134 S. Ct. 1058, 1067 (2014). To that end, "[t]he 1933 Act regulates initial distributions of securities, and the 1934 Act for the most part regulates post-distribution trading." *Cent. Bank of Denver, N.A. v. First Interstate Bank of Denver, N.A.*, 511 U.S. 164, 171 (1994). Together, "these two statutes have

anchored federal regulation of vital elements of our economy" since their enactment. *Dabit*, 547 U.S. at 78.

While private securities litigation under the 1933 and 1934 Acts provided defrauded investors with "'an indispensable tool'" with which to recover their losses, by the mid-1990s, Congress had identified various "ways in which the class-action device was being used to injure 'the entire U.S. economy.'" *Id.* at 81 (quoting H.R. CONF. REP. NO. 104-369, at 31 (1995)). Specifically, in the House Conference Report accompanying what would later be enacted as the Private Securities Litigation Reform Act of 1995 (the "PSLRA"), 15 U.S.C. 78u–4 *et seq.*, Congress determined that "nuisance filings, targeting of deep-pocket defendants, vexatious discovery requests, and 'manipulation by class action lawyers of the clients whom they purportedly represent' had become rampant in recent years." *Dabit*, 547 U.S. at 81 (quoting H.R. CONF. REP. NO. 104-369, at 31).

In 1995, Congress enacted the PSLRA for the purpose of curbing these "perceived abuses of the class-action vehicle in litigation involving nationally traded securities." *Dabit*, 547 U.S. at 81. The PSLRA implemented a host of procedural and substantive reforms, including heightened pleading requirements, sanctions for frivolous litigation, limits on damages and attorneys' fees, a "safe harbor" provision for forward-looking statements, restrictions on the selection of – and compensation awarded to – lead plaintiffs, and a discovery stay pending the resolution of any motion to dismiss. *See id.* (citing 15 U.S.C. § 78u–4); *Cyan, Inc. v. Beaver Cty. Employees Ret. Fund*, 138 S. Ct. 1061, 1066-67 (2018).

By 1998, however, Congress concluded that the PSLRA had produced an unintended consequence; "plaintiffs were circumventing the requirements of the PSLRA by filing private securities class actions" alleging violations of state law. *Rowinski v. Salomon Smith Barney Inc.*,

398 F.3d 294, 298 (3d Cir. 2005); *see Dabit*, 547 U.S. at 82 ("Rather than face the obstacles set in their path by the [PSLRA], plaintiffs and their representatives began bringing class actions under state law, often in state court."); H.R. REP. NO. 105-640, at 10 (1998) ("[S]ince passage of the [PSLRA], plaintiffs' lawyers have sought to circumvent the Act's provisions by exploiting differences between Federal and State laws by filing frivolous and speculative lawsuits in State court, where essentially none of the [PSLRA's] procedural or substantive protections against abusive suits are available."). "To stem this 'shif[t] from Federal to State courts' and 'prevent certain State private securities class action lawsuits alleging fraud from being used to frustrate the objectives of' the [PSLRA]," *Dabit*, 547 U.S. at 82 (citation omitted), Congress enacted SLUSA. *See Cyan*, 138 S. Ct. at 1067 (observing that Congress enacted SLUSA "[t]o prevent plaintiffs from circumventing the [PSLRA] . . . ."); *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 476 (2013) ("Congress . . . fortified the PSLRA by enacting [SLUSA], which curtailed plaintiffs' ability to evade the PSLRA's limitations on federal securities-fraud litigation by bringing class-action suits under state rather than federal law.").

SLUSA makes federal court "the exclusive venue for securities fraud class action litigation," H.R. REP. NO. 105-640, at 10, by prohibiting plaintiffs from bringing "large securities class actions based upon violations of state law." *Chadbourne*, 134 S. Ct. at 1062. More specifically, to prevent plaintiffs from circumventing the PSLRA, SLUSA authorizes the removal and dismissal[14] of "covered class actions" based upon "the statutory or common law of any State," in which the plaintiffs allege "a misrepresentation or omission of a material fact in

---

[14] Although § 78bb(f)(1) is frequently referred to as a "preemption" provision, it is more accurately labeled a "preclusion" or "dismissal" provision, because SLUSA "does not itself displace state law with federal law but makes some state-law claims nonactionable through the class-action device in federal as well as state court." *Kircher v. Putnam Funds Tr.*, 547 U.S. 633, 637 (2006).

connection with the purchase or sale of a covered security." 15 U.S.C. § 78bb(f)(1)(A).[15]

Significantly, "Congress envisioned a broad interpretation of SLUSA to ensure the uniform

application of federal fraud standards." *Rowinski*, 398 F.3d at 299 (citing S. REP. NO. 105-182,

at 8 (1998)). The instant dispute, which centers on whether the Individual Actions constitute a

"covered class action" under the statute, tests the limits of SLUSA's preclusive scope.

### B. SLUSA Bars Plaintiffs' Common Law Claim

Having set forth the context in which SLUSA was enacted, the Court turns to the issue of

whether SLUSA bars Plaintiffs' common law fraud claim. SLUSA's dismissal provision

provides:

> No covered class action based upon the statutory or common law of any State or
> subdivision thereof may be maintained in any State or Federal court by any private party
> alleging—
>
> > (A) a misrepresentation or omission of a material fact in connection with the
> > purchase or sale of a covered security; or
> >
> > (B) that the defendant used or employed any manipulative or deceptive device or
> > contrivance in connection with the purchase or sale of a covered security.

15 U.S.C. § 78bb(f)(1). SLUSA thus bars claims asserted in: (1) a "covered class action"; (2)

that are based in state law; (3) in which the plaintiff alleges "a misrepresentation or omission of

material fact"; (4) "in connection with the purchase or sale of a covered security."[16] *Id.*; *see In re*

*Franklin Mut. Funds Fee Litig.*, 388 F. Supp. 2d 451, 471 (D.N.J. 2005). Here, there is no

---

[15] "SLUSA amends the 1933 Act and the 1934 Act in substantially identical ways." *Dabit*, 547
U.S. at 82. Because they are implicated in this case, the Court quotes only the 1934 Act
amendments.

[16] SLUSA defines the term "covered security," in relevant part, as "a security that satisfies the
standards for a covered security specified in paragraph (1) or (2) of section 18(b) of the
Securities Act of 1933, at the time during which it is alleged that the misrepresentation,
omission, or manipulative or deceptive conduct occurred . . . ." 15 U.S.C. § 78bb(f)(5)(E).
"Section 18(b) of the 1933 Act in turn defines 'covered security' to include securities traded on a
national exchange." *Dabit*, 547 U.S. at 84 (citing 15 U.S.C. § 77r(b)).

dispute that SLUSA's second, third, and fourth conditions are met: Plaintiffs assert a state law claim alleging misrepresentations and omissions of material fact in connection with the purchase or sale of covered securities issued by Merck and Schering. Accordingly, the dispositive question in determining whether SLUSA precludes Plaintiffs' common law claim is whether the Individual Actions constitute a "covered class action."

SLUSA's definition of a "covered class action" includes not only a single class action lawsuit,[17] but also "any group of lawsuits filed in or pending in the same court and involving common questions of law or fact, in which— (I) damages are sought on behalf of more than 50 persons; and (II) the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose. 15 U.S.C. § 78bb(f)(5)(B)(ii). Stated differently, a group of lawsuits constitutes a "covered class action" for the purposes of SLUSA where four conditions are satisfied: (1) the lawsuits are "filed in or pending in the same court"; (2) involve "common questions of law or fact"; (3) seek "damages . . . on behalf of more than 50 persons"; and (4) "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii); *see Instituto De Prevision Militar v. Merrill Lynch*, 546 F.3d 1340, 1346 (11th Cir. 2008) (setting forth the four elements of the "group of lawsuits" provision).

Here, it is undisputed that the four Individual Actions involve only sixteen individual plaintiffs, and thus, that even in the aggregate, they do not constitute a "covered class action" under SLUSA. Nonetheless, Defendants argue that the Individual Actions should be grouped with the Vytorin Class Actions, because those lawsuits were filed in the same court, involve

---

[17] Section 78bb(f)(5)(B)(i) sets forth the circumstances under which a single lawsuit constitutes a "covered class action." *See* 15 U.S.C. § 78bb(f)(5)(B)(i). In the case at bar, the parties concede that none of the four Individual Actions, standing alone, qualifies as a "covered class action" for the purposes of SLUSA, and thus, § 78bb(f)(5)(B)(i) is inapplicable.

common questions of law and fact, collectively seek damages on behalf of more than 50 persons, and proceed as a single action for any purpose. Plaintiffs concede that the Individual Actions and the Vytorin Class Actions involve common issues of law and fact, and thus, that the second element of SLUSA's grouping provision is satisfied. *See* Pls.' Mem. of Law in Opposition to Defs.' Mot. to Dismiss Pls.' Common-Law Claim ("Pls.' Br."), ECF No. 41 at 16. Accordingly, this Court's inquiry is limited to the first, third, and fourth factors of SLUSA's grouping provision.

The Court will address the first and third elements of the "group of lawsuits" provision – whether Individual Actions and the Vytorin Class Actions constitute a group of lawsuits (1) "filed in or pending in the same court" and (3) "in which . . . damages are sought on behalf of more than 50 persons" – in tandem. In analyzing those factors, I note that the parties have not identified any decision with facts directly analogous to those presented here. That is, the Court is unaware of any prior case that required a court to determine whether an individual action could be grouped with lawsuits that were dismissed *prior* to the commencement of the individual action.

Nonetheless, with respect to the "filed in or pending in" element of SLUSA's grouping provision, the Court finds instructive *In re Lehman Bros. Sec. & Erisa Litig.*, 131 F. Supp. 3d 241 (S.D.N.Y. 2015). In *Lehman Bros.*, the defendant moved to dismiss common law claims asserted in various opt-out actions as barred by SLUSA. *Id.* at 245. Similar to this case, prior to filing their individual actions, the plaintiffs in *Lehman Bros*. opted out of a class action, which arose out of the same alleged securities fraud, and was filed in the same court as the opt-out actions. *Id.* However, after the opt-out actions were filed, but prior to the time that the defendant's motion was decided, the class action was settled and dismissed, leaving fewer than

50 plaintiffs in lawsuits pending before the court. *Id.* at 266. As a result, the parties' arguments focused on whether the individual actions could be grouped with the dismissed class action to meet SLUSA's 50-person threshold. *Id.*

Despite the fact that fewer than 50 persons remained in lawsuits *pending* before the district court, the court found that the individual actions could be grouped with the settled class action, because those lawsuits were originally *filed in* the same court. *Id.* at 267. At the outset, the court noted that the statutory terms "filed in or pending in" are phrased in the "disjunctive, meaning that satisfaction of either is sufficient to render a case part of a 'covered class action.'" *Id.* at 266. With respect to the "pending" clause, the court observed that the "most natural reading of 'pending' is 'unresolved now on the court's docket' *i.e.*, at the time a court is reaching its decision on SLUSA preclusion." *Id.* In other words, a "case remains pending under SLUSA only while it is undecided," and thus, "settled cases no longer are 'pending.'" *Id.* at 267. Accordingly, the court found that the individual actions could not be grouped with the settled class action under the "pending" clause of the provision.

However, moving to the "filed in" clause of the provision, the court found that the natural reading of "filed in" is "originally filed." *Id.* at 267 (citing *In re Refco Inc. Sec. Litig.*, 859 F. Supp. 2d 644, 653 (S.D.N.Y. 2012)). And, importantly, the court emphasized "that 'filed in' is a past-tense modifier, meaning that *settled class actions do count towards the 50–person SLUSA threshold* on this score even if they do not satisfy the 'pending' criterion." *In re Lehman Bros.*, 131 F. Supp. 3d at 267 (emphasis added). Applying that statutory interpretation, the court concluded that the individual actions could be grouped with the settled class action, because those actions were originally filed in the same court. *Id.* Accordingly, because the class action

and the individual actions, in the aggregate, involved more than 50 persons, the court dismissed the plaintiffs' state law claims as precluded by SLUSA. *Id*.

Similarly, here, the Court finds that the Individual Actions can be grouped with the Vytorin Class Actions to satisfy SLUSA's 50-persons threshold, because they were originally *filed in* the same court. In that regard, the Vytorin Class Actions were filed in the District of New Jersey on January 18, 2008,[18] and May 5, 2008.[19] The Individual Actions were also filed in the District of New Jersey, on November 14, 2013[20] and January 14, 2014.[21] Accordingly, despite the fact that the Vytorin Class Actions are no longer pending, because the Vytorin Class Actions and the Individual Actions were originally filed in this District, and, in the aggregate, involve more than 50 persons, the Court finds that the first and third elements of the SLUSA's grouping provision are satisfied.

The final, and more important, question in determining whether SLUSA's grouping provision is satisfied in this case is whether the Individual Actions and the Vytorin Class Actions constitute a group of lawsuits that "are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). At the outset, Defendants concede that the Individual Actions and the Vytorin Class Actions were never formally joined or consolidated. *See* Defs.' Mem. of Law in Support of Defs.' Mot. to Dismiss Pls.' Common-Law Claim ("Defs.' Br."), ECF No. 36 at 20. Rather, Defendants' argument is focused on the last clause of the grouping provision (the "catchall provision"); Defendants argue that the Individual

---

[18] *See In re Schering-Plough Corp./ENHANCE Sec. Litig.*, No. 08-397 (D.N.J. Jan. 18, 2008), ECF No. 1 (the "Schering Vytorin Class Action Compl.").
[19] *See In re Merck & Co., Inc. Vytorin/Zetia Sec. Litig.*, No. 08-2177 (D.N.J. May 5, 2008), ECF No. 1 (the "Merck Vytorin Class Action Compl.").
[20] *See* North Sound Schering Compl.; GIC Schering Compl.
[21] *See* GIC Merck Compl.; North Sound Merck Compl.

Actions and the Vytorin Class Actions have "otherwise proceed[ed] as a single action for any purpose," because: (1) the Complaint mirrors the consolidated complaints that were filed in the Vytorin Class Actions, asserting virtually identical federal claims, with the exception of an additional common law claim that overlaps factually and legally with the federal claims; (2) in their civil cover sheets, Plaintiffs designated the Individual Actions as a "related case" to the Vytorin Class Actions; (3) Plaintiffs certified, pursuant to Local Civil Rule 11.2, that the Individual Actions involve the same subject matter as the Vytorin Class Actions; and (4) Plaintiffs have represented, in various submissions to this Court and the Third Circuit, that they will rely on the discovery obtained in the Vytorin Class Actions in litigating the Individual Actions.

In opposition, Plaintiffs advance five main arguments as to why the Individual Actions and the Vytorin Class Actions cannot be grouped into a "covered class action." First, Plaintiffs dispute that the level of coordination between the Individual Actions and the Vytorin Class Actions is sufficient to find that those cases proceeded as a single action for any purpose. Second, Plaintiffs contend that SLUSA's catchall provision – requiring a group of lawsuits to "otherwise *proceed* as a single action for any purpose" – is phrased in the present tense, and thus, only reaches those lawsuits that are proceeding as a single action when a SLUSA motion to dismiss is filed. And, because the Vytorin Class Actions were no longer pending when the instant Motion was filed, Plaintiffs argue that the Individual Actions cannot be grouped with the Vytorin Class Actions under the catchall provision. Plaintiffs' third argument is a slight variant of the second; focusing again on the present-tense phrasing of the terms "otherwise proceed," Plaintiffs maintain that to proceed as a single action, two cases must, at a minimum, have been pending simultaneously at some time in time – *i.e.*, Plaintiffs argue that two cases cannot proceed

as a single action, where the first was dismissed prior to the filing of the second. Fourth, Plaintiffs argue that precluding their state law claims would be inconsistent with the purpose of SLUSA. Finally, Plaintiffs maintain that even if the Individual Actions are part of a "covered class action" under SLUSA, Defendants are judicially estopped from prevailing on the issue of SLUSA preclusion. The Court will address each of these arguments, in turn.

### 1. The Degree of Coordination Required to Proceed as a Single Action "For Any Purpose"

To determine whether the Individual Actions and the Vytorin Class Actions can be grouped into a "covered class action" under SLUSA's catchall provision, this Court must interpret the statutory phrase "or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). Therefore, the Court will briefly review the well-settled principles of statutory construction that guide its analysis. "The role of the courts in interpreting a statute is to give effect to Congress's intent." *Rosenberg v. XM Ventures*, 274 F.3d 137, 141 (3d Cir. 2001). The starting point for this Court's analysis is the plain language of the statute itself. *United States v. Ron Pair Enterprises, Inc.*, 489 U.S. 235, 241 (1989); *see In re Lord Abbett Mut. Funds Fee Litig.*, 553 F.3d 248, 254 (3d Cir. 2009) ("The first step in statutory construction is to consider the plain language of the statute."). "If the language of the statute expresses Congress's intent with sufficient precision, the inquiry ends there and the statute is enforced according to its terms." *United States v. Gregg*, 226 F.3d 253, 257 (3d Cir. 2000). However, if, as the parties suggest, the statute is susceptible to multiple interpretations, the Court "must look to the surrounding words and provisions and their context," *Tavarez v. Klingensmith*, 372 F.3d 188, 190 (3d Cir. 2004), including "persuasive legislative history if it exists." *Smith v. Fid. Consumer Disc. Co.*, 898 F.2d 907, 910 (3d Cir. 1990); *see Gregg*, 226 F.3d at 257 ("Where the statutory language does not express Congress's intent unequivocally, a court traditionally refers to the

legislative history and the atmosphere in which the statute was enacted in an attempt to determine the congressional purpose.").

Turning to the plain the language of the statute, the phrase "otherwise proceed as a single action for *any* purpose" suggests an expansive definition of a "covered class action." 15 U.S.C. § 78bb(f)(5)(B)(ii)(II) (emphasis added). In that regard, the Supreme Court has previously observed, in a variety of different contexts, that "[r]ead naturally, the word 'any' has an expansive meaning, that is, 'one or some indiscriminately of whatever kind.'" *United States v. Gonzales*, 520 U.S. 1, 5 (1997) (quoting Webster's Third New International Dictionary 97 (1976)); *see Ali v. Fed. Bureau of Prisons*, 552 U.S. 214, 218-19 (2008) ("The phrase '*any* other law enforcement officer' suggests a broad meaning."). For example, in *Gonzales*, the Court considered the meaning of the term "any" in a provision that imposed an additional prison sentence for the use of a firearm in connection with a federal drug trafficking crime, providing that the additional sentence shall not "'run concurrently with *any other term* of imprisonment including that imposed for the . . . drug trafficking crime in which the firearm was used or carried." 520 U.S. at 4 (quoting 18 U.S.C. § 924(c)(1)). Specifically, the question presented to the Court was "whether the phrase 'any other term of imprisonment' means what it says, or whether it should be limited to some subset of prison sentences, —namely, only federal sentences." *Gonzales*, 520 U.S. at 5 (internal citation and quotation marks omitted). Notwithstanding § 924(c)(1)'s initial reference to federal drug trafficking crimes, the Court held that the absence of any restrictive statutory language limiting the expansive meaning of the word "any" left "no basis in the text for limiting" the phrase "any other term of imprisonment" to federal sentences. *Id.*

Similarly, in *Ali*, the Court considered the scope of the word "any" in 28 U.S.C. § 2680(c), which provides that the United States' waiver of sovereign immunity for torts committed by federal employees "does not apply to claims arising from the detention of property by 'any officer of customs or excise or *any other law enforcement officer*.'" 552 U.S. at 216 (quoting 28 U.S.C. § 2680(c)) (emphasis added). The dispute in *Ali* centered on whether officers of the Federal Bureau of Prisons who allegedly lost the plaintiff's property qualified "as 'other law enforcement officer[s]' within the meaning of § 2680(c)." 552 U.S. at 218. The Court rejected the plaintiff's argument that the phrase "any other law enforcement officer" was limited to law enforcement officers acting in a customs or excise capacity, holding that Congress' use of the broad modifier "any" was "most naturally read to mean law enforcement officers of whatever kind." *Id.* at 220. In so doing, the Court noted that "Congress could not have chosen a more all-encompassing phrase than 'any other law enforcement officer.'" *Id.* at 221.

The reasoning of *Gonzales* and *Ali* applies equally to the expansive language that Congress used in 15 U.S.C. § 78bb(f)(5)(B)(ii)(II). In that regard, Congress' use of the term "any" in the statutory text of § 78bb(f)(5)(B)(ii)(II) indicates an intention that courts read SLUSA's catchall provision broadly. *See In re Refco*, 859 F. Supp. 2d at 649 ("'For any purpose' is about as broad a provision as Congress could draft."). That conclusion is bolstered by the fact that Congress did not include any restrictive language limiting the scope of the word "any" in the context of SLUSA's covered class action definition. Accordingly, the Court must read the words "for any purpose" in accordance with their ordinary, expansive meaning.

This Court's determination that the phrase "for any purpose" should be given an expansive construction is consistent with the legislative history[22] underlying SLUSA, which indicates that courts should construe the definition of a "covered class action" broadly to avoid attempts to circumvent the PSLRA. As the Senate Committee on Banking, Housing and Urban Affairs – to which the bill to enact SLUSA was referred – explained, SLUSA's broad definition of "covered class action" was "intended to prevent evasion of the bill through the use of so-called 'mass actions.'" S. REP. NO. 105-182, at 7. Nonetheless, the Committee noted that while it "believe[d] that it ha[d] effectively reached those actions that could be used to circumvent the reforms enacted by Congress in 1995 as part of the [PSLRA], it remains the Committee's intent that the bill be *interpreted broadly* to reach mass actions *and all other procedural devices* that might be used to circumvent the class action definition."[23] *Id.* at 8 (emphasis added).

Against this statutory and legislative backdrop, both the Supreme Court and the Third Circuit have endorsed a broad interpretation of SLUSA's definition of a "covered class action." *See Cyan*, 138 S. Ct. at 1071 (observing that SLUSA contains a "broad definition of 'covered

_____

[22] As various courts have observed, the plain language of SLUSA does not clearly indicate the parameters of the statute's preclusive scope, and thus, it is appropriate to look to the legislative history and context in which SLUSA was enacted to determine the meaning of the phrase "otherwise proceed as a single action for any purpose." *See In re Lord Abbett*, 553 F.3d at 254 (finding that because the plain language of SLUSA does not clearly indicate the scope of SLUSA preclusion, courts may look to the legislative history underlying that statute); *In re Kingate Mgmt. Ltd. Litig.*, 784 F.3d 128, 136 (2d Cir. 2015) (finding that, because "SLUSA's broad, general terms are in some respects ambiguous, . . . it is not always easy to understand whether SLUSA applies," and thus, courts must look not only "to the words of the statute, but also, because of these ambiguities," to the history underlying the statute).

[23] Similarly, the House Report accompanying SLUSA indicates that the House Committee on Commerce approved the legislation, despite dissenting views regarding the breadth of SLUSA preclusion. *See* H.R. REP. NO. 106-650, at 11 (1998) ("The Committee heard testimony from opponents of the legislation, . . . who testified that the bill was . . . overly broad in its proposed preemption of State law. The Committee believes that the overwhelming weight of the evidence available to it supports going forward with this bill at this time for the reasons previously noted.").

class action' . . . ."); *Dabit*, 547 U.S. at 86 (observing that SLUSA should be read with the "presumption that Congress envisioned a broad construction . . . ."); *Rowinski*, 398 F.3d at 299 ("Congress envisioned a broad interpretation of SLUSA to ensure the uniform application of federal fraud standards."). As a result, various courts, both within and outside of this Circuit, have interpreted SLUSA's definition of a "covered class action" expansively, finding that, even where lawsuits are not formally consolidated or joined, the catchall provision "or otherwise proceed as a single action for any purpose" encompasses ostensibly separate lawsuits, where, *inter alia*, any of the following "indicia of coordination" between those lawsuits is present:

- The lawsuits contain nearly identical complaints, arise out of the same facts, involve overlapping claims and parties, and have been designated as related in civil cover sheets, *see, e.g.*, *Discovery Glob. Citizens Master Fund, Ltd. v. Valeant Pharm. Int'l, Inc.*, No. 16-7321, 2018 WL 406046, at *6 (D.N.J. Jan. 12, 2018); *Stichting Pensioenfonds ABP v. Merck & Co.*, No. 05-5060, 2012 WL 3235783, at *16 (D.N.J. Aug. 1, 2012); *In re Enron Corp. Sec.*, 535 F.3d 325, 340 (5th Cir. 2008); *Kuwait Inv. Office v. Am. Int'l Grp., Inc.*, 128 F. Supp. 3d 792, 812 (S.D.N.Y. 2015); *Amorosa v. Ernst & Young LLP*, 682 F. Supp. 2d 351, 375 (S.D.N.Y. 2010); *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d 666, 672 (S.D.N.Y. 2007);

- The lawsuits have coordinated discovery, *see, e.g.*, *Stichting Pensioenfonds*, 2012 WL 3235783 at *16; *In re Enron*, 535 F.3d at 340; *Instituto De Prevision Militar*, 546 F.3d at 1347; *Kuwait*, 128 F. Supp. 3d at 812; *In re BP p.l.c. Sec. Litig.*, 109 F. Supp. 3d 946, 957-58 (S.D. Tex. 2014); *In re Refco*, 859 F. Supp. 2d at 649;

- The lawsuits have coordinated motion practice, *see, e.g.*, *Stichting Pensioenfonds*, 2012 WL 3235783 at *16; *Kuwait*, 128 F. Supp. 3d at 812; *In re BP*, 109 F. Supp. 3d at 957-58; *In re AOL Time Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d at 671-72; or

- The lawsuits have coordinated amended and responsive pleading, *see, e.g.*, *Valeant*, 2018 WL 406046 at *6; *Stichting Pensioenfonds*, 2012 WL 3235783 at *16; *Kuwait*, 128 F. Supp. 3d at 812-13; *In re BP*, 109 F. Supp. 3d at 957-58; *Amorosa*, 682 F. Supp. 2d at 376.

In light of the expansive language of the statute, SLUSA's underlying purpose, and the relevant case law, I find it appropriate to interpret SLUSA's broad definition of a covered class

action to include lawsuits that have not been formally joined or consolidated, where those actions have been coordinated for any purpose. As the *Amorosa* court aptly observed, to interpret SLUSA's grouping provision "as covering only lawsuits that are formally 'joined or consolidated' would be to render the statute's description of the latter category of covered actions—lawsuits that 'otherwise proceed as a single action for any purpose'—entirely redundant," 682 F. Supp. 2d at 375, in violation of the basic principle of statutory construction requiring courts to "'give effect . . . to every clause and word of a statute,' . . . and be 'reluctan[t] to treat statutory terms as surplusage.'" *Tavarez*, 372 F.3d at 190 (citations omitted). Requiring formal joinder or consolidation would also disregard Congress' inclusion of the disjunctive terms "or" and "otherwise" in the statute, which signal "the introduction of a third category of covered actions." *Amorosa*, 682 F. Supp. 2d at 375. Having determined that the Individual Actions need not have been joined or consolidated with the Vytorin Class Actions, I turn to analyzing whether these two categories of cases "proceed as a single action for any purpose." In so doing, the Court must look to the "indicia of coordination" between those lawsuits. *Stichting Pensioenfonds*, 2012 WL 3235783 at *15.

As a preliminary matter, I note that the Third Circuit has not opined on "the degree to which a group of lawsuits must proceed together to fall within the purview of SLUSA," *id.* at *14, and the parties have not identified a case with facts directly analogous to the present dispute. Nonetheless, the Court's analysis is guided by several comparable cases involving the aggregation of individual actions with class actions under SLUSA's catchall grouping provision. First, in *Stichting Pensioenfonds*, the court found that an institutional investor's individual case proceeded as a single action with a class action involving the same alleged securities fraud and pending in the same multidistrict litigation, despite the fact that the investor's complaint had not

been formally consolidated or joined with the class action. *See id.* at *15-17. Looking to the "indicia of coordination" between the lawsuits, the court emphasized the fact that the investor's complaint was nearly identical to the class action complaint, involving overlapping claims, allegations, and parties. *Id.* at *15-16. Next, the court found significant that the investor agreed to coordinate the proceedings in the individual action with the class action by, *inter alia*: (1) stipulating to defer the deadline for the defendant to answer and to stay discovery until the court had resolved a motion to dismiss in the class action; (2) agreeing to conform the allegations in his amended complaint to reflect the court's opinion in the class action; (3) agreeing to be bound by the court's opinion in the class action; and (4) coordinating discovery with the class action. *See id.* at *16. Accordingly, the court held that the degree of coordination between the individual action and the class action was sufficient to find that those lawsuits proceeded as a single action for any purpose, and thus, dismissed the plaintiff's state law claims as barred by SLUSA. *Id.* at *16-17.

Similarly, in *Valeant*, the court held that six opt-out lawsuits could be grouped with a related class action to form a covered class action under SLUSA, based on the degree of coordination between those lawsuits. *See* 2018 WL 406046 at *6. In that case, the opt-out plaintiffs argued that their actions did not proceed as a single action with the class action, because the phrase "otherwise proceed as a single action" is limited to lawsuits that "are related to each other in a way that is similar to being 'joined' or 'consolidated,'" and, since the inception of the opt-out actions, the plaintiffs had "resisted Defendants' attempts to formally coordinate them with the class action through a stay of proceedings or otherwise." *Id.* at *5. Relying on *Stichting Pensioenfonds,* the court rejected the plaintiffs' interpretation of the statute, observing that "a group of lawsuits can trigger preemption without any formal joinder or consolidation."

*Id.* Next, in finding that the opt-out actions could be grouped with the class action, the court noted that plaintiffs had designated the opt-out actions as related to the class action in their civil cover sheets, and had relied on the proceedings in the class actions by arguing that the defendants should not be permitted to re-litigate issues already decided in the class action. *Id.* Accordingly, the court characterized the plaintiffs' argument that the six opt-out actions were separate and independent from the class action as "'an expedient position at odds with the parties' conduct,'" and thus, held that the lawsuits fell within the purview of SLUSA's catchall provision. *Id.* at *6 (quoting *Stichting Pensioenfonds*, 2012 WL 3235783 at *15).

Consistent with those decisions, various courts outside of this District have also held that SLUSA's broad catchall provision reaches individual actions that exhibit a degree of coordination with related lawsuits. *See*, *e.g.*, *Instituto De Prevision Militar*, 546 F.3d at 1345 (finding that an individual action proceeded as a single action with related lawsuits); *Kuwait*, 128 F. Supp. 3d at 812-13 (finding that opt-out suits proceeded as a single action with a related class action); *Amorosa*, 682 F. Supp. 2d at 375-76 (finding that an individual opt-out suit proceeded as a single action with a related class action); *In re BP*, 109 F. Supp. 3d at 957 (finding that "separately filed individual investor actions" proceeded as a single action); *In re Citigroup Inc. Sec. Litig.*, 987 F. Supp. 2d 377, 388 (S.D.N.Y. 2013) (grouping individual action with related lawsuits).

For example, in *Kuwait*, the Southern District of New York dismissed state law claims asserted in opt-out actions as precluded by SLUSA, finding that the opt-out actions proceeded as a single action with a class action arising out of the same allegations. *See* 128 F. Supp. 3d at 812-13. In finding that grouping was appropriate under SLUSA's catchall provision, the court reasoned as follows:

The Individual Actions indisputably share common questions of law and fact and rely on allegations that are virtually identical to those in the Class Action complaint. In addition, [the] Individual Actions are currently subject to case management orders tied to the Class Action, providing that (i) the Individual Actions were stayed pending resolution of class certification and/or preliminary approval of settlement in the Class Action; (ii) Defendants are restricted from moving to dismiss on the grounds that were already asserted and rejected by the Court in the Class Action; and (iii) Defendants voluntarily agree to provide Plaintiffs with discovery material already produced in the Class Action and the parties agreed to be bound by all discovery orders and protocols in the Class Actions. Furthermore, the briefing and litigation of the instant motions to dismiss the Individual Complaints has been highly coordinated, with consolidated and interrelated briefing that frequently drew upon decisions and litigation events in the Class Action. Plaintiffs have all opted out of the Class Action and also, as discussed above, claimed the benefit of the Class Action in their attempts to oppose the motions to dismiss certain of their claims as untimely.

. . .

SLUSA sweeps broadly and applies to individual cases that are coordinated or consolidated for pre-trial purposes with a class action. Under these circumstances, SLUSA precludes Plaintiffs' attempt to engage in further litigation of their securities fraud claims under state law standards. Plaintiffs here assert the same factual and federal legal claims raised in the Class Action, and have received the benefits of coordinating discovery and other litigation activity with the Class Action.

*Id.* at 812-13 (internal citations and quotation marks omitted).

Similarly, in *Amorosa*, the court applied the catchall provision to group an individual opt-out lawsuit with a related class action and other opt-out actions, based on various indicia of informal coordination between the actions, any one of which "alone compel a finding that [the plaintiff's] case falls under the ambit of SLUSA." 682 F. Supp. 2d at 375-76. First, the court noted that the opt-out plaintiff "filed a civil cover sheet identifying his case as 'related' to the main class action, explaining that his 'allegations on the securities fraud claim [were] identical to those made in the class action.'" *Id.* at 375. Second, the plaintiff filed a first amended complaint that was virtually identical to the class action complaint and another opt-out complaint, and he also consented to a stay of his case pending the resolution of dispositive motions in the other actions. *Id.* Third, the plaintiff sought leave to amend his complaint only after obtaining the

benefits of the briefing and disposition of those motions. *Id.* Such informal coordination, the court reasoned, rendered the plaintiff's action and the related lawsuits "functionally a single action" for the purposes of SLUSA's grouping provision. *Id.* at 372, 377. Indeed, the court noted that to hold otherwise would enable plaintiffs to circumvent SLUSA through "procedural shenanigans," whilst receiving the benefits of informal coordination with the other lawsuits. *See id.* at 372. Accordingly, because the individual action and the related actions proceeded as a single action, the court found that the plaintiff's state law claims were barred by SLUSA. *See id.* at 376-77.

Here, the Court is satisfied, based on the procedural history of, and degree of informal coordination between, the Individual Actions and the Vytorin Class Actions, that those lawsuits have proceeded as a single action, and thus, constitute a "covered class action" under SLUSA's catchall provision. As the Court has already discussed, from 2008 to 2013, Plaintiffs were putative members of the Vytorin Class Actions. On September 25, 2012, class certification was granted in both actions, rendering Plaintiffs actual class members in those cases. Under the class notices published in the Vytorin Class Actions, class members were given a March 1, 2013 opt-out deadline. Plaintiffs waited until the last possible day to exercise those rights, opting out of the Vytorin Class Actions on March 1, 2013. However, as class members to the Vytorin Class Actions, Plaintiffs were privy to the pleadings, discovery disputes, dispositive motions, stipulations of fact, and various motions *in limine* filed in those actions. *See* Schering Vytorin Class Action, ECF Nos. 52, 314-389; Merck Vytorin Class Action, ECF Nos. 24, 250-310.

On October 1, 2013, final judgments were entered in the Vytorin Class Actions, dismissing the claims asserted therein with prejudice. Even though the Complaint, here, mirrors the consolidated complaints filed in the Vytorin Class Actions, Plaintiffs waited until November

14, 2013 and January 14, 2014 to file the Individual Actions. Significantly, the Complaint is nearly identical to – and in many places copied verbatim from – the consolidated complaints filed in the Vytorin Class Actions, asserting the same federal claims arising out of Defendants' alleged misrepresentations regarding the ENHANCE trial. *Compare* Schering Vytorin Class Action Compl. ¶¶ 10-12, 331-37, *with* North Sound Compl. ¶¶ 10-12, 393-99. Indeed, the only material difference between the Vytorin Class Actions and the Individual Actions is the addition of Plaintiffs' common law claim, which is based on, and expressly incorporates, the same factual allegations as the federal claims.

Recognizing as much, in the civil cover sheets that they filed with this Court and the Third Circuit, Plaintiffs identified the Individual Actions as "related" to the Vytorin Class Actions. *See GIC Private Ltd. v. Merck & Co., Inc. F/K/A Schering-Plough Corp.*, No. 13-7241 (D.N.J. Nov. 14, 2013), ECF No. 1-1. Plaintiffs also certified, pursuant to Local Civil Rule 11.2, that the Individual Actions and the Vytorin Class Actions involved the same subject matter. Cert. Pursuant to L. Civ. R. 11.2, North Sound Schering Compl. at 169; Cert. Pursuant to L. Civ. R. 11.2, GIC Schering Compl. at 166; Cert. Pursuant to L. Civ. R. 11.2, GIC Merck Compl. at 187; Cert. Pursuant to L. Civ. R. 11.2, North Sound Merck Compl. at 188. Taken together, these facts demonstrate that Plaintiffs, through their own initiative, substantially relied on the consolidated class action complaints in drafting the Complaint, and thus, derived a benefit from the Vytorin Class Actions.

Nonetheless, attempting to minimize the significance of the overlap between the Complaint and the consolidated complaints filed in the Vytorin Class Actions, Plaintiffs argue that because the Individual Actions "are opt-out suits, it is not only unsurprising, but entirely expected that Plaintiffs' suits would share common issues with the Vytorin Class Actions." Pls.'

Br. at 16.  While the Court does not dispute that an opt-out lawsuit is likely to share a common nucleus of facts with a related class action, it is entirely voluntary for the plaintiff in an opt-out suit to derive a benefit from his or her former membership in that class action by filing an *identical* complaint.  Moreover, the Court notes that SLUSA expressly provides that the definition of "'covered class action' does not include an exclusively derivative action brought by one or more shareholders on behalf of a corporation."  15 U.S.C. § 78bb(f)(5)(C).  Congress could have included a similar exception for opt-out lawsuits, but chose not to do so.  *Cf. In re Bank of Am. Corp. Sec., Derivative, & Employee Ret. Income Sec. Act (ERISA) Litig.*, No. 09-2058, 2013 WL 6504801, at *7 (S.D.N.Y. Dec. 11, 2013) (noting that "Congress could have included a carve-out for actions commenced in state court or actions that joined a 'group of lawsuits' by virtue of MDL transfer, but it chose not to do so.").  Indeed, as the Supreme Court has observed, if ever Congress had occasion to legislate in a "hyper-vigilant way, to 'remov[e] any doubt' as to things not particularly doubtful in the first instance,' . . . it was in SLUSA . . . ." *Cyan*, 138 S. Ct. at 1074.  Accordingly, that Congress declined to include a carve-out for opt-out actions indicates that Congress envisioned the aggregation of opt-out suits with related class actions under SLUSA's grouping provision.

Moreover, although Plaintiffs' reliance on the Vytorin Class Actions in forming their pleadings, standing alone, provides a strong indication that the Individual Actions and the Vytorin Class Actions proceeded as a single action, Plaintiffs have taken additional steps to coordinate the Individual Actions with the Vytorin Class Actions.  To that end, in opposing Defendants' motion for certification of an interlocutory appeal, Plaintiffs represented to this Court that reversal on appeal would not make discovery easier or less costly, because the parties "already engaged in lengthy and expensive discovery in the class cases, most, if not all, of which

will be relevant to the current litigation . . . ."  Pls.' Mem. in Opp. to Defs.' Mot. for Cert. and

Temporary Stay, No. 13-7240, ECF No. 27 at 24; *see id.* at 32 ("Moreover, because discovery in

the class cases has already occurred, there will be little need for further discovery in these actions

. . . .").  Plaintiffs further represented that their common law claims involved "virtually identical

issues, and will require virtually identical discovery, as [Plaintiffs'] federal claims."  *Id.* at 23.

Regardless of the fact that no formal order or stipulation coordinating discovery with the Vytorin

Class Actions has been entered, Plaintiffs, having sought to avail themselves of the benefits of

the discovery obtained in the Vytorin Class Actions, cannot now disavow those benefits in an

attempt to avoid the perception of coordination.  *See Kuwait*, 128 F. Supp. 3d at 813 (finding that

a group of lawsuits constituted a covered class action, where the plaintiffs asserted "the same

factual and federal legal claims raised in the Class Action, and have received the benefits of

coordinating discovery and other litigation activity with the Class Action."); *In re AOL Time*

*Warner, Inc. Sec. Litig.*, 503 F. Supp. 2d at 672 ("[P]laintiffs cannot reap the considerable

benefits flowing from the joint prosecution of their claims, yet 'through artful pleading . . . avoid

the clear precepts of SLUSA and its preemption of state law securities claims . . . .'") (quoting *In*

*re WorldCom, Inc. Sec. Litig.*, 308 F. Supp. 2d 236, 244 (S.D.N.Y. 2004)).  Under these

circumstances, the Court cannot conclude that the Individual Actions and the Vytorin Class

Actions have failed to proceed as a single action for *any* purpose.

Indeed, Plaintiffs' arguments "brush aside their own contribution to SLUSA preemption:

choosing to proceed as a single action."  *In re Enron*, 535 F.3d at 342.  In that regard, Plaintiffs

themselves provided the impetus for SLUSA preemption by choosing to file a Complaint that

was nearly identical to the consolidated class action complaints, designating the Individual

Actions as related to the Vytorin Class Actions, representing that they intend to use the discovery

obtained in the Vytorin Class Actions, and relying on those proceedings in making favorable legal arguments.[24] *See id.* (finding that "it was [the plaintiffs] who created the foundation for SLUSA preemption by filing nearly identical complaints, jointly scheduling discovery, filing joint motions, providing nearly identical discovery responses, and using the same experts and expert reports."); *see also* S. REP. NO. 105-182, at 7-8 (noting "that when such suits proceed as a single action," as that phrase is used under SLUSA, "it is frequently at the request of the plaintiffs."). In short, unlike a case where a group of lawsuits are involuntarily consolidated by the court, Plaintiffs themselves chose to "act in unison" with the Vytorin Class Actions, "and they must now face the consequences." *In re Enron*, 535 F.3d at 342. Accordingly, in light of the indicia of coordination between the Individual Actions and the Vytorin Class Actions, I find that those cases have proceeded as a single action for any purpose within the meaning of SLUSA's catchall provision.

## 2. *Temporality*

Notwithstanding any indicia of coordination between the Individual Actions and the Vytorin Class Actions, Plaintiffs argue that those actions cannot be grouped into a covered class action under SLUSA's catchall provision, because the Vytorin Class Actions were settled and dismissed prior to the filing of the Individual Actions. Plaintiffs reason that because the statutory

---

[24] Specifically, in addition to seeking to utilize the benefits of discovery obtained in the Vytorin Class Actions, Plaintiffs also sought to rely on the Vytorin Class Actions in arguing that the statutes of repose applicable to Plaintiffs' federal claims should be tolled. See Pls.' Mem. in Opp. to Defs.' Mot. to Dismiss, ECF No. 19 (arguing that Plaintiffs' claims against Defendants "were commenced on January 18, 2008" and "on May 5, 2008, when those claims were first asserted on Plaintiffs' behalf by the class representatives in [the Vytorin Class Actions]. The applicable five-year limitations periods were then tolled pursuant to [*American Pipe*] until Plaintiffs opted-out of the Vytorin Class Actions on March 1, 2013."). While Plaintiffs' tolling argument was ultimately rejected, as a result of the Supreme Court's decision in *ANZ Securities*, it is further indicative of Plaintiffs' intent to coordinate the Individual Actions with the Vytorin Class Actions.

terms "otherwise proceed" are phrased in the present tense, the catchall provision only encompasses cases that are proceeding together at the time that a SLUSA motion to dismiss is filed. Alternatively, even if SLUSA's catchall provision is not so restrictive, Plaintiffs argue that because "otherwise proceed" is phrased in the present tense, it necessarily follows that two cases cannot proceed as a single action where the first case is dismissed prior to the filing of the second. I disagree.

At the outset, the Court rejects Plaintiffs' argument that SLUSA's catchall provision only reaches those cases that are proceeding together when a SLUSA motion to dismiss is filed. In support of their argument, Plaintiffs cite to two out-of-district decisions, *Ventura v. AT&T Corp.*, No. 05-5718, 2006 WL 2627979 (S.D.N.Y. Sept. 13, 2006) and *Liberty Media Corp. v. Vivendi Universal, S.A.*, 842 F. Supp. 2d 587 (S.D.N.Y. 2012), neither of which are persuasive.[25]

In *Ventura*, the court held that a plaintiff's individual action could not be grouped with a related class action under SLUSA, where the class action was dismissed prior to the filing of the defendants' motion to dismiss the individual action on SLUSA grounds. *See* 2006 WL 2627979 at *1. In holding that the individual action and the class action could not be grouped into a covered class action, the court stated that those lawsuits were not joined or consolidated, and the individual case operated on "a separate procedural track" than the class action. *Id.* Nonetheless, the unpublished, two-page decision in *Ventura* fails to provide any further detail as to the basis for reaching that conclusion, and stands contrary to the plain language of SLUSA, which permits grouping when two cases proceed as a single action "*for any purpose*." As a result, *Ventura* has

[25] During oral argument, I indicated that *Ventura* and *Liberty Media* provided no persuasive value in this case. *See* Transcript of Oral Argument at 12:11-20, 30:3-10, *North Sound Capital LLC v. Merck & Co., Inc. F/K/A Schering-Plough Corp.*, No. 13-7240 (D.N.J. April 11, 2018) (ECF No. 46). Nonetheless, I will briefly discuss my reasoning for rejecting Plaintiffs' interpretation of those cases.

been uniformly rejected as a decision that offers "little explanation or analysis and thus is of limited persuasive value." *Kuwait*, 128 F. Supp. 3d at 813; *see In re Citigroup*, 987 F. Supp. 2d at 387 n. 6 (finding that *Ventura* "ignores the statutory directive that two lawsuits should be grouped when they proceed 'as a single action for any purpose.'"); *Amorosa*, 682 F. Supp. 2d at 375 (finding that *Ventura* "is of limited directional value for other courts in this District" and, if adopted, "would eviscerate SLUSA's core provision, which defines a covered class action [in] relevant part to include two or more 'lawsuits [that] are joined, consolidated, or otherwise proceed as a single action for any purpose.'") (quoting 15 U.S.C. § 78bb(f)(5)(B)(ii)(II)) (emphasis in original). Accordingly, the Court rejects Plaintiffs' attempt to extrapolate from *Ventura* a rule that grouping under SLUSA's catchall provision is only appropriate where multiple lawsuits remain pending at the time a SLUSA motion to dismiss is filed.

Additionally, Plaintiffs cite *Liberty Media* for the proposition that "SLUSA's 'covered class action' definition speaks in the present tense." 842 F. Supp. 2d at 594. In *Liberty Media*, the plaintiff brought an individual action asserting securities claims that were similar to those asserted in a separate class action. *Id.* at 589. Two months after the individual case was filed, the court formally consolidated it with the class action for pretrial purposes. *Id.* Although the cases proceeded together for six years, the court subsequently vacated the consolidation order, on the ground that the court did not have an opportunity to consider the issue of SLUSA preemption prior to consolidation. *Id.* at 593. Following the vacatur of the court's order of consolidation, the defendant moved for partial summary judgment based on SLUSA preclusion, arguing that the individual action, as consolidated with the class action, constituted a "covered class action." *Id.* at 593-94. In a single paragraph, the court denied the defendant's preclusion arguments, finding that the individual action, severed from the class action, "no longer qualifies as a 'covered class

action' for the purposes of the statute." *Id.* at 594. To that end, the court explained that SLUSA's grouping provision – defining a covered class action to include a group of lawsuits that "*are* joined, consolidated, or otherwise proceed as a single action for any purpose," 15 U.S.C. § 78bb(f)(5)(B) (emphasis added) – "speaks in the present tense, . . . strongly rebutting any argument that consolidation *per se*—even when followed by vacatur of such consolidation— brings an action within the statutory definition." 842 F. Supp. 2d at 594.

While this Court acknowledges that SLUSA's catchall provision is phrased in the present tense, *see* 15 U.S.C § 78bb(f)(5)(B)(ii)(II) (defining a "covered class action" to include a group of lawsuits that "*are* joined, consolidated, or otherwise *proceed* as a single action for any purpose."), I cannot agree that multiple lawsuits must remain pending at the time of a SLUSA motion to dismiss to be grouped into a covered class action.[26] Significantly, interpreting SLUSA's catchall provision as applying only to those cases that are proceeding together when a SLUSA motion to dismiss is filed would render superfluous the "filed in" clause of the grouping provision, which indicates that SLUSA's definition of a "covered class action" is not limited to those lawsuits that are presently "pending in" the same court, but also reaches those lawsuits that were originally "filed in" the same court. Indeed, "by requiring only that the group of lawsuits be 'filed' or 'pending' in the same court,' Congress has evinced its intent that preemption be considered *at any time*." *In re Enron*, 535 F.3d at 341 (emphasis added).

In the instant case, the Court has conducted its analysis under the "filed in" prong of grouping provision, "a past-tense modifier" that authorizes grouping of the Individual Actions

---

[26] As a preliminary matter, I note that the analysis in *Liberty Media* pertained to grouping under the consolidation clause of the grouping provision, and thus, is of limited persuasive value in determining whether a group of lawsuits constitute a covered class action under SLUSA's catchall "otherwise proceed" provision.

and the Vytorin Class Actions, despite the fact that the Vytorin Class Actions are no longer pending. *In re Lehman Bros.*, 131 F. Supp. 3d at 267. Grouping lawsuits only at the motion to dismiss stage, as Plaintiffs suggest, "would thus impermissibly limit the reach of SLUSA's preemption provision and also would run contrary to Congressional intent that SLUSA be interpreted broadly." *In re Enron*, 535 F.3d at 341; *see Dabit*, 547 U.S. at 86 ("A narrow reading of [SLUSA] would undercut the effectiveness of the [PSLRA] and thus run contrary to SLUSA's stated purpose."). Indeed, at least one court has distinguished *Liberty Media* as applying only to cases proceeding under the "pending in" prong of the group of lawsuits provision. *See In re Lehman Bros.*, 131 F. Supp. 3d at 267 & n. 169. Accordingly, I find that SLUSA's catchall provision is not so restrictive as to only permit the grouping of those cases that are actively proceeding as a single action at the time of a SLUSA motion to dismiss.

Nonetheless, although the Court finds that a group of cases need not be pending at the time of a SLUSA motion to dismiss to proceed as a single action, that finding does not answer the novel question presented by the instant dispute; namely, whether two actions can "otherwise proceed as a single action for any purpose," where the first action was dismissed prior to the filing of the second. Stated differently, the Court must determine whether cases must exist simultaneously to be grouped under SLUSA's catchall provision. As the parties acknowledge, it does not appear that any prior decision has addressed this issue. For the reasons that follow, I find that the Individual Actions can be grouped with the Vytorin Class Actions under SLUSA's catchall provision, despite the fact that the Vytorin Class Actions were dismissed prior to the filing of the Individual Actions.[27]

_____

[27] Although I found that interpreting the catchall provision as reaching only those lawsuits that are actively proceeding as a single action at the time of a SLUSA motion to dismiss would read

To begin, the plain language of SLUSA does not clearly indicate whether Congress intended the catchall provision of the "covered class action" definition to reach only those actions that proceed as a single action in real time. SLUSA provides, in relevant part, that a "group of lawsuits" constitute a covered class action if they "are joined, consolidated, or otherwise proceed as a single action for any purpose." 15 U.S.C. § 78bb(f)(5)(B)(ii). The term "proceed" is not defined in the statute, and it is not self-evident, from the term "proceed" alone, that SLUSA's catchall provision requires real-time coordination. In that regard, the ninth edition of Webster's New Collegiate Dictionary defines "proceed" as:

> **1:** to come forth from a source **2 a:** to continue after a pause or interruption **b:** to go on in an orderly regulated way **3 a:** to begin and carry on an action, process, or movement **b:** to be in the process of being accomplished **4:** to move along a course.

---

the "filed in" clause out of the statute, the same cannot be said in the context of whether SLUSA contains an at-any-point, real-time coordination requirement. Indeed, *Lehman Bros.* is instructive in this regard. As the Court has set forth, *supra*, in *Lehman Bros.*, the court found that because "filed in" is a "past-tense modifier," aggregation of the plaintiffs' lawsuits with a settled class action was permissible for the purposes of meeting SLUSA's 50-person threshold. 131 F. Supp. 3d at 267 (emphasis added). However, *Lehman Bros.* is distinguishable from the case at bar, because, there, although the class action had already been dismissed at the time of the court's decision, the class action and the individual lawsuits were pending simultaneously for years prior the dismissal of the class action. *See id.* at 266. Thus, *Lehman Bros.* demonstrates that the past-tense modifier "filed in" is not necessarily irreconcilable with the present-tense phrase "otherwise proceed as a single action" – two lawsuits, one active and one inactive, could have been originally filed in the same court and have pended together at some point in time, yet the first of those lawsuits could have been dismissed prior to the time that a SLUSA motion to dismiss was filed in the second. Accordingly, the Court cannot find, based on the statutory clause "filed in" alone, that SLUSA's catchall provision does not impose a real-time coordination requirement.

*Proceed*, WEBSTER'S NINTH NEW COLLEGIATE DICTIONARY (9th ed. 1985). Those definitions are of limited value in determining whether Congress intended a real-time coordination requirement.[28]

Moreover, contrary to Plaintiffs' arguments, the Court cannot draw any conclusions from Congress' decision to phrase the term "proceed" in the present-tense. Significantly, SLUSA's catchall provision is not phrased as a timing provision; rather it speaks to the degree of coordination required to find that a group of ostensibly separate actions constitute a covered class action. In that regard, notably absent from the catchall provision or any other portion of SLUSA is any express provision stating that a court must take into account temporal factors in determining whether a group of lawsuits constitutes a covered class action.[29] Had Congress sought to prevent courts from grouping lawsuits that were never simultaneously pending, it could well have added a limiting clause requiring that a group of lawsuits proceed as a single action at the same time. Indeed, as the *Cyan* Court observed, there are "many examples of Congress legislating in that hyper-vigilant way, to 'remov[e] any doubt' as to things not particularly doubtful in the first instance. And if ever Congress had reason to legislate in that fashion, it was in SLUSA . . . ." 138 S. Ct. at 1074 (citations omitted). Yet, despite including other carve-outs and limitations in the statute, Congress did not include any express language restricting SLUSA's catchall provision to cases that proceed together in real time.[30] The absence of such a limitation speaks volumes.

---

[28] Indeed, I note that the first such definition arguably weighs in favor of Defendants' position, because the Individual Actions undoubtedly "come forth from a source" – the Vytorin Class Actions.

[29] Additionally, nothing in the legislative history of SLUSA indicates that Congress intended to impose a temporal requirement in SLUSA's grouping provision.

[30] Indeed, by arguing that SLUSA's catchall provision reaches only those actions that proceed together in real time, Plaintiffs attempt to impose a requirement into the statute that does not

Furthermore, looking to the surrounding statutory language, "proceed" is modified only by the phrase "as a single action for any purpose," which also fails to indicate whether two actions must "proceed" in real-time to be grouped under SLUSA's catchall provision. Rather, as this Court has already discussed, the catchall provision "or otherwise proceed as a single action for any purpose" is an exceptionally broad preclusive provision, which reaches ostensibly separate lawsuits that display the requisite indicia of coordination. *See Rowinski*, 398 F.3d at 304 (endorsing a "broad and flexible" interpretation of SLUSA's covered class action definition). Plaintiffs' restrictive interpretation of SLUSA would defy the legislative intent that SLUSA preclusion sweep broadly, by prohibiting the grouping of coordinated lawsuits, solely because those lawsuits were never pending at the same time. *See Dabit*, 547 U.S. at 86. Taken to its logical end, assuming the requisite indicia of coordination for grouping were present, Plaintiffs' interpretation would permit grouping when two lawsuits pended together for any duration, even mere seconds, but prohibit grouping when the first lawsuit was dismissed only moments before the filing of the second. Absent any express statutory indication to the contrary, it would strain credulity to find that Congress intended for SLUSA preclusion to rest on such a narrow line.

Indeed, in light of SLUSA's broad remedial purpose, courts have uniformly rejected inflexible readings of SLUSA's covered class action definition, looking instead to whether a group of lawsuits were *functionally* consolidated, joined, or proceeding as a single action for any purpose.[31] *See, e.g., Amorosa*, 682 F. Supp. 2d at 375 (finding that although an opt-out action

_____

exist. The Supreme Court has cautioned against doing just that, however, explaining that Congress' inclusion of certain express exemptions to the covered class action definition "makes it inappropriate for courts to create additional, implied exceptions." *Dabit*, 547 U.S. at 88.

[31] That courts have also found that a group of lawsuits proceeded as a single action, despite the fact that one of the lawsuits was stayed pending the resolution of a related lawsuit, demonstrates

was never formally coordinated or consolidated with other lawsuits, it functionally proceeded as a single action with those cases); *Becker v. Tremont Grp. Holdings, Inc*, No. 12-80965, 2016 WL 4543061, at *2 (S.D. Fla. Nov. 14, 2016) ("While Plaintiffs have attempted to avoid consolidation during this the pendency of this matter, the unity of action among the parties in the aforementioned cases demonstrates that these cases are functionally consolidated pursuant to SLUSA, regardless of whether a formal order of consolidation was entered."). In short, reading "proceed" as Plaintiffs do would exalt form over substance, when the legislative history and jurisprudence regarding SLUSA counsels against doing just that. *See Fleming v. Charles Schwab Corp.*, 878 F.3d 1146, 1153 (9th Cir. 2017) ("In determining whether the SLUSA bar applies, substance governs over form."). Accordingly, I find that the Individual Actions and the Vytorin Class Actions proceeded as a single action for the purposes of SLUSA's catchall provision, despite the fact that the Vytorin Class Actions were dismissed prior to the filing of the Individual Actions.

### 3. *Barring Plaintiffs' Common Law Claim is Consistent with SLUSA's Remedial Purpose*

I also do not find convincing Plaintiffs' argument that barring their common law claim would be inconsistent with SLUSA's purpose, because Congress did not intend for SLUSA to "'prevent plaintiffs from bringing bona fide individual actions simply because more than fifty persons commence the actions in the same . . . court against a single defendant.'" Pls.' Br. at 25

---

that two actions need not be actively proceeding – in the present tense verbiage of that term – to fall within the ambit of SLUSA's catchall provision. *See, e.g.*, *Stichting Pensioenfonds*, 2012 WL 3235783 at *16 (finding that the plaintiff's case proceeded as single action with a class action, where, *inter alia*, the plaintiff agreed to stay discovery of the individual action pending the resolution of a motion to dismiss in the class action); *Amorosa*, 682 F. Supp. 2d at 372 (finding that an individual opt-out action proceeded as a single action with a related class action and certain other opt-out actions, where the plaintiff agreed to a stay of the litigation pending the resolution of a motion to dismiss in the class action).

(quoting S. REP. NO. 105-182, at 7). Plaintiffs are correct that SLUSA does not sweep so broadly as to cover bona fide individual actions asserting state law claims. However, the plain and unambiguous language of the statute also provides that a group of nominally separate lawsuits constitute a "covered class action" under SLUSA when they "proceed as a single action *for any purpose*." 15 U.S.C § 78bb(f)(5)(B)(ii)(II) (emphasis added). In light of the Court's finding that the Individual Actions proceeded as a single action with the Vytorin Class Actions, the Court cannot agree that application of SLUSA to this case is inconsistent with the remedial purpose of the statute.[32] *See Instituto De Prevision Militar*, 546 F.3d at 1347 (rejecting the argument that Congress could not have intended for SLUSA's covered class action definition to reach the plaintiff's individual action, where the individual action was consolidated with a related class action for discovery purposes only); *see also In re Fed. Nat'l Mortg. Ass'n Sec., Derivative, & ERISA Litig.*, 503 F. Supp. 2d 25, 32 (D.D.C. 2007) ("[T]he legislative history for SLUSA

---

[32] Indeed, the legislative history of SLUSA demonstrates that Congress enacted the statute over the dissenting views of some of its members that the breadth of the grouping provision would prohibit individuals from filing state law claims:

> Moreover, under [SLUSA's] unusual "grouping" provision, any time more than 50 individuals file state court complaints "in the same court and involving common questions of law or fact," they will be deemed to be part of a "class action" subject to this bill, if "the lawsuits are joined, consolidated, or otherwise proceed as a single action for any purpose." Individuals who bring suits in state court in their own name may find, if others have brought similar suits, that their claims are preempted. For instance, if an investment adviser churns the accounts of or recommends unsuitable securities to clients in a single state and more than 50 of them seek to recover in the same court, each filing their own individual action, they may be forced to constitute a class action and have to pursue their claims–if possible–in federal court. These investors may be left without a remedy. This is broader preemption than we believe is necessary or appropriate. There has been no showing that these kinds of suits, either individually or in the aggregate, present the kinds of potential abuses that have been attributed to traditional class actions and strike [suits].

H.R. REP. NO. 105-640, at 46.

overwhelmingly demonstrates that although Congress recognized that it would sometimes be used to preempt individual state law claims, on balance, that was a price worth paying.").

Indeed, contrary to Plaintiffs' argument, barring Plaintiffs' common law claim is consistent with the fundamental policies underlying SLUSA. As the Court has already explained, SLUSA was enacted to prevent plaintiffs from circumventing the PSLRA by bringing private securities class actions under state law. *See Cyan*, 138 S. Ct. at 1067. To ensure that federal court would be the exclusive forum for securities class actions, SLUSA contains an expansive definition of "covered class action," which is designed "to reach mass actions *and all other procedural devices* that might be used to circumvent the class action definition." S. REP. NO. 105-182, at 8 (emphasis added); *see also In re Bank of Am.*, 2013 WL 6504801 at *6 (noting that SLUSA's "definition of a 'covered class action' is not limited solely to class actions as conceived under [Federal Rule of Civil Procedure 23].")). Permitting Plaintiffs to circumvent the PSLRA by waiting until a related class action is dismissed is precisely the sort of procedural gamesmanship that Congress intended to prevent by including a broad definition of "covered class action." *See Newby v. Enron Corp.*, 338 F.3d 467, 472 (5th Cir. 2003) ("In enacting SLUSA Congress sought to curb all efforts to circumvent the reforms put into place by PSLRA."). In that regard, to construe SLUSA's catchall provision as Plaintiffs suggest would create a loophole in SLUSA, permitting plaintiffs to avoid the PSLRA by waiting until related actions are dismissed before filing their state law securities claims – a result that is inconsistent with the remedial aim of the statute.

### 4. Judicial Estoppel is Not Warranted

Finally, Plaintiffs argue that even if the Individual Actions form part of a "covered class action" under SLUSA, judicial estoppel prevents Defendants from prevailing on the issue of

SLUSA preclusion. Specifically, Plaintiffs maintain that in prior briefing before this Court and the Third Circuit regarding the applicability of *American Pipe* tolling, Defendants argued that the Individual Actions were not a continuation of the Vytorin Class Actions, but rather, constituted "four new civil actions," Pls.' Br. at 27, which, because they were not filed before the dismissal of the Vytorin Class Actions, could not be "coordinated . . . in real time with the class action discovery, motion practice, and trial preparations . . . ." *Id.* at 28.

"Judicial estoppel is a fact-specific, equitable doctrine, applied at courts' discretion." *In re Kane*, 628 F.3d 631, 638 (3d Cir. 2010). For judicial estoppel to apply, the party seeking to invoke the doctrine bears the burden of establishing the following three factors:

> First, the party to be estopped must have taken two positions that are *irreconcilably inconsistent*. Second, judicial estoppel is unwarranted unless the party *changed his or her position in bad* faith—i.e., with intent to play fast and loose with the court. Finally, a district court may not employ judicial estoppel unless it is tailored to address the harm identified and *no lesser sanction would adequately remedy the damage* done by the litigant's misconduct.

*Id.* (citation omitted) (emphasis in original).

Here, the Court finds that Plaintiffs have failed to meet their burden of establishing that judicial estoppel is warranted, because Defendants have not taken positions that are irreconcilably inconsistent. In the repose motion, Defendants argued that the Individual Actions constitute "new civil actions," and that Plaintiffs' failure to file the Individual Actions before the dismissal of the Vytorin Class Actions prevented those cases from being consolidated for pre-trial and discovery purposes. In the instant Motion, Defendants do not dispute that the Individual Actions are "new" actions, or argue that the Individual Actions were actually coordinated in real-time with the Vytorin Class Actions. Rather, Defendants argue that, despite the lack of real-time coordination between the Individual Actions and the Vytorin Class Actions, those cases have *functionally* proceeded as a single action within the meaning of SLUSA's catchall provision, and

thus, can be grouped into a "covered class action." Accordingly, because Defendants have not taken irreconcilably inconsistent positions, judicial estoppel is inapplicable.

In any event, the Third Circuit has held that "there is an exception to the general concept of 'judicial estoppel' when it comes to jurisdictional facts or positions, such that it has been said that 'judicial estoppel . . . cannot conclusively establish jurisdictional facts.'" *Whiting v. Krassner*, 391 F.3d 540, 544 (3d Cir. 2004) (quoting *In re Sw. Bell Tel. Co.*, 535 F.2d 859, 861 (5th Cir. 1977)). To that end, because "a district court has an independent obligation to determine whether subject matter jurisdiction exists, even if its jurisdiction is not challenged," *Nuveen Mun. Tr. ex rel. Nuveen High Yield Mun. Bond Fund v. WithumSmith Brown, P.C.*, 692 F.3d 283, 293 (3d Cir. 2012),[33] "courts have generally refused to resort to principles of judicial estoppel to prevent a party from 'switching sides' on the issue of jurisdiction." *Whiting*, 391 F.3d at 544. As explained, *supra*, the issue of SLUSA preclusion is jurisdictional, *In re Lord Abbett*, 553 F.3d at 254, and thus, Plaintiffs cannot invoke judicial estoppel with respect to the issue of SLUSA preclusion.

In sum, because the Individual Actions and the Vytorin Class Actions have proceeded as a single action, and because the other elements of SLUSA's grouping provision are satisfied, the Individual Actions and the Vytorin Class Actions form a "covered class action" under SLUSA. Accordingly, the Court finds that Plaintiffs' common law fraud claim is barred by SLUSA, and that claim is dismissed.[34]

## IV.    **CONCLUSION**

---

[33] Specifically, pursuant to Federal Rule of Civil Procedure 12(h)(3), "[i]f the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action." FED. R. CIV. P. 12(h)(3).

[34] Having found that dismissal of Plaintiffs' common law claim is appropriate, the Court need not reach the parties' arguments regarding supplemental jurisdiction.

For the foregoing reasons, Defendants' Motion to Dismiss Plaintiffs' sole remaining common law claim is granted.

Dated:  May 15, 2018

/s/ Freda L. Wolfson
Hon. Freda L. Wolfson
United States District Judge